# Simpson Thacher & Bartlett LLP

425 LEXINGTON AVENUE
NEW YORK, NY 10017-3954

TELEPHONE: +1-212-455-2000
FACSIMILE: +1-212-455-2502

Direct Dial Number

+1-212-455-3539

E-mail Address

jyoungwood@stblaw.com

**VIA ECF**                                             August 7, 2024

Re:     *Lozada v. TaskUs, Inc.*, No. 22-cv-1479-JPC-GS

The Honorable Gary Stein
United States District Court
Southern District of New York
500 Pearl Street, Room 702
New York, New York 10007

Dear Judge Stein:

Defendants respectfully submit this letter in the above-referenced action pursuant to Rule II.C.2 of the Court's Individual Practices in Civil Cases to inform the Court of certain discovery disputes that Defendants wish to discuss at the August 13 Status Conference.  The parties have conferred in good faith, pursuant to Rule II.C.1, in an effort to resolve these disputes, but have been unsuccessful.

**Non-Party Subpoenas**: Plaintiffs have issued subpoenas to 24 non-parties.  The non-parties include six TaskUs clients, as well as service providers, professional partners, current and former employees, underwriters in the offering, and certain Blackstone-related entities (notwithstanding that a Blackstone-related entity is already a party and producing documents).  Not only is the information sought from the non-parties duplicative of information sought from (and produced by) the Company, but it is also overbroad given the role of the parties and not proportional to the needs of the case.  This case is about alleged misstatements that TaskUs made in its registration statements that relate to TaskUs's attrition rate and its Glassdoor ratings.  There are no allegations that the majority of these non-parties, including TaskUs's clients, had any involvement with such statements.

Specifically, and among other problems, the non-party subpoenas seek information regarding overly broad topics.  For example, the non-party subpoenas to TaskUs's clients seek documents and communications concerning: (i) "TaskUs's employee attrition and/or the impact of attrition, including hiring costs and costs to train replacements for departing employees; discussion or escalation of issues concerning TaskUs attrition, headcount, or staffing; and/or reduction of Your staffing, business, or commitments in relation to TaskUs;" (ii) "TaskUs's attrition rate and/or Glassdoor rating relative to other BPO companies;" and (iii) "TaskUs Glassdoor ratings, reviews, and/or initiatives, including concerning changes in TaskUs's Glassdoor rating, TaskUs's policies and practices regarding Glassdoor reviews,

BEIJING   BRUSSELS   HONG KONG   HOUSTON   LONDON   LOS ANGELES   PALO ALTO   SÃO PAULO   TOKYO   WASHINGTON, D.C.

Simpson Thacher & Bartlett LLP

The Honorable Gary Stein                    -2-                    August 7, 2024

efforts to track and/or improve TaskUs's Glassdoor rating, efforts to encourage or require TaskUs employees to submit Glassdoor reviews or otherwise increase the number of Glassdoor reviews submitted by TaskUs employees, initiatives to track and/or monitor TaskUs employees' submission of Glassdoor reviews and the content of such reviews, TaskUs's software platform that allegedly required new employees to submit a Glassdoor review, the timing of when Glassdoor reviews were to be filled out, the purpose of the Glassdoor reviews, and any complaints and discussions regarding alleged TaskUs policies, directions or instructions relating to employee Glassdoor reviews."  None of these requests are designed to elicit documents that TaskUs's clients would actually have in their possession. Instead, they seek information on the Company's overall employee attrition or Glassdoor rating, which is information that clients do not have access to.  Plaintiffs argue that if a client discusses TaskUs attrition in connection with its business, that would be relevant.  But, that is a far narrower topic than what these non-party subpoenas seek and, at best, only tangentially related to the claims at issue in this case.  In addition, most of the non-party subpoenas seek documents and communications concerning "Spruce Point Capital Management, LLC and/or the Spruce Point Report."  There is no reason to believe a client may have documents relating to the Spruce Point Report and, to the extent they do, that those documents bear on any of the allegations in this case.  Plaintiffs' enforcement actions in connection with these non-party subpoenas are also improper.  For example, they have served subpoenas with 10-day response windows, an unreasonably short amount of time to respond.

Separately, Plaintiffs have attempted to end-run the parties' negotiations regarding texts and WhatsApp messages via service of document subpoenas on current and former TaskUs employees.  As the Court is aware, after extensive discussions (including during conferences with the Court) the parties reached an agreement whereby Defendants agreed to collect and produce responsive text and WhatsApp messages, if any, for seven agreed-upon custodians—the seven Individual Defendants in this case.  Plaintiffs, however, have now served document subpoenas on four current and former employees (two of whom are already agreed-upon custodians), which seek text and WhatsApp messages, among other broad requests.  Not only are these subpoenas disproportionate and unduly burdensome to these individuals, but the request for texts/WhatsApp also directly contravenes the parties' hard negotiated agreement. One particularly egregious example is with regard to Brandy Zimmerman.  Ms. Zimmerman is a current employee and an agreed-upon custodian whose Company emails and GChats already have been produced.  While negotiating with Plaintiffs regarding the production of texts/WhatsApp messages, Defendants offered Ms. Zimmerman as a custodian from whom they would collect and produce responsive text and/or WhatsApp messages, to the extent she had any.  Plaintiffs, however, rejected Defendants' proposal, instead insisting the seven texts/WhatsApp custodians should be the seven Individual Defendants, which, ultimately, Defendants agreed to.  Yet now, completely disregarding the parties' negotiations and agreement (and in another apparent attempt to harass TaskUs and its employees), Plaintiffs seek Ms. Zimmerman's texts/WhatsApp messages, as well as those of the three former employees who also received documents subpoenas.

Defendants explained to Plaintiffs on July 25, 2024 that the steps they had been taking with regard to subpoenas are harassing.  *See, e.g.*, *KGK Jewelry LLC v. ESDNetwork*, 2014 WL 1199326, at *6 (S.D.N.Y. Mar. 21, 2014) (granting motion for sanctions for defendants' issuance of non-party subpoenas where "it appears that they were issued to either harass

Simpson Thacher & Bartlett LLP

The Honorable Gary Stein                    -3-                    August 7, 2024

[plaintiff] or to delay the resolution of this action" and they had "the potential to have a negative impact on [plaintiff] because they may disrupt [plaintiff]'s affiliates' business relationships"); *see also, e.g.*, *Azim v. Tortoise Capital Advisors, LLC*, 2015 WL 197325, at *3 (D. Kan. Jan. 14, 2015) (granting defendants' motion for a protective order where "plaintiff's attempt to conduct significant discovery, through third-party subpoenas, . . . has and will embarrass, harass, and annoy defendants and nonparties" and "likely would have an adverse impact on defendants' business relationships"). Defendants asked Plaintiffs to correct their behavior, but Plaintiffs refused. Instead, Plaintiffs continued to serve broad third-party subpoenas. On August 2, 2024, Defendants again explained their position to Plaintiffs and asked them to withdraw the six subpoenas served on TaskUs clients and certain other subpoenas served on TaskUs's external auditor, internal advisor, and PR firm. Defendants have not received a response from Plaintiffs.

**Text and WhatsApp Messages**: As noted, the parties reached a compromise that Defendants would collect and produce responsive text and WhatsApp messages for the seven Individual Defendants. In connection with these productions, Plaintiffs have insisted that Defendants collect and run search terms over all texts/WhatsApp messages, provide search term hit reports for each of the custodians regardless of whether the custodian used text or WhatsApp for business, and provide certain additional information regarding the scope of unresponsive documents. Plaintiffs, however, have refused to do the same.

As part of discovery, Defendants requested that Plaintiffs collect and produce responsive documents from relevant sources, including text or other messages. Plaintiffs produced no texts or other messages, and have refused to explain whether they even collected texts and other messages, ran search terms over the collection, and reviewed the hits for responsiveness. While Mr. Lozada testified at his deposition that Plaintiffs had access to his phone, it is unclear whether Plaintiffs did anything with it, as they have not provided a search term hit report. And, while a representative of Oklahoma Firefighters testified that he believed its employees do not text for business-related purposes, that does not mean that no Oklahoma Firefighters witness would not have texts or other messages relevant to this case. Consistent with what Plaintiffs have requested of Defendants, Plaintiffs should collect cell phones from Mr. Lozada and the Oklahoma Firefighters custodians, run the agreed-upon search terms, and provide Defendants with hit reports. To the extent messages hit on the search terms, Plaintiffs must review and produce responsive messages or confirm that none exist.

Respectfully submitted,

*/s/ Jonathan K. Youngwood*

Jonathan K. Youngwood

cc: All counsel of record (via ECF)