# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HUMBERTO LOZADA and OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM Individually and on Behalf of All Others Similarly Situated,<br><br><br>Plaintiffs,<br><br><br>v.<br><br><br>TASKUS, INC., BRYCE MADDOCK, JASPAR WEIR, BALAJI SEKAR, AMIT DIXIT, MUKESH MEHTA, SUSIR KUMAR, JACQUELINE D. RESES, and BCP FC AGGREGATOR L.P.,<br><br><br>Defendants. | Case No.  1:22-cv-01479<br><br>CLASS ACTION |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT.............................................................................................................................2

    I.      THE SECURITIES ACT CLAIMS WARRANT CLASS TREATMENT .............2

    II.     THE EXCHANGE ACT CLAIMS WARRANT CLASS TREATMENT..............3

         A.     Plaintiffs Have Demonstrated Market Efficiency.......................................3

             1.     Standing Alone, the Indirect Factors Prove Efficiency ..................3

             2.     Though Unnecessary, *Cammer* 5 Is Satisfied..................................4

         B.     Defendants Fail to Carry Their Daunting Burden to Prove That Their Material Misstatements Had No Price Impact .................................5

             1.     Defendants Fail to Disprove Front-End Price Impact......................6

             2.     Defendants Fail to Disprove Back-End Price Impact ......................6

             a.     Defendants' Misstatements Are Not "Generic"...............................7

             b.     Investors and Analysts Focused on Defendants' Material Lies.................................................................................8

             c.     Defendants' Premature Attacks on Loss Causation Fail.................9

          C.     Mr. Coffman's Established Class-Wide Damages Methodology Is Sufficient...............................................................................................10

    III.    THE CLASS DEFINITION IS NOT A FAIL-SAFE CLASS..............................10

CONCLUSION.........................................................................................................................11

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)................................................................................................ 8

*Basic v. Levinson*,
485 U.S. 224 (1988)................................................................................................ 1

*Billhofer v. Flamel Techs., S.A.*,
281 F.R.D. 150 (S.D.N.Y. 2012) ........................................................................... 1

*Bos. Ret. Sys. v. Alexion Pharms., Inc.*,
2023 WL 2932485 (D. Conn. Apr. 13, 2023)..................................................... 5, 7

*Cosby v. KPMG, LLP*,
2020 WL 3548653 (E.D. Tenn. June 29, 2020)..................................................... 5

*Crews v. Rivian Auto., Inc.*,
2024 WL 3447988 (C.D. Cal. July 17, 2024).......................................................... 4

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011)............................................................................................ 2, 9

*Goldman Sachs Grp. v. Arkansas Tchr. Ret. Sys.*,
594 U.S. 113 (2021)............................................................................................ 5, 8

*Hevesi v. Citigroup Inc.*,
366 F.3d 70 (2d Cir. 2004) .................................................................................... 3

*In re Allergan PLC Sec. Litig.*,
2021 WL 4077942 (S.D.N.Y. Sept. 8, 2021).......................................................... 7

*In re CenturyLink Sec. Litig.*,
337 F.R.D. 193 (D. Minn. 2020) ........................................................................... 6

*In re Deutsche Bank AG Sec. Litig.*,
328 F.R.D. 71 (S.D.N.Y. 2018) ............................................................................ 2

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.*,
288 F.R.D. 26 (S.D.N.Y. 2012) ............................................................................ 2

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.*,
312 F.R.D. 332 (S.D.N.Y. 2015) ..................................................................... 3, 10

*In re IPO Sec. Litig.*,
227 F.R.D. 65 (S.D.N.Y. 2004)............................................................................. 3

*In re Jeld-wen Holding, Inc. Sec. Litig.*,
  2021 WL 1186326 (E.D. Va. Mar. 29, 2021) .................................................................. 4

*In re NIO, Inc. Sec. Litig.*,
  2023 WL 5048615 (E.D.N.Y. Aug. 8, 2023) .................................................................. 8

*In re Petrobras Sec.*,
  862 F.3d 250 (2d Cir. 2017) ....................................................................................... 5

*In re Signet Jewelers Ltd. Sec. Litig.*,
  2019 WL 3001084 (S.D.N.Y. July 10, 2019) ............................................................ 10

*In re Vivendi, S.A. Sec. Litig.*,
  838 F.3d 223 (2d Cir. 2016) .................................................................................. 6, 10

*Kirkland Lake Gold Ltd. Sec. Litig.*,
  2024 WL 1342800 (S.D.N.Y. Mar. 29, 2024) .............................................................. 8

*Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*,
  328 F.R.D. 86 (S.D.N.Y. 2018) .................................................................................. 4

*Monroe Cty. Emps.' Ret. Sys. v. Southern Co.*,
  332 F.R.D. 370 (N.D. Ga. 2019) ............................................................................. 6, 9

*Pirnik v. Fiat Chrysler Automobiles, N.V.*,
  327 F.R.D. 38 (S.D.N.Y. 2018) ................................................................................ 10

*Set Cap. LLC v. Credit Suisse Grp. AG*,
  2024 WL 895084 (S.D.N.Y. Mar. 1, 2024) .................................................................. 3

*Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*,
  546 F.3d 196 (2d Cir. 2008) ....................................................................................... 4

*Tsirekidze v. Syntax-Brillian Corp.*,
  2009 WL 2151838 (D. Ariz. July 17, 2009) ................................................................ 2

*Villella v. Chem. & Mining Co. of Chile Inc.*,
  333 F.R.D. 39 (S.D.N.Y. 2019) .................................................................................. 4

*Waggoner v. Barclays PLC*,
  875 F.3d 79 (2d Cir. 2017) ............................................................................ 1, 4, 7, 10

*Weiner v. Tivity Health, Inc.*,
  334 F.R.D. 123 (M.D. Tenn. 2020) ............................................................................ 4

*Wilson v. LSB Indus., Inc.*,
  2018 WL 3913115 (S.D.N.Y. Aug. 13, 2018) ............................................................. 5

## PRELIMINARY STATEMENT[1]

Defendants' opposition confirms that the Class should be certified.  Defendants concede Lead Plaintiff Lozada's typicality and adequacy and do not seriously dispute certification for the Securities Act claims arising from TaskUs's IPO.  As to the SPO Securities Act claims, Defendants offer only perfunctory challenges to Named Plaintiff Oklahoma Firefighters ("Oklahoma").

The Exchange Act claims also warrant certification.  <u>First</u>, Defendants' challenge to market efficiency is specious.  TaskUs Common Stock is listed on NASDAQ and thus "presumed to be efficient," *Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 159 (S.D.N.Y. 2012), and all of the so-called "indirect" efficiency factors are satisfied.  While no further analysis is needed to find efficiency, *see Waggoner v. Barclays PLC*, 875 F.3d 79, 94, 99 (2d Cir. 2017), the optional "direct" factor, *Cammer* 5, is also satisfied based on TaskUs's price reaction on 91% of earnings dates.

<u>Second</u>, Defendants' "price impact" argument fails.  To rebut the presumption of reliance under *Basic v. Levinson*, 485 U.S. 224, 246 (1988), Defendants have the daunting task of proving that neither the misstatements nor their correction had any effect on TaskUs's share price.

They fail to do so.  Far from being "generic," there is powerful direct evidence that Defendants' lies mattered to investors.  Discovery has revealed that ████████████████████

████████████████████████████████████████████████████████████

██████████ (Ex. 2 at -950; Ex. 3 at -975; Ex. 9 at -049.) ████████████████████

████████████████████████████████████████████ (Ex. 4 at -856.)

The misstatements fueled two Offerings that allowed Defendants to unload $951 million in stock.

On TaskUs's first trading day after the IPO, its stock popped 35%.  Defendants do not explain this 35% increase and thus cannot dispute the misstatements' front-end price impact.  And

---

[1] Emphasis added and citations and quotations omitted unless otherwise noted.

at the back end, the Spruce Report drove a statistically significant 14.1% stock drop.  Defendants

fail to explain any—much less all—of this decline, and again fail to prove no price impact.

Finally, in arguing that the Report was not "corrective," Defendants ignore the clear link

between (1) their lies about "culture" and "low attrition," and (2) the Report's revelation that their

"claim of a superior corporate culture evidenced by below industry standard workforce attrition

appear to be highly exaggerated."  There is no "mismatch," and any challenge to loss causation

cannot be resolved now.  *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 813 (2011).

## ARGUMENT

## I.     THE SECURITIES ACT CLAIMS WARRANT CLASS TREATMENT

Defendants do not oppose certification as to the Securities Act claims for TaskUs's IPO

beyond a throwaway argument about a "fail-safe class" (*infra* at 10).  As to the SPO, Defendants

only assert that Oklahoma "cannot represent a putative class."  These arguments are meritless.

**Post-Class Period Purchases**:  Oklahoma's minuscule post-Class Period purchases of 422

shares, or just 2% of its TaskUs holdings (Ex. 5), do not support any "unique defense."  There is

no reliance element under the Securities Act, and under the Exchange Act, "[c]ourts have

consistently rejected the argument that post-disclosure purchases" raise a unique defense.  *In re*

*Facebook, Inc., IPO Sec. & Deriv. Litig.*, 288 F.R.D. 26, 38 (S.D.N.Y. 2012) (collecting cases).

**Oklahoma Has Section 11 Standing**:  Oklahoma's records prove it purchased 16,112

shares directly in the SPO:  (1) on the SPO date, October 21, 2021; (2) at the SPO price,

$63.50/share; and (3) from an SPO underwriter, Goldman Sachs.  (Exs. 5, 7.)  These purchases at

the "SPO offering price, on . . . the offering [date], from . . . an underwriter," prove Section 11

standing.  *Tsirekidze v. Syntax-Brillian Corp.*, 2009 WL 2151838, at *2 (D. Ariz. July 17, 2009).[2]

---

[2] Further proving Oklahoma's direct purchase in the SPO, no commission was paid to Goldman Sachs.  (Ex. 6 at 134:14-135:6; *see also* Ex. 7.)  *See In re Deutsche Bank AG Sec. Litig.*, 328 F.R.D. 71, 84 (S.D.N.Y. 2018).

The Court should also reject Defendants' effort to narrow the SPO Securities Act class to direct purchasers due to supposed difficulties in proving that aftermarket purchases are "traceable" to the SPO.  Defendants' argument is premature because "tracing is a merits issue that the court need not consider at the class certification stage." *Set Cap. LLC v. Credit Suisse Grp. AG*, 2024 WL 895084, at *2 (S.D.N.Y. Mar. 1, 2024).  Further, there is a "presumption" that tracing is "satisfied" because both the IPO and SPO, which involved substantively identical misstatements, were "defective" offerings. *In re IPO Sec. Litig.*, 227 F.R.D. 65, 119 (S.D.N.Y. 2004).

**Named Plaintiff Oklahoma Is an Appropriate Class Representative**:  The Second Circuit made clear two decades ago that "the PSLRA does not in any way prohibit the addition of named plaintiffs to aid the lead plaintiff in representing a class." *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82–83 (2d Cir. 2004).  As a result, courts routinely appoint named plaintiffs as class representatives, *see, e.g.*, *In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 312 F.R.D. 332, 337 (S.D.N.Y. 2015), and this Court should appoint both Oklahoma and Mr. Lozada.

## II.    THE EXCHANGE ACT CLAIMS WARRANT CLASS TREATMENT

Predominance is satisfied because Plaintiffs have shown market efficiency, Defendants fail to prove the absence of price impact, and Mr. Coffman proposes a standard damages methodology.

### A.    Plaintiffs Have Demonstrated Market Efficiency

#### 1.    Standing Alone, the Indirect Factors Prove Efficiency

Defendants' attacks on efficiency fail at the outset because they concede six of the seven so-called "indirect" factors, such as trading volume and market capitalization.

Defendants also concede the remaining indirect factor, analyst coverage, for the majority of the Class Period.  While Defendants note the temporary lack of analyst reports during a short "quiet period" from June 11 through July 5, 2021, that narrow challenge to a single indirect factor has no bearing on efficiency for the rest of the Class Period.  And as to the quiet period itself,

3

Defendants' argument fails because all of the other indirect factors confirm efficiency (Ex. 1 (Reply Report) ¶¶80, 102). Several courts have recognized efficiency for quiet periods,[3] while Defendants cite no case finding inefficiency from the temporary lack of analyst reports alone.[4]

Standing alone, the indirect factors are sufficient to find efficiency. *Waggoner*, 875 F.3d at 98 (affirming certification where "[a]ll seven of the indirect factors . . . weighed so clearly in favor of [efficiency] that the Defendants did not even challenge them").

### 2. Though Unnecessary, *Cammer* 5 Is Satisfied

Since the indirect factors clearly support efficiency and are largely undisputed, the Court is "not required to reach a conclusion concerning" *Cammer* 5, *id.* at 99, and "can dispose with *Cammer* 5 completely." *Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 328 F.R.D. 86, 97 (S.D.N.Y. 2018). Nonetheless, *Cammer* 5, the cause-and-effect relationship between disclosures and movements in stock price, is also satisfied. Mr. Coffman found statistically significant stock price movements on 90.91% of TaskUs earnings dates and just 3.06% of days without TaskUs news. (ECF 72 at 28.) Defendants cite no authority holding these results insufficient. Instead, they merely argue "that other variations of [Mr. Coffman's] event study would yield different, inconclusive results." *Villella v. Chem. & Mining Co. of Chile Inc.*, 333 F.R.D. 39, 53 (S.D.N.Y. 2019) (certifying class). These arguments—refuted in detail in the Coffman Reply Report—fail.

**Analysis Period**: Mr. Coffman properly extended the analysis period to capture 11 TaskUs earnings dates.[5] In any event, the Class Period results also strongly support efficiency, with statistically significant price reactions after 100% of earnings releases. (Ex. 1 ¶88.)

---

[3] *See Crews v. Rivian Auto., Inc.*, 2024 WL 3447988, at *9-11 (C.D. Cal. July 17, 2024) (efficiency during quiet period based on indirect factors); *In re Jeld-wen Holding, Inc. Sec. Litig.*, 2021 WL 1186326, at *6 (E.D. Va. Mar. 29, 2021).

[4] For example, *Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 206 (2d Cir. 2008), held that a complete lack of analyst coverage, and failure to satisfy two other factors, weighed against efficiency.

[5] *See Weiner v. Tivity Health, Inc.*, 334 F.R.D. 123, 136 (M.D. Tenn. 2020) (accepting extended analysis period).

**Estimation Window**:  Because TaskUs was a new public company, Mr. Coffman used a fixed estimation window for the first 120 trading days, an approach he has used in other cases.[6]

**News and Non-News Days**:  Mr. Coffman's finding of price response on 91% of earnings days is undisputed.   While Defendants claim their expert Mr. Deal found "no statistically significant difference between the ratio of *earnings days* [and] 'non-news days' showing statistically significant price movements" (Opp. at 13), that is untrue:  Mr. Deal admittedly did *not* compare earnings days to other dates (ECF 95-1 (Deal Report) ¶91; ██████████████████).  Moreover, Defendants cite no authority requiring their alternative approach of comparing broader sets of "news" and "non-news days" (Opp. at 11); ████████████████████████████

████████████████████████████.  (Ex. 8 at 301:7-302:17.)

**First Two Months of Class Period**:  Defendants' argument about "cause and effect" prior to TaskUs's first earnings release is irrelevant because the indirect factors support efficiency.[7]

**Directionality**:   The Circuit has rejected Defendants' argument that the "direction" of returns must "align[] with the nature of the news," *see In re Petrobras Sec.*, 862 F.3d 250, 277 (2d Cir. 2017), and Defendants cite no movement in the "wrong" direction.  (Ex. 1 ¶93.)

**B.    Defendants Fail to Carry Their Daunting Burden to Prove That Their Material Misstatements Had No Price Impact**

To rebut the *Basic* presumption, Defendants "bear the burden of persuasion to prove a lack of price impact." *Goldman Sachs Grp. v. Arkansas Tchr. Ret. Sys.*, 594 U.S. 113, 117 (2021).

To do so, Defendants "must show that the alleged misstatements caused *no* price impact whatsoever." *Bos. Ret. Sys. v. Alexion Pharms., Inc.*, 2023 WL 2932485, at *11 (D. Conn. Apr. 13, 2023) (emphasis in original).   "Because price impact can be observed on the 'front-end' (i.e.,

---

[6] *See Cosby v. KPMG, LLP*, 2020 WL 3548653, at *28 (E.D. Tenn. June 29, 2020) (granting class certification).

[7] *See Wilson v. LSB Indus., Inc.*, 2018 WL 3913115, at *16 (S.D.N.Y. Aug. 13, 2018) ("remaining factors support a finding of market efficiency during [early] period").

misstatements causing or maintaining inflation) or on the 'back-end' (i.e., a decline in price caused by the corrective disclosures), Defendants must affirmatively disprove *both* to satisfy their burden." *In re CenturyLink Sec. Litig.*, 337 F.R.D. 193, 209 (D. Minn. 2020). This is a "daunting task." *Monroe Cty. Emps.' Ret. Sys. v. Southern Co.*, 332 F.R.D. 370, 393 (N.D. Ga. 2019).

Here, Defendants fail to rebut the *Basic* presumption because their misstatements impacted TaskUs's share price at the front and back end. As a result, predominance is satisfied.

### 1.    Defendants Fail to Disprove Front-End Price Impact

Because Defendants ignore the price increase on TaskUs's first trading day, they cannot "affirmatively disprove" front-end price impact. *CenturyLink*, 337 F.R.D. at 209.[8] The IPO Registration Statement became effective on June 10, 2021. On the first trading day, June 11, 2021, TaskUs stock opened at $27.55 and closed at $31.09—an increase of $8.09 (35%) from the $23.00 IPO price. (Ex. 1 ¶22.) Yet Defendants wholly ignore this June 11 stock "pop" as a source of front-end price impact. ███████████████████████████. (Ex. 8 at 127:11-129:13 (██ ██████████████).) And Defendants miss the mark by focusing solely on statistically significant price changes on or after the second trading day (June 14, 2021), while ignoring the large, unexplained price increase on the first trading day. Standing alone, Defendants' failure to address the June 11 increase confirms that they have not rebutted the *Basic* presumption.

### 2.    Defendants Fail to Disprove Back-End Price Impact

Defendants also admit that "the stock drop following a corrective disclosure" can be used "to infer front-end inflation" (Opp. at 15-16). They further admit that there was a statistically significant stock drop of 14.1% on January 20, 2022, when the Spruce Report was released. And Defendants' expert conceded that he is not "offering a comprehensive analysis of which specific

---

[8] In all events, the Circuit has rejected the notion that a "misstatement must be associated with an increase in inflation to have any effect on a company's stock price." *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 260 (2d Cir. 2016).

factors drove the price decline and to what extent." (ECF 95-1 ¶52; ███████████.)

This is fatal. Because Defendants fail to explain any of the back-end decline—much less all of it—they have not "proven a complete lack of price impact during the Class Period." *Alexion*, 2023 WL 2932485 at \*12. That "[t]here was unquestionably a price impact associated with the key corrective disclosure . . . . is sufficient to sustain the *Basic* presumption of reliance." *In re Allergan PLC Sec. Litig.*, 2021 WL 4077942, at \*13 (S.D.N.Y. Sept. 8, 2021).

Indeed, Defendants fail to prove any cause for the decline other than the correction of their misstatements. ████████████████████████████████████████████████ ███████████████████████████████. (Ex. 8 at 139:25-140:25; Ex. 1 ¶¶61-67.) And as the Second Circuit has made clear, "merely suggesting that another factor *also* contributed to an impact on a security's price does not establish that the fraudulent conduct complained of did not also impact the price of the security." *Waggoner*, 875 F.3d at 105 (emphasis in original).

Unable to explain the statistically significant back-end decline, Defendants instead pivot to premature challenges to materiality and loss causation. These merits arguments fail.

### a. Defendants' Misstatements Are Not "Generic"

Defendants first try to shoehorn this case into *Goldman* by arguing "a lack of price impact" because their misstatements are supposedly "generic by nature." That is simply wrong.

<u>First</u>, the Court has already held that the statement that TaskUs had an "advantage on key people metrics," including "low attrition" (¶170), was a "concrete assertion." (ECF 51 at 25-26.) Defendants' protestation that the statement "provides no numbers or percentages" misses the point: TaskUs's attrition—at 40% or higher (¶13)—was not "low" under any definition.

<u>Second</u>, the market valued the misstatements. For example, analysts praised the "tangible business value" of "TaskUs's employee-centric and start-up–like culture . . . driving . . . lower attrition." (ECF 95-1 at 124 of 134.) This closely tracked the misstatement: "The culture and

focus on people allows us to retain talent, continuously improve, and gives us an advantage on key people metrics of efficiency, client satisfaction, and low attrition." (¶170.) In Defendants' cited case, by contrast, the statements were merely "broad generalities" that "no analysts referenced . . . at all." *Kirkland Lake Gold Ltd. Sec. Litig.*, 2024 WL 1342800, at *8-9 (S.D.N.Y. Mar. 29, 2024).

### b. Investors and Analysts Focused on Defendants' Material Lies

While Plaintiffs are "not required to prove" materiality at class certification, *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 470 (2013), Defendants are wrong to claim their lies about "culture" and "low attrition" did not matter to investors.

First, Defendants ignore compelling direct evidence of ███████████████████████ :



- █████████████████████████████████████████████ (Ex. 9 at -049; Ex. 2 at -967.)

- █████████████████████████████████████████████ (Ex. 3 at -975.)

- █████████████████████████████████████████████ (Ex. 4 at -856.)

- █████████████████████████████████ (*Id.* at -861.)

Given this direct evidence—████████████████████████ ████████████—"common sense" confirms that the misstatements impacted TaskUs's share price. *Goldman*, 594 U.S. at 122; *see also In re NIO, Inc. Sec. Litig.*, 2023 WL 5048615, at *15 n.15 (E.D.N.Y. Aug. 8, 2023) (evidence from roadshow indicated that statements "remained important to investors and continued to impact the price as trading on the open market gained steam").

Second, Defendants' own review of analyst commentary bolsters materiality and confirms that TaskUs's claims of superior culture and low attrition influenced the market. (Ex. 1 ¶¶36-54.)

According to Defendants' expert, *most* Class Period analyst reports on TaskUs (26 of 41) discussed attrition. And while price impact does not require analysts to recite the misstatements verbatim, at least two did so, specifically citing "culture" and "low attrition":

- TaskUs had an "advantage on metrics of efficiency, client satisfaction, and low attrition" (ECF 95-1 at 123), directly tracking the misstatements; and

- "TaskUs' focus on culture has also led to . . . low attrition relative to the industry average." (*Id.* at 125.)

At least five other analyst reports similarly cited TaskUs's "focus on culture," "lower attrition," and "lower employee attrition." (Ex. 1 ¶¶71-76.) And after the Spruce Report, analysts recognized its allegations that TaskUs was understating attrition: On January 25, 2022, J.P. Morgan stated: "Actual attrition rate, including all employees, would be much higher than reported numbers." (ECF 95-1 at 30.) While Defendants dispute whether analysts expressly called the misstatement "untrue," they cite no case making that the litmus test for price impact, particularly given the clear evidence here that investors and analysts focused on the misstatements.

### c. Defendants' Premature Attacks on Loss Causation Fail

Finally, Defendants claim the Spruce Report was "not corrective." But the Court has already held that resolving what "in fact drove the stock drop" is "a matter of proof at trial." (ECF 51 at 58-59.) And contrary to Defendants' assertion that "this is the exact determination that must be made" now, courts cannot require "loss causation as a condition of obtaining class certification." *Halliburton*, 563 U.S. at 813.[9] In all events, Defendants are wrong on the merits.

First, Defendants wholly ignore the Report's key revelation that TaskUs had "highly exaggerated" its "claim of a superior culture evidenced by below industry standard workforce attrition" (ECF 34-6 at 7 of 81). This corrective language—which the Court identified as "most

---

[9] *See also Monroe*, 332 F.R.D. at 395 ("[W]hether the stock price decline following individual corrective disclosures was caused by the alleged misrepresentations . . . is a loss causation analysis not appropriate at this stage.").

relevant here" (ECF 51 at 15)—clearly "matches" and undermines Defendants' prior statements about TaskUs's superior "culture" and "advantage" of "low attrition."  Nothing more is required.

Second, the former TaskUs executive's comments that "[t]hey're just kind of pushed in the direction to lie" and "the attrition is significantly worse" plainly included TaskUs and support loss causation, which requires only that the "subject of the fraudulent statement or omission" caused the decline, *Vivendi*, 838 F.3d at 261.  Defendants cannot recast these statements as solely addressing "Disclosed Attrition Rates" or a "general critique of the industry."  Indeed, other BPO companies' qualified disclosures only confirm the significance of Defendants' *unqualified* claim that TaskUs had an "advantage" of "low attrition" over its BPO peers.  And in all events, "[t]here is no requirement" that a corrective disclosure "be a mirror image tantamount to a confession of fraud." *In re Signet Jewelers Ltd. Sec. Litig.*, 2019 WL 3001084, at \*14 (S.D.N.Y. July 10, 2019).

### C.  Mr. Coffman's Established Class-Wide Damages Methodology Is Sufficient

There is no dispute that Mr. Coffman proposes a standard, Class-wide methodology for calculating Exchange Act damages.  Indeed, Defendants cite no case where any court has rejected Mr. Coffman's standard methodology.  At class certification, Plaintiffs are not required to specify a detailed damages model or disaggregate confounding information, and the Second Circuit has squarely rejected Defendants' premature demands for such details.  *Waggoner*, 875 F.3d at 106 ("*Comcast* does not suggest that damage calculations must be so precise at this juncture.").[10]

### III.  THE CLASS DEFINITION IS NOT A FAIL-SAFE CLASS

Defendants cite no securities case rejecting the "damaged thereby" language.  For good reason:  this language is "standard" in securities class actions and does not create a fail-safe class because class membership is "determined via objective criteria." *Facebook*, 312 F.R.D. at 353.

---

[10] *See also Pirnik v. Fiat Chrysler Automobiles, N.V.*, 327 F.R.D. 38, 47–48 (S.D.N.Y. 2018) (certifying class and rejecting argument that proposed damages model did "not control for confounding information").

**CONCLUSION**

Plaintiffs respectfully request that the Court grant the Motion.

Dated:  August 23, 2024

Respectfully submitted,

/s/ Joseph A. Fonti
Joseph A. Fonti
Nancy A. Kulesa
Evan A. Kubota
Thayne Stoddard
**BLEICHMAR FONTI & AULD LLP**
300 Park Avenue, Suite 1301
New York, New York  10022
Telephone: (212) 789-1340
Facsimile: (212) 205-3960
jfonti@bfalaw.com
nkulesa@bfalaw.com
ekubota@bfalaw.com
tstoddard@bfalaw.com

*Counsel for Lead Plaintiff Humberto Lozada
and Named Plaintiff Oklahoma Firefighters
Pension and Retirement System*

John A. Kehoe
Michael K. Yarnoff
**KEHOE LAW FIRM, P.C.**
2001 Market Street, Suite 2500
Philadelphia, Pennsylvania  19103
Telephone: (212) 792-6676
jkehoe@kehoelawfirm.com
myarnoff@kehoelawfirm.com

*Additional Counsel for Lead Plaintiff
Humberto Lozada*

11