**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HUMBERTO LOZADA and OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM Individually and on Behalf of All Others Similarly Situated, | Case No.  1:22-cv-01479 |
| Plaintiffs, | CLASS ACTION |
| v. | |
| TASKUS, INC., BRYCE MADDOCK, JASPAR WEIR, BALAJI SEKAR, AMIT DIXIT, MUKESH MEHTA, SUSIR KUMAR, JACQUELINE D. RESES, and BCP FC AGGREGATOR L.P., | |
| Defendants. | |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ......................................................................................................................2

ARGUMENT...........................................................................................................................4

       I.       DEFENDANTS' PREMATURE ATTACKS ON LOSS CAUSATION
                AND MATERIALITY ARE BARRED UNDER CONTROLLING LAW ............4

       II.      DEFENDANTS FAIL TO CARRY THEIR DAUNTING BURDEN TO
                PROVE THAT THEIR MATERIAL MISSTATEMENTS HAD NO
                PRICE IMPACT .....................................................................................................6

                A.     The Report Revealed New, Negative, Material Information ......................7

CONCLUSION.....................................................................................................................10

## TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page(s)**

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013) ................................................................................................... 1, 4, 5

*Aranaz v. Catalyst Pharma. Partners Inc.*,
   302 F.R.D. 657 (S.D. Fla. 2014) ....................................................................................... 5

*Ark. Teacher Ret. Sys. v. Goldman Sachs Grp., Inc.*,
   77 F.4th 74 (2d Cir. 2023) ................................................................................................. 6

*Bos. Ret. Sys. v. Alexion Pharms., Inc.*,
   2023 WL 2932485 (D. Conn. Apr. 13, 2023) ................................................................ 6, 7

*Bos. Ret. Sys. v. Alexion Pharms., Inc.*,
   556 F. Supp. 3d 100 (D. Conn. Aug. 19, 2021) ................................................................ 6

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   563 U.S. 804 (2011) ...................................................................................................... 1, 4

*Ganino v. Citizens Utilities Co.*,
   228 F.3d 154 (2d Cir. 2000)...................................................................................... 2, 5, 7, 8

*Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*,
   594 U.S. 113 (2021) .......................................................................................................... 6

*In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*,
   2020 WL 1329354 (S.D.N.Y. Mar. 23, 2020) ................................................................. 5

*In re Invs. Mgmt. Co., Inc.*,
   44 S.E.C. 633 (July 29, 1971) .......................................................................................... 8

*In re MINISO Grp. Holding Ltd. Sec. Litig.*,
   2024 WL 759246 (S.D.N.Y. Feb. 23, 2024) .................................................................... 6

*In re Omnicom Group, Inc. Sec. Litig.*,
   597 F.3d 501 (2d Cir. 2010)............................................................................................. 6

*In re Signet Jewelers Ltd. Sec. Litig.*,
   2019 WL 3001084 (S.D.N.Y. July 10, 2019) ............................................................... 2, 7

*Lea v. TAL Educ. Grp.*,
   837 F. App'x 20 (2d Cir. 2020)...................................................................................... 6, 9

*Meyer v. Greene*,
   710 F.3d 1189 (11th Cir. 2013)........................................................................................ 6

*Monroe Cty. Emps.' Ret. Sys. v. Southern Co.*,
    332 F.R.D. 370 (N.D. Ga. 2019) .......................................................................................... 5

*Pearlstein v. BlackBerry Ltd.*,
    2021 WL 253453 (S.D.N.Y. Jan. 26, 2021) ...................................................................... 5, 9

*SEC v. AT&T, Inc.*,
    626 F. Supp. 3d 703 (S.D.N.Y. 2022) ................................................................................ 10

*SEC v. Texas Gulf Sulphur Co.*,
    401 F.2d 833 (2d Cir. 1968) ................................................................................................ 7

*TSC Indus., Inc. v. Northway, Inc.*,
    426 U.S. 438 (1976) ............................................................................................................. 5

*U.S. v. Whitman*,
    904 F. Supp. 2d 363 (S.D.N.Y. 2012) ............................................................................... 10

## PRELIMINARY STATEMENT[1]

Defendants' submission ("Br.," ECF 166) is a summary judgment motion in all but name. At class certification, Defendants ask this Court to make intensely fact-specific determinations on whether information in the Spruce Report was "material," "non-public," and "corrective" (Br. at 1) without the full record—including ongoing fact discovery and expert discovery that will be complete in a few months. There is no basis to decide these disputed, fact-intensive issues now.

To be clear, Defendants' arguments have no impact on class certification for the Securities Act claims (*see* Br. at 1-2). As to the Exchange Act claims, Defendants' premature arguments fail.

First, Defendants' assertions that the Report "contained no material non-public information" and was not "corrective"—a term Defendants use 32 times—are thinly disguised attacks on materiality and loss causation. Controlling law forecloses these merits arguments at class certification. *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 468 (2013) (plaintiffs "not required to prove" materiality at class certification); *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 813 (2011) (courts cannot require "loss causation as a condition of obtaining class certification"). Indeed, Defendants cite *no case* where any court has resolved such issues at class certification. To do so here would be particularly inappropriate given the evolving record, including Plaintiffs' outstanding requests for Hayes' deposition and related documents.

In all events, Defendants' loss causation arguments are wrong. The Report, which was the product of 240 hours of research (Ex. 1 at 113:11-14), concluded that TaskUs's claims about "attrition" and "culture" were "highly exaggerated" and "Potentially Misleading." Those conclusions directly undermined Defendants' statements that TaskUs's "culture and focus on people . . . gives us an advantage on key people metrics of efficiency, client satisfaction, and

---

[1] Emphasis added and citations and quotations omitted unless otherwise noted. "Ex." citations refer to exhibits to the Declaration of Joseph A. Fonti filed herewith. "¶" citations refer to the Complaint (ECF 26).

low attrition." (¶170.) And they were corroborated by TaskUs insider Hayes' new, previously non-public statements that "attrition is significantly worse," "most" attrition was not disclosed, and BPO companies were "pushed in the direction to lie."

Second, Defendants fail to carry their burden on "price impact," which requires them to prove that neither the misstatements nor their correction had *any* effect on TaskUs's share price. Indeed, Defendants offer no explanation for TaskUs's immediate 14.1% share price decline upon the Report's publication—empirical proof that the Report contained new, negative information, since "stale, already-known information" does not cause a decline. *In re Signet Jewelers Ltd. Sec. Litig.*, 2019 WL 3001084, at *16–17 (S.D.N.Y. July 10, 2019). Given the undisputed fact that the Report caused a significant decline in TaskUs's share price—indicating new, value-relevant information—Defendants' arguments about whether it contained "MNPI" are merely semantic.

Further, while Defendants assert that the Report repeated "public information," they offer *no* supporting evidence. That is because Defendants are wrong: Spruce Point obtained *non-public* information from Hayes in a non-public call—including Hayes' comments that "the attrition is *significantly worse*," "because it is so impactful to BPO businesses' bottom line[,] they're just kind of *pushed in [the] direction to lie*," and the "level of deception" about attrition rates "*forces TaskUs to jump in on that as well, because you can't go out and say, here's the truth, right?*" Unsurprisingly, Defendants cite no prior public disclosure of these material facts, much less with "intensity and credibility sufficient to counter-balance effectively" their misstatements. *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 167 (2d Cir. 2000). Defendants' arguments thus fail.

## BACKGROUND

At the motion to dismiss stage, the Court analyzed the Spruce Report holistically to conclude that the Complaint "sufficiently alleges loss causation." (ECF 51 at 59.) The Report claimed TaskUs's "publicly disclosed [attrition] figures were misleading." (*Id.* at 57.) Although

the Report's analysis of a draft prospectus, "*standing alone*, is insufficient to plead loss causation," it "also relied on statements attributed to a former TaskUs 'executive' to argue that the company had been making '[p]otentially [m]isleading [e]mployee [a]ttrition [c]laims.'" (*Id.* at 57-58.)

The former TaskUs "executive" was Robert Hayes, Chief Operating Officer until December 2020. On January 13, 2022, Hayes participated in a paid, non-public interview with Axler of Spruce Point. The call was arranged by a costly private expert network called Coleman Research; Spruce Point paid up to $20,000/year for its membership. (Ex. 1 at 113:15-114:16.)

During the call, Hayes provided **new, material, non-public** information. For example:

- Hayes broadly stated that "it is just classic that [BPO companies] understate" their attrition, "[a]nd they understate it in many, many ways and this is not TaskUs. This is **every company** I've ever worked for in the BPO sphere." (ECF 167-3 at 46:20-23.) In context, these comments included TaskUs, which was the most recent company Hayes had "worked for in the BPO sphere." (*Id.*)

- Further calling TaskUs's attrition into question, Hayes stated that "there's just a lot of different ways to manipulate [attrition] and . . . because it is so impactful to BPO businesses' bottom line[,] they're just kind of pushed in [the] direction to lie." (*Id.* at 47:7-15.) Hayes further stated that "the attrition is significantly worse." (*Id.* at 47:15.)

- Leaving no doubt that TaskUs was included in Hayes' comments, he added that there was a "level of deception" about BPO companies' attrition rates that was "almost collusion," and "**forces TaskUs to jump in on that as well**, because you can't go out and say, here's the truth, right? Because then you look really bad." (*Id.* at 48:9-17.)

- Hayes indicated that TaskUs's overall attrition was significantly worse than the narrow, post-180-day figure the Company publicly reported: "[A]fter they became a public company, then they decide to start looking at only 180 day [sic] and greater. Well, guess where the [sic] most of the attrition in all of these businesses comes from? It's in the f[irst][2] 90 days, right?" (*Id.* at 48:22-49:2.)

Defendants cite no evidence that any of these statements were public before the Report. While Defendants assert that Axler did not view them as "MNPI" (a legal term Defendants did not define in questioning him), Axler was not aware of any prior public disclosure of the information

---

[2] Defendants have transcribed "first" as "f- --," since the audio briefly dropped out during that word.

at slides 6 and 35-37 of the Report. (Ex. 1 at 114:20-117:13.) He had seen no public documents with the statements attributed to Hayes on slide 36 of the Report (*id.* at 116:6-14). Further, Axler:

- Was not aware of anyone publicly asserting that TaskUs's "claim of a superior corporate culture evidenced by below [industry standard] workforce attrition appear to be highly exaggerated." (*Id.* at 116:23-117:13.)

- Had not seen anyone publicly state that TaskUs's attrition claims were potentially misleading (*id.* at 115:19-116:5) or that its attrition was 46 percent (*id.* at 116:15-22), or question why TaskUs's disclosed attrition was qualified for 180 days and declining, while its closest public peer reported rising attrition (*id.* at 114:23-115:14).

On Nov. 15, 2024, Defendants disclosed, for the first time, Hayes "as likely to have discoverable information that Defendants may use to support their claims or defenses" (Ex. 2 at 2). Within days, Plaintiffs sought Hayes' deposition and related documents (including any alleged prior disclosure of information in the Spruce Report (Ex. 3, RFP No. 12)). Defendants' counsel, who represent Hayes, have not responded to Plaintiffs' Nov. 22 and Dec. 5 requests to depose Hayes. Nor have they agreed to produce documents from Hayes or TaskUs, although they finally stated today that Hayes "will consider" making a "voluntary production."

**ARGUMENT**

**I.     DEFENDANTS' PREMATURE ATTACKS ON LOSS CAUSATION AND MATERIALITY ARE BARRED UNDER CONTROLLING LAW**

Defendants assert that the Spruce Report was "not corrective" and that "the Court must consider" now whether it "contained MNPI" (Br. at 1-2). But these premature arguments about what was "corrective," material, and non-public relate squarely to loss causation and materiality— Class-wide merits issues to be addressed at summary judgment or trial.

<u>First</u>, determining whether the Report was "corrective" *is* loss causation, period. Defendants identify no way it is different. And the Supreme Court has made clear that "loss causation [is a] common question[] that need[s] not be adjudicated before a class is certified." *Amgen*, 568 U.S. at 475; *see also Halliburton I*, 563 U.S. at 813. Likewise, this Court has held

4

that resolving what "in fact drove the stock drop" is "a matter of proof at trial."  (ECF 51 at 58-59.)  Thus, "whether the stock price decline following individual corrective disclosures was caused by the alleged misrepresentations . . . is a loss causation analysis not appropriate at this stage." *Monroe Cty. Emps.' Ret. Sys. v. Southern Co.*, 332 F.R.D. 370, 395 (N.D. Ga. 2019); *see also Pearlstein v. BlackBerry Ltd.*, 2021 WL 253453, at *18 (S.D.N.Y. Jan. 26, 2021) ("Defendants' 'correctiveness' arguments are inappropriate at the Rule 23 stage.").

Second, Defendants' assertion that the Report was "based on public information" is a premature "truth on the market" defense, which posits that "a misrepresentation is immaterial if the information is already known to the market."  *Ganino*, 228 F.3d at 167.  That defense "is intensely fact-specific" and requires Defendants to prove that corrective information was "conveyed to the public with a degree of intensity and credibility sufficient to counter-balance effectively" the misstatements.  *Id.*  Here, Defendants offer no such evidence (as detailed below), and their premature "truth-on-the-market defense may not be used at the class certification stage to prove an absence of price impact . . . because it goes to materiality."  *Aranaz v. Catalyst Pharma. Partners Inc.*, 302 F.R.D. 657, 671 (S.D. Fla. 2014) (citing *Ganino*).  Thus, when "news of the [truth] credibly entered the market" is "a matter for trial," not class certification.  *Amgen*, 568 U.S. at 482; *see also TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976) (materiality requires "delicate assessments" that "are peculiarly ones for the trier of fact").

Indeed, Defendants cite no class certification decision where any court has resolved the fact-intensive loss causation and materiality issues they raise.  Their citation to *In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*, 2020 WL 1329354, at *5-6 (S.D.N.Y. Mar. 23, 2020), lends no support to such a premature merits inquiry because that court—in certifying the class—simply assessed whether a corrective disclosure "relates to the same subject matter" as the misrepresentation.

The Spruce Report clearly does:  it stated that Defendants' claims about TaskUs's "attrition" and "culture" were "highly exaggerated."  Nor does *Goldman* warrant Defendants' premature merits arguments.  (Br. at 6.)  Under *Goldman*, the "mismatch" inquiry merely considers the "fit" between a misstatement and corrective disclosure, which need not be "precise."  *Ark. Teacher Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74, 99 n.11 (2d Cir. 2023).  That limited inquiry has nothing to do with Defendants' fact-intensive loss causation arguments.  In all events, there is no "mismatch," and Defendants' arguments fail (ECF 116 at 11-14 of 15).

None of Defendants' other cases involved class certification.  Instead, they only addressed loss causation at the pleading stage or summary judgment, consistent with *Halliburton I* and *Amgen*.  And none of Defendants' cases involved new, non-public information.  For example, in *In re Omnicom Group, Inc. Sec. Litig.*, 597 F.3d 501, 505, 514 (2d Cir. 2010), "the facts were known a year before" the stock drop from multiple public articles.  Likewise, in *Meyer v. Greene*, 710 F.3d 1189, 1200 (11th Cir. 2013), the information was "public for months" before the short-seller report.  Here, Defendants cite no prior public disclosure at all.[3]

## II.    DEFENDANTS FAIL TO CARRY THEIR DAUNTING BURDEN TO PROVE THAT THEIR MATERIAL MISSTATEMENTS HAD NO PRICE IMPACT

To rebut the *Basic* presumption of reliance, Defendants "must show that the alleged misstatements caused *no* price impact whatsoever."  *Bos. Ret. Sys. v. Alexion Pharms., Inc.*, 2023 WL 2932485, at *11 (D. Conn. Apr. 13, 2023) (emphasis in original).  Defendants "bear[] the burden of persuasion to prove a lack of price impact" by "a preponderance of the evidence."  *Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 594 U.S. 113, 126 (2021).

---

[3] *In re MINISO Grp. Holding Ltd. Sec. Litig.*, 2024 WL 759246, at *20 (S.D.N.Y. Feb. 23, 2024), is irrelevant because the report did not "disclose any new facts"; further, the "interview" was with a "Chinese franchisee," *id.* at *5, not a senior executive insider like Hayes.  Defendants' remark that *Lea v. TAL Educ. Grp.*, 837 F. App'x 20, 28 (2d Cir. 2020), and *Bos. Ret. Sys. v. Alexion Pharms., Inc.*, 556 F. Supp. 3d 100, 141 (D. Conn. Aug. 19, 2021), involved multiple interviews is irrelevant because the interviews' content, not number, is what matters.

Defendants fail to do so.  Indeed, they still offer **no explanation** for TaskUs's statistically significant Company-specific 14.1% stock drop that immediately followed the Spruce Report's release on January 20, 2022 (ECF 116 at 10-11 of 15).[4]  Defendants thus fail to "prove[] a complete lack of price impact."  *Alexion*, 2023 WL 2932485 at *12.  Instead, Defendants merely assert that the Report repeated "public information" and was not "corrective."  These assertions fail.

### A.    The Report Revealed New, Negative, Material Information

Defendants fail to prove that "the attrition related discussion" in the Report was "nothing but public information" (Br. at 8).  Under controlling law, to be deemed public, information must be "effectively disclosed in a manner sufficient to insure its availability to the investing public." *SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 854 (2d Cir. 1968).  And Defendants must prove that any purportedly curative information was "conveyed to the public with a degree of intensity and credibility sufficient to counter-balance effectively" their misstatements.  *Ganino*, 228 F.3d at 167.  Defendants utterly fail to do so.  Indeed, they cite no prior public disclosure at all.

First, TaskUs's 14.1% single-day stock drop confirms price impact and that the Report contained new, corrective information.  Defendants do not dispute that the Report caused the entire decline.  And if the Report contained no "new" information, TaskUs's share price would not have declined at all, since "one would not expect a company whose stock traded in an efficient market to find its share price cratering . . . upon the publication of stale, already-known information." *Signet*, 2019 WL 3001084 at *16–17.  Indeed, Defendants' own expert opined that "previously disclosed information could not have caused a decline in TaskUs's stock price."  (ECF 95-1 ¶19.) Likewise, Axler agreed that if he merely "recycle[d] something that was widely known, easy to access, it likely wouldn't have any impact on stock prices" (Ex. 1 at 109:22-110:6), and academic

---

[4] Defendants' submission also has no bearing on front-end price impact.

literature has found investors ignore reports "that merely reinterpret known data" (Ex. 4 at 1978).

Second, it is undisputed that Spruce Point obtained Hayes' information from a non-public call through a private service that cost up to $20,000/year.  (*Supra* at 3.)  Defendants admit the Hayes interview "was not public." (Br. at 8.)  Standing alone, that dooms Defendants' arguments.[5]

Third, Defendants offer *no evidence* that the information at issue had appeared in *any* public source before the Report.  That is dispositive.  If the "truth . . . was already known" and "conveyed to the public with . . . intensity and credibility," *Ganino*, 228 F.3d at 167, Defendants presumably would cite ample evidence to support their assertions.  But Defendants cite no prior public disclosure—in any form—that "attrition is significantly worse," that BPO companies were "pushed in the direction to lie," or that TaskUs's claims about attrition and culture were "highly exaggerated" and "Potentially Misleading."  Nor was Axler aware of any. (*Supra* at 3-4.)

To distract from this fatal lack of evidence, Defendants vaguely assert that Hayes' comments were "obvious" and it was "publicly known" that BPO companies "use various metrics to publicly report attrition numbers."  But that is a red herring because that is simply not what the Report (or Hayes) said. (*Supra* at 3.)  Defendants' expert's review of other BPO companies' public filings is equally irrelevant; none revealed that TaskUs's claims were "highly exaggerated" and its attrition was not "low."  And Defendants' claims that Hayes was "misquoted," opined solely about "the industry," and said TaskUs was "better" (Br. at 9) fail because the market saw the Report as new, negative, and highly relevant to TaskUs's valuation—as the undisputed stock drop confirms.[6]

Fourth, TaskUs's response to the Spruce Report confirms that it provided new, material

---

[5] *See, e.g.*, *In re Invs. Mgmt. Co., Inc.*, 44 S.E.C. 633 at \*7 (July 29, 1971) ("information is non-public when it has not been disseminated in a manner making it available to investors generally").

[6] Indeed, while the Report states Hayes' view that high attrition was "not worrisome from a competitive standpoint," the Court has already noted that "it is possible the market disagreed" (ECF 51 at 58-59).

information: ███████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

TaskUs clients were "getting a lot of questions" (ECF 147-11), ███████████████

████████████████████████████████

████████████████████████████████

████.    And TaskUs publicly denounced the Report for "numerous inaccuracies and mischaracterizations" (Ex. 8, Press Release), which "alone indicates that the [R]eport got some attention where it mattered." *BlackBerry*, 2021 WL 253453 at *19 (certifying class).

Unable to explain the stock drop or prove that any information was previously public, Defendants retreat to secondary arguments that Hayes was warned not to disclose MNPI, Axler testified slide 36 (containing Hayes' comments) "was not MNPI," and the Report contained a similar disclaimer.  (Br. at 8.)  These arguments fail.  Indeed, Defendants cite no case finding that such testimony and disclaimers rebutted price impact, especially where—as here—the defendants offer no explanation for a large price decline and no evidence of a prior public disclosure.

First, Axler's testimony and boilerplate admonition to Hayes say no more than the Report's written disclaimer, which Defendants raised unsuccessfully on their motion to dismiss.  As the Second Circuit has made clear, such disclaimers do not establish that the content of a corrective disclosure was previously public.  Thus, in *Lea*, 837 F. App'x at 28, the Circuit sustained loss causation despite a disclaimer "expressly stat[ing] that 'all information contained herein . . . has been obtained from public sources.'"  Defendants' failure to identify any prior public disclosure of the Report's conclusions confirms the point.

9

<u>Second</u>, Axler's testimony about "MNPI" is unsurprising, since witnesses are unlikely to admit they received MNPI and risk liability for insider trading. It is also irrelevant because Axler's inadmissible legal opinion does not establish a prior public disclosure. For example, in an SEC action based on AT&T's selective disclosure of MNPI to analysts, Judge Engelmayer found that "the evidence overwhelmingly supports the SEC as to the materiality and nonpublic elements" and denied the defendants' summary judgment motion. *SEC v. AT&T, Inc.*, 626 F. Supp. 3d 703, 759, 777 (S.D.N.Y. 2022). Notably, the *AT&T* defendants submitted declarations "denying that they conveyed" MNPI and argued that "not a single analyst testified that they thought they received" MNPI (No. 21-cv-1951, ECF 199 at 3, 8 & 204 at 6). The SEC argued that such testimony "rests upon inadmissible legal conclusions of fact witnesses" (*id.* ECF 208 at 3). The same is true here.

<u>Third</u>, TaskUs's internal policies confirm that Hayes' information was material and non-public. "What is 'nonpublic' or 'confidential' information is largely a factual issue, turning on such factors as written company policies, employee training, measures the employer has taken to guard the information's secrecy, [and] the extent to which the information is known outside" the company. *U.S. v. Whitman*, 904 F. Supp. 2d 363, 367 (S.D.N.Y. 2012). Here, ██████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████—was non-public.

At bottom, Defendants' sound bites about "MNPI" cannot overcome (a) the clear evidence that the information at issue was material, non-public, and costly to obtain, and (b) Defendants' failure to identify any prior public disclosure and any explanation for TaskUs's 14.1% decline.

## CONCLUSION

Plaintiffs respectfully request that the Court grant the Motion for Class Certification.

10

Dated:  December 13, 2024

Respectfully submitted,

*/s/ Joseph A. Fonti*
Joseph A. Fonti
Nancy A. Kulesa
Evan A. Kubota
Thayne Stoddard
**BLEICHMAR FONTI & AULD LLP**
300 Park Avenue, Suite 1301
New York, New York  10022
Telephone: (212) 789-1340
Facsimile: (212) 205-3960
jfonti@bfalaw.com
nkulesa@bfalaw.com
ekubota@bfalaw.com
tstoddard@bfalaw.com

*Counsel for Lead Plaintiff Humberto Lozada
and Named Plaintiff Oklahoma Firefighters
Pension and Retirement System*

John A. Kehoe
Michael K. Yarnoff
**KEHOE LAW FIRM, P.C.**
2001 Market Street, Suite 2500
Philadelphia, Pennsylvania  19103
Telephone: (212) 792-6676
jkehoe@kehoelawfirm.com
myarnoff@kehoelawfirm.com

*Additional Counsel for Lead Plaintiff
Humberto Lozada*

11