## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HUMBERTO LOZADA and OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM Individually and on Behalf of All Others Similarly Situated, | Case No.  1:22-cv-01479 <br><br> <u>CLASS ACTION</u> |
| Plaintiffs, | |
| v. | |
| TASKUS, INC., BRYCE MADDOCK, JASPAR WEIR, BALAJI SEKAR, AMIT DIXIT, MUKESH MEHTA, SUSIR KUMAR, JACQUELINE D. RESES, and BCP FC AGGREGATOR L.P., | |
| Defendants. | |

## <u>STIPULATION OF SETTLEMENT</u>

This Stipulation and Agreement of Settlement (the "Stipulation" or "Settlement Agreement") is made and entered into by and between Lead Plaintiff Humberto Lozada and Named Plaintiff Oklahoma Firefighters Pension and Retirement System (together, "Plaintiffs"), on the one hand, and Defendants TaskUs, Inc., Bryce Maddock, Jaspar Weir, Balaji Sekar, Amit Dixit, Mukesh Mehta, Susir Kumar, Jacqueline D. Reses, and BCP FC Aggregator L.P. (collectively, "Defendants," and with Plaintiffs, the "Parties"), on the other hand, by and through their counsel of record in the above-captioned litigation (the "Litigation") pending in the United States District Court for the Southern District of New York (the "Court").  This Stipulation is intended by Plaintiffs, on behalf of themselves and each of the Settlement Class Members (as defined below), and Defendants to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined in ¶1.35 hereof), upon and subject to the terms and conditions hereof and subject to the Court's approval.

WHEREAS:

A.      All words or terms used herein that are capitalized shall have the meanings ascribed to those words or terms herein and in ¶1 hereof entitled "Definitions."

B.      On February 23, 2022, the initial Class Action Complaint for Violations of the Securities Laws (the "Complaint") was filed in the Litigation.  ECF No. 1.

C.      On October 20, 2022, the Court entered an order appointing Humberto Lozada as Lead Plaintiff and Bleichmar Fonti & Auld LLP as lead counsel ("Lead Counsel").  ECF No. 20.

D.      On December 16, 2022, Lead Plaintiff  Humberto Lozada together with named Plaintiff Oklahoma Firefighters Pension and Retirement System filed an Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Amended Complaint"), which is the operative complaint in the Litigation, against Defendants.  ECF No. 26.

E.      On January 5, 2024, after extensive briefing and oral argument, the Court denied in part Defendants' motion to dismiss.  ECF No. 51.

F.      Thereafter, the Parties engaged in extensive discovery, including the exchange of numerous requests for documents and written discovery; the production of over 414,000 pages of documents by Defendants and over 129,000 pages by non-parties; 13 fact depositions; and the depositions of two experts.

G.      On January 28, 2025, the Parties engaged in a confidential full-day mediation before mediator David Murphy of Phillips ADR.  Prior to that confidential mediation, the Parties exchanged opening and rebuttal mediation statements with exhibits.  Despite good faith efforts to resolve the Litigation during the mediation, the Parties were unable to reach agreement.  At the conclusion of the January 28, 2025 mediation, Mediator Murphy made a formal mediator's proposal that the case settle for $17.5 million.  The Parties accepted the proposal on January 30, 2025, and thereafter began negotiating this Settlement Agreement.

H.      This Stipulation, together with the exhibits hereto and the Supplemental Agreement defined in ¶1.44 below, constitute the final and binding agreement between the Parties.

I.      Plaintiffs and Lead Counsel believe that the claims and allegations in the Litigation have merit and that the information developed to date supports the claims and allegations asserted. However, Plaintiffs and Lead Counsel recognize and acknowledge the risk, expense and length of continued proceedings necessary to prosecute the Litigation against Defendants through summary judgment, trial and through appeals.  Plaintiffs and Lead Counsel are also mindful of the problems of proof and possible defenses to the securities law violations asserted in the Litigation.  Plaintiffs and Lead Counsel believe that the Settlement set forth in this Stipulation confers substantial benefits upon Settlement Class Members in light of the circumstances here, is in the best interests of Plaintiffs and Settlement Class Members, and is fair, reasonable, and adequate.

J.       Throughout this Litigation, Defendants have denied, and continue to deny, each and all of the claims and contentions alleged by Plaintiffs, as well as any and all allegations of fault, liability, misconduct, wrongdoing, or damages whatsoever. Among other things, Defendants expressly have denied, and continue to deny, that Defendants made any false or misleading statements, that any statement during the Class Period was made with scienter, that any alleged false or misleading statement caused TaskUs's stock to be offered or trade at artificially inflated prices, that any such alleged false or misleading statement caused TaskUs's stock price to decline, that any Settlement Class Member, suffered any damages, or that any Settlement Class Member was harmed by any conduct alleged in the Litigation or that could have been alleged therein. Defendants maintain that Defendants have meritorious defenses to the claims alleged in the Litigation.

K.      Neither the Settlement itself nor any of the terms of this Stipulation or the Agreement shall be construed or deemed to be evidence of or constitute an admission, concession,

or finding of any fault, liability, wrongdoing, or damage whatsoever, or any infirmity in the defenses that Defendants have, or could have, asserted in the Litigation. Defendants are entering into this Stipulation solely to avoid and eliminate the burden, expense, uncertainty, and risk of further litigation. Defendants have determined that it is desirable and beneficial to them that the Litigation be settled in the manner and upon the terms and conditions set forth in this Stipulation to obtain the conclusive and final dismissal and/or release of this Litigation, as to them, and the Released Claims.

NOW THEREFORE, without any concession by Plaintiffs that the Litigation lacks merit, and without any concession by the Defendants of any liability or wrongdoing or lack of merit in their defenses, it is hereby STIPULATED AND AGREED, by and among the Parties to this Stipulation, through their respective attorneys, subject to approval by the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, that in consideration of the benefits flowing to the Parties hereto, all Released Claims as against all Released Parties shall be fully, finally, and forever compromised, settled, released, waived, discharged, and dismissed with prejudice, and without costs, upon and subject to the following terms and conditions:

## 1.    Definitions

As used in this Stipulation, as well as any exhibits attached hereto and made part hereof and the Supplemental Agreement as defined below, the following terms have the meanings specified below:

1.1    "Amended Complaint" means Plaintiffs' Amended Class Action Complaint for Violations of the Federal Securities Laws, filed in the Litigation on December 16, 2022. ECF No. 26.

1.2    "Authorized Claimant" means any Settlement Class Member whose claim for recovery has been allowed pursuant to the terms of the Stipulation.

1.3    "Claimant" means any Settlement Class Member who files a Proof of Claim in such form and manner, and within such time, as the Court shall prescribe.

1.4    "Claims Administrator" means Epiq Class Action & Claims Solutions, Inc.

1.5    "Class Period" means the period from June 11, 2021 through January 19, 2022, both inclusive.

1.6    "Complaint" means the initial Class Action Complaint for Violations of the Securities Laws, filed in the Litigation on February 23, 2022.  ECF No. 1.

1.7    "Court" means the United States District Court for the Southern District of New York.

1.8    "Defendants" means TaskUs, Inc., Bryce Maddock, Jaspar Weir, Balaji Sekar, Amit Dixit, Mukesh Mehta, Susir Kumar, Jacqueline D. Reses, and BCP FC Aggregator L.P.

1.9    "Defendants' Counsel" means Simpson Thacher & Bartlett LLP.

1.10    "Effective Date" means the first date by which each of the conditions specified in ¶8.1 of the Stipulation have occurred or have been waived.

1.11    "Escrow Account" means the segregated and separate escrow account designated and controlled by Lead Counsel into which the Settlement Amount will be deposited for the benefit of the Settlement Class.

1.12    "Escrow Agent" means The Huntington National Bank.

1.13    "Fee and Expense Application" shall have the meaning set forth in ¶7.1 of this Stipulation.

1.14    "Fee and Expense Award" shall have the meaning set forth in ¶6.2(c) of this Stipulation.

1.15    "Final," with respect to the Judgment approving the Stipulation, means when the last of the following shall occur: (i) the expiration of the time to file a motion to alter or amend the

Judgment under Federal Rule of Civil Procedure 59(e) has passed without any such motion having been filed; (ii) the expiration of the time in which to appeal the Judgment has passed without any appeal having been taken, which date shall be deemed to be thirty (30) days following the entry of the Judgment, unless the date to take such an appeal shall have been extended by Court order or otherwise (in which case the date for purposes of this Stipulation shall be deemed to be the next business day after such date), or unless the thirtieth (30th) day falls on a weekend or a Court holiday, in which case the date for purposes of this Stipulation shall be deemed to be the next business day after such thirtieth (30th) day; (iii) if a motion to alter or amend the Judgment is timely filed, and the motion is denied; and (iv) if an appeal is taken, either: (a) the appeal has been dismissed and the time, if any, for commencing any further appeal has expired; or (b) the Judgment has been affirmed in its entirety and the time, if any, for commencing any further appeal has expired.  For purposes of this paragraph, an "appeal" shall include any petition for a writ of certiorari or other writ or request for judicial review that may be filed in connection with approval or disapproval of this Settlement, but shall not include any appeal that concerns only the issue of attorneys' fees or expenses, the Plan of Allocation of the Settlement Fund, or the procedures for determining Authorized Claimants' recognized claims.

1.16    "Final Approval Hearing" means the hearing to determine whether the proposed Settlement embodied by this Stipulation is fair, reasonable, and adequate to the Settlement Class, and whether the Court should enter a Judgment approving the proposed Settlement.

1.17    "TaskUs" or the "Company" means TaskUs, Inc.

1.18    "Judgment" means the judgment to be rendered by the Court, substantially in the form attached hereto as Exhibit B, or such other substantially similar form mutually agreed upon by the Parties.

1.19    "Lead Counsel" means Bleichmar Fonti & Auld LLP.

1.20    "Litigation" means the civil action captioned *Lozada v. TaskUs, Inc., et al.*, No. 1:22-cv-01479, pending in the United States District Court for the Southern District of New York.

1.21    "Long-Form Notice" shall have the meaning set forth in ¶4.1 of this Stipulation.

1.22    "Net Settlement Fund" shall have the meaning set forth in ¶6.2(d) of this Stipulation.

1.23    "Notice" shall have the meaning set forth in ¶4.1 of this Stipulation.

1.24    "Notice and Administration Costs" shall have the meaning set forth in ¶2.8 of this Stipulation.

1.25    "Notice Order" means the preliminary approval order as entered by the Court for mailing and publication of notice.

1.26    "Parties" means, collectively, Plaintiffs, on behalf of themselves and each of the Settlement Class Members, and Defendants.

1.27    "Party" means, individually, any Plaintiff, on behalf of himself or itself and each of the Settlement Class Members, or any Defendant.

1.28    "Person" means a natural person, individual, corporation (including all divisions and subsidiaries thereof), partnership, limited partnership, limited liability company, joint venture, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, executors, administrators, guardians, conservators, predecessors, successors, agents, trustees, estates, representatives, or assignees.

1.29    "Plaintiffs" means Lead Plaintiff Humberto Lozada and Named Plaintiff Oklahoma Firefighters Pension and Retirement System.

1.30    "Plaintiffs' Counsel" means Lead Counsel, Kehoe Law Firm P.C., and The Law Offices of Susan R. Podolsky.

1.31    "Plan of Allocation" means a plan or formula of allocation of the Settlement Fund whereby the Settlement Fund shall be distributed to Authorized Claimants after payment of expenses of notice and administration of the Settlement, Taxes and Tax Expenses, and such attorneys' fees, expenses, and interest as may be awarded by the Court, and any award to Plaintiffs. Any Plan of Allocation is not part of this Stipulation and Defendants and their Related Parties shall have no responsibility therefor or liability with respect thereto.

1.32    "Proof of Claim" shall have the meaning set forth in ¶5.3 of this Stipulation.

1.33    "PSLRA" means the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 77z-1 and 15 U.S.C. § 78u-4, as amended.

1.34    "Related Parties" means each of a Defendant's past, present or future directors, officers, employees, partners, insurers, co-insurers, reinsurers, principals, controlling shareholders, members, agents, administrators, attorneys, accountants, auditors, bankers, underwriters, investment advisors, consultants, personal or legal representatives, predecessors, successors, direct and/or indirect parents, subsidiaries, divisions, joint ventures, partnerships, limited liability companies, affiliates, assigns and assignees, spouses, heirs, estates, related or affiliated entities, any entity in which a Defendant has a majority interest, any member of a Defendant's immediate family, any trust of which a Defendant is the settlor or which is for the benefit of a Defendant and/or any member of a Defendant's immediate family, and any entity in which a Defendant and/or any member of a Defendant's immediate family has or had a majority interest (directly or indirectly).

1.35    "Released Claims" means any and all claims (including Unknown Claims as defined in ¶1.47 hereof), rights, demands, losses, suits, debts, obligations, damages, judgments, controversies, liabilities, or causes of action of every nature and description whatsoever, in law, equity, or otherwise (including, but not limited to, any claims for damages, interest, attorneys'

fees, expert or consulting fees, and any other costs, expenses, or liabilities whatsoever), whether asserted or unasserted, accrued or unaccrued, fixed or contingent, whether arising under federal, state, local, common, or foreign law, or any other law, rule, or regulation, whether class or individual in nature, to the fullest extent that the law permits their release in this Litigation against any of the Defendants or their Related Parties, which arise out of, are based on, or relate in any way to both: (i) the allegations, acts, transactions, facts, events, matters, occurrences, disclosures, statements, filings, events, representations, or omissions involved, set forth, alleged, or referred to in the Complaint, Amended Complaint, or the Litigation, or which could have been alleged in the Litigation; and (ii) the purchase, sale, holding, or other acquisition, disposition, or holding of TaskUs Class A common stock during the Class Period.  Released Claims also include any and all claims (including Unknown Claims as defined in ¶1.47 hereof), rights, demands, losses, suits, debts, obligations, damages, judgments, controversies, liabilities, or causes of action of every nature and description whatsoever, in law, equity, or otherwise (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses, or liabilities whatsoever), whether asserted or unasserted, accrued or unaccrued, fixed or contingent, whether arising under federal, state, local, common, or foreign law, or any other law, rule, or regulation, whether class or individual in nature, which arise out of, are based on, or relate to the institution, prosecution, or settlement of the Litigation or the Released Claims against Defendants or their Related Parties.  For the avoidance of doubt, Released Claims do not include (i) claims asserted in the lawsuit captioned *Eaton v. Maddock, et al.* (No. 2025-0043-NAC), filed in the Court of Chancery of the State of Delaware, and any pending or future Section 220 demand or proceeding involving TaskUs, (ii) any claims that any Defendant, and/or their Related Parties, may have against any other Defendant and/or their Related Parties, (iii) any claims between the Defendants and/or their Related Parties and their respective insurers, and (iv) any claims relating

to the enforcement of the Settlement.  Additionally, for the avoidance of doubt, Released Claims does not modify, amend, or supersede any agreements between or among Defendants and/or their Related Parties, including without limitation, any claims for contractual or other indemnification rights.

1.36    "Released Parties" means each and all of Defendants, each and all of their respective Related Parties, Plaintiffs, Settlement Class Members, and Plaintiffs' Counsel.

1.37    "Releases" means the releases set forth in ¶5.1 through ¶5.5 of this Stipulation.

1.38    "Settlement" means the settlement contemplated by this Stipulation.

1.39    "Settlement Amount" means the principal amount of Seventeen Million Five Hundred Thousand U.S. Dollars ($17,500,000.00).

1.40    "Settlement Class" and "Settlement Class Members" mean, for the purpose of settlement only, all Persons who purchased or otherwise acquired TaskUs Class A common stock (a) during the Class Period of June 11, 2021 through January 19, 2022, both inclusive, and were damaged thereby; and (b) pursuant and/or traceable to the IPO Registration Statement or Secondary Offering Registration Statement, and were damaged thereby.  Excluded from the Settlement Class are:  (i) Defendants and any affiliates or subsidiaries thereof; (ii) present and former officers and directors of TaskUs and their immediate family members (as defined in Item 404 of SEC Regulation S-K, 17 C.F.R. § 229.404, Instructions (1)(a)(iii) & (1)(b)(ii)); (iii) Defendants' liability insurance carriers, and any affiliates or subsidiaries thereof; (iv) any entity in which any Defendant had or has had a controlling interest; (v) TaskUs's employee retirement and benefit plan(s); and (vi) the legal representatives, heirs, estates, agents, successors, or assigns of any person or entity described in the preceding five categories.  Also excluded from the Settlement Class are those Persons who timely and validly request exclusion from the Settlement Class pursuant to the requirements set by the Court.

1.41    "Settlement Fund" means the Settlement Amount, plus any accrued interest earned thereon.

1.42    "Stipulation" means this Stipulation of Settlement, including the recitals and Exhibits hereto.

1.43    "Summary Notice" shall have the meaning set forth in ¶4.1 of this Stipulation.

1.44    "Supplemental Agreement" shall have the meaning set forth in ¶8.4 of this Stipulation.

1.45    "Taxes" means all taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund.

1.46    "Tax Expenses" means expenses and costs incurred in connection with the calculation and payment of taxes or the preparation of tax returns and related documents, including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in ¶2.9 hereof.

1.47    "Unknown Claims" means collectively (i) any Released Claims that Plaintiffs or Settlement Class Members do not know or suspect to exist in his, her, or its favor at the time of the release of the Released Parties which, if known by him, her, or it, might have affected such Settlement Class Member's settlement or decisions with respect to the Settlement, including, but not limited to, the release of the Released Parties or the decision not to object to or opt out of this Settlement; and (ii) any Released Claims that Defendants and their Related Parties do not know or suspect to exist in his, her, or its favor at the time of the release, which, if known by him, her, or it, might have affected his, her, or its settlement with and release of Plaintiffs, Plaintiffs' Counsel, and/or Settlement Class Members.  With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date, Plaintiffs, Defendants, and Defendants' Related Parties shall expressly waive, and each of the Settlement Class Members shall be deemed to have

waived, and by operation of the Judgment shall have expressly waived, any and all provisions, rights, and benefits conferred by the law of any state or territory or other jurisdiction or principle of common law or foreign law that is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

>    **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party**.

Plaintiffs, Settlement Class Members, Defendants, and Defendants' Related Parties may hereafter discover facts in addition to or different from those which he, she, they, or it now knows or believes to be true with respect to the subject matter of the Released Claims, but Plaintiffs, Defendants, and Defendants' Related Parties shall expressly fully, finally, and forever settle and release, and each Settlement Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released, any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.  Plaintiffs, Defendants, and Defendants' Related Parties acknowledge, and Settlement Class Members shall be deemed by operation of law (including by operation of the Judgment) to have acknowledged, that the foregoing waiver was separately bargained for and is a key element of the Settlement.

2. **The Settlement**

    a. **The Settlement Fund**

2.1    In consideration of the terms of the Stipulation, Defendants and/or Defendants' insurers shall pay the sum of $17,500,000.00 (the "Settlement Amount") into the Escrow Account by wire transfer such that payment is received into the Escrow Account within 30 days after the later of: (a) entry of an order preliminarily approving the Settlement, or (b) TaskUs' receipt of the bank name and ABA routing number, address, account name and number, a signed W-9 on the most recent Form available on the IRS website, banking verification, and a contact person from Plaintiffs with a phone number who can orally verify the payment instructions and oral verification of the payment instructions by the contact provided.  Defendants and/or Defendants' insurers' failure to timely pay the Settlement Amount shall result in the accrual of interest on any unpaid amount at the then-current rate of interest on the T-bill maturing 90 days after the Payment Date. If the entire Settlement Amount is not timely paid to the Escrow Account pursuant to the above, Lead Counsel may terminate the settlement but only if (a) Lead Counsel has notified Defendants' Counsel in writing of their intention to terminate the settlement, and (b) the entire Settlement Amount is not transferred to the Escrow Account within five (5) calendar days after Lead Counsel has provided such written notice.

2.2    The Settlement Amount is an all-in number, meaning it shall include, among other things, payment for all Lead Counsel's attorneys' fees, administration costs, expenses, class member benefits, costs of administration and notice, and reimbursement of Plaintiffs' time and expenses pursuant to the PSLRA, as well as any other costs, expenses, or fees of any kind whatsoever associated with the resolution of this matter.  Except as provided in ¶4.3, Defendants and their Related Parties shall have no obligation whatsoever to pay any additional amounts beyond the Settlement Amount.

2.3    The payment described in ¶2.1 is the only payment to be made by or on behalf of Defendants of any kind in connection with this Settlement (except with respect to CAFA notice pursuant to ¶4.3 below).

### b.    The Escrow Agent

2.4    The Escrow Agent, with Lead Counsel's prior written consent, shall invest the Settlement Amount deposited pursuant to ¶2.1 hereof in United States Agency or Treasury securities or other instruments backed by the full faith and credit of the United States Government or an agency thereof, or fully insured by the Federal Deposit Insurance Corporation or the United States Government or an agency thereof, and shall reinvest the proceeds of these instruments as they mature in other such instruments at their then-current market rates.  The Settlement Fund shall bear all risks related to the investments of the Settlement Amount.

2.5    The Escrow Agent shall not disburse the Settlement Fund except as provided in this Stipulation, by an order of the Court, or at the direction of Lead Counsel in accordance with the terms of this Stipulation.

2.6    Subject to further order and/or direction as may be made by the Court, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of the Stipulation. Defendants and their Related Parties shall have no responsibility for, interest in, or liability whatsoever with respect to, any action, omission, or determination of the Escrow Agent or any designees or agents thereof; or any transaction executed by the Escrow Agent or any designees or agents thereof.

2.7    All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Stipulation and/or further order(s) of the Court.

2.8     Notwithstanding the fact that the Effective Date has not yet occurred, Lead Counsel may use up to $100,000 from the Settlement Fund to pay the costs and expenses reasonably and actually incurred in connection with providing notice to the Settlement Class, locating Settlement Class Members, administering and distributing the Net Settlement Fund to Authorized Claimants and processing Proofs of Claim ("Notice and Administration Costs"). Prior to the Effective Date, payment of any Notice and Administration Costs exceeding $100,000 shall be paid from the Settlement Fund subject to prior approval of the Court or agreement of the Parties. Subsequent to the Effective Date, Lead Counsel may pay all further Notice and Administration Costs actually incurred from the Settlement Fund without further order of the Court or agreement of the Parties. In the event that the Settlement does not become Final, any money paid or incurred for the above purposes, including any related fees, shall not be returned or repaid to the original funding entity. Defendants and the Related Parties are not responsible for, and shall not be liable for, any costs incurred in connection with providing notice to the Settlement Class, locating Settlement Class Members, administering and distributing the Settlement Fund, or processing Proofs of Claim. Defendants and their Related Parties shall have no responsibility for or liability whatsoever with respect to the notice process or the Notice and Administration Costs, nor shall they have any responsibility or liability whatsoever for any claims with respect thereto, including any claims that may arise from any failure of the notice process.

c.     **Taxes**

2.9     (a)     The Parties and the Escrow Agent agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1. In addition, Lead Counsel shall timely make such elections as necessary or advisable to carry out the provisions of this ¶2.9, including the "relation-back election" (as defined in Treasury Regulation § 1.468B-1) back to the earliest permitted date. Such elections shall be made

in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of Lead Counsel to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(b)     For the purpose of § 1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be Lead Counsel. Lead Counsel shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k)). Such returns (as well as the election described in ¶2.9(a) hereof) shall be consistent with this ¶2.9(b) and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶2.9(c) hereof.

(c)     All (i) Taxes (including any estimated Taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon Defendants and their Related Parties with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (ii) Tax Expenses shall be paid out of the Settlement Fund. In no event shall Defendants or their Related Parties have any responsibility for, or liability whatsoever with respect to, the Taxes or the Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely caused by Lead Counsel to be paid out of the Settlement Fund without prior order from the Court. Lead Counsel shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax

Expenses (as well as any amounts that may be required to be withheld under Treasury Regulation § 1.468B-2(l)(2)). Defendants and their Related Parties are not responsible therefor, nor shall they have any liability with respect thereto. The Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this paragraph.

(d)    Except as required by ¶2.1 concerning payment of the Settlement Amount and subject to this ¶¶2.9 and 6.1 below, Defendants and their Related Parties shall have no responsibility for, interest in, or liability whatsoever with respect to: Taxes, Tax Expenses, Notice and Administration Costs, locating Settlement Class Members, assisting with the filing of claims, administering and distributing the Net Settlement Fund to Authorized Claimants, processing Proofs of Claim, or paying escrow fees and costs.

### d.    Termination of the Settlement

2.10    In the event that the Stipulation is not approved, or is terminated, canceled, or fails to become effective any reason, including, without limitation, in the event that the Settlement is not approved by the Court or the Judgment is reversed or vacated following appeal, the Settlement Amount, including accrued interest, less the expenses and Taxes described in ¶¶2.8 and 2.9 hereof actually incurred, shall be refunded to such Persons that paid the Settlement Amount pursuant to written instructions from Defendants' Counsel, within ten (10) business days of termination of the Settlement.

### 3.    Certification of the Settlement Class

3.1    Solely for purposes of this Settlement, and subject to approval by the Court, the Parties agree that the Settlement Class shall be certified for settlement purposes only and Plaintiffs and Lead Counsel shall be appointed as representatives of the Settlement Class pursuant to Federal Rule of Civil Procedure 23. Should the Settlement Class not be certified for settlement purposes,

or should any court amend the scope of the Settlement Class, each of the Parties reserves the right to void this Stipulation in accordance with ¶8.5 hereof.  If for any reason final approval of the Settlement is not granted, then the certification of the Settlement Class shall become null and void without further order of the Court or any other court, and the Parties shall be restored to their respective positions in the Litigation as of January 30, 2025.

**4.      Notice Order and Final Approval Hearing**

4.1      Once this Stipulation is executed, Plaintiffs shall promptly submit the Stipulation together with its Exhibits to the Court and shall apply for entry of the Notice Order, substantially in the form of Exhibit A attached hereto, requesting, *inter alia*, the preliminary approval of the Settlement set forth in the Stipulation, and approval for mailing a settlement notice ("Notice"), substantially in the form of Exhibit A-1 attached hereto, dissemination of a Long-Form Notice of Pendency and Proposed Settlement of Class Action ("Long-Form Notice"), substantially in the form of Exhibit A-2 attached hereto, through a dedicated website, and publication of a summary notice ("Summary Notice"), substantially in the form of Exhibit A-4 attached hereto.  The Notice shall include the general terms of the Settlement set forth in the Stipulation, the proposed Plan of Allocation, the general terms of the Fee and Expense Application as defined in ¶7.1 below, and the date of the Final Approval Hearing.

4.2      For purposes of identifying and providing notice to the Settlement Class, within ten (10) calendar days after filing this Stipulation with the Court, TaskUs shall cause its securities transfer agent to provide to the Claims Administrator, at no cost to Plaintiffs, Plaintiffs' Counsel or the Settlement Class, a list, in electronic form, containing the names and addresses of all persons or custodians acting on their behalf (or both persons and custodians, where available) who purchased, otherwise acquired, or held TaskUs Class A common stock during the Class Period.

4.3     No later than ten (10) calendar days following the filing of this Stipulation with the Court, Defendants shall serve or cause to be served timely and proper notice of the proposed Settlement upon those who are entitled to receive notice pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, *et seq.* ("CAFA").  Defendants are solely responsible for the costs of the CAFA notice and compliance with CAFA's notice requirements.

4.4     At least seven (7) calendar days before the Settlement Hearing, Defendants shall cause to be served on Lead Counsel and filed with the Court proof, by affidavit or declaration, regarding compliance with the notice requirements of CAFA.

4.5     Lead Counsel shall request that after notice is given and not earlier than ninety (90) calendar days after the later of the dates on which the appropriate Federal official and the appropriate State officials are provided with notice pursuant to CAFA as set forth in ¶4.3 above, the Court hold a Final Approval Hearing and approve the Settlement of the Litigation as set forth herein.  At or after the Final Approval Hearing, Lead Counsel also will request that the Court approve the proposed Plan of Allocation and the Fee and Expense Application.

**5.     Releases**

5.1     Defendants' obligations incurred pursuant to this Stipulation are in consideration of: (i) the full and final disposition of the Litigation as against all Defendants; (ii) the Releases provided for herein; and (iii) all other terms contained herein.

5.2     Upon the Effective Date, without any further action by anyone, Plaintiffs and each of the Settlement Class Members, on behalf of themselves, and their respective heirs, executors, administrators, predecessors, successors, and assigns in their capacities as such, and on behalf of any other person or entity legally entitled to bring Released Claims on behalf of any Settlement Class Member, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, compromised, settled, resolved, waived, discharged, and

dismissed on the merits with prejudice all Released Claims (including, without limitation, Unknown Claims) against Defendants and their Related Parties, whether or not such Settlement Class Member executes and delivers a Proof of Claim or participates in the Settlement Fund. Plaintiffs and each of the Settlement Class Members are aware of California Civil Code § 1542 and expressly waive and relinquish any rights or benefits available to them under this statute and any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code § 1542. The releases and waivers contained in this section were separately bargained for and are essential elements of this Stipulation and the Settlement.

5.3    The Proof of Claim and Release form ("Proof of Claim") to be executed by Settlement Class Members shall release all Released Claims against Defendants and their Related Parties and shall be substantially in the form contained in Exhibit A-3 attached hereto.

5.4    Upon the Effective Date, Plaintiffs, all Settlement Class Members, and anyone claiming through or on behalf of any of them, are forever barred and enjoined from commencing, instituting, intervening in, prosecuting, or continuing to prosecute any action or proceeding in any court of law or equity, arbitration tribunal, administrative forum, or other forum of any kind, asserting any of the Released Claims against any of the Defendants and their Related Parties, and each of them.

5.5    Upon the Effective Date, without any further action by anyone, each of the Defendants and their Related Parties shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged Plaintiffs, Plaintiffs' Counsel, Settlement Class Members, and their employees, successors, and assigns from all claims (including, without limitation, Unknown Claims) arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement or resolution of: (i) the Litigation; or (ii) the

Released Claims, except for those claims brought to enforce the Settlement. Defendants and their Related Parties are aware of California Civil Code § 1542 and expressly waive and relinquish any rights or benefits available to them under this statute and any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code § 1542. The releases and waivers contained in this section were separately bargained for and are essential elements of this Stipulation and the Settlement. For the avoidance of doubt, the releases herein do not include the derivative claims asserted in the lawsuit captioned *Eaton v. Maddock, et al.* (No. 2025-0043-NAC), filed in the Court of Chancery of the State of Delaware, claims asserted in any pending or future Section 220 demand or proceeding involving TaskUs, or claims that any Defendant, and/or their Related Parties, may have against any other Defendant and/or their Related Parties.

**6.    Administration and Calculation of Claims, Final Awards and Supervision and Distribution of the Settlement Fund**

6.1    The Claims Administrator shall administer and calculate the claims submitted by Settlement Class Members and shall oversee distribution of the Net Settlement Fund to Authorized Claimants. The Claims Administrator will be subject to such supervision and direction from the Court and/or Lead Counsel as may be necessary or as circumstances may require. Defendants and their respective Related Parties shall have no responsibility for, or interest whatsoever with respect to, the administration of the Settlement or the actions or decisions of the Claims Administrator, and shall have no liability whatsoever to Plaintiffs, Settlement Class Members, or Lead Counsel, in connection with such administration, including, but not limited to: (i) any act, omission, or determination by Lead Counsel, the Escrow Agent, and/or the Claims Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management or investment of the Settlement Fund or the Net Settlement Fund,

or the distribution of the Net Settlement Fund; (iii) the Plan of Allocation; (iv) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in value of, the Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses, and/or costs incurred with the taxation of the Settlement Fund or the filing of any federal, state, or local returns.

6.2     The Settlement Fund shall be applied as follows:

(a)     to pay all the fees and expenses reasonably and actually incurred in connection with providing notice, locating Settlement Class Members, assisting with the filing of claims, administering and distributing the Net Settlement Fund to Authorized Claimants, processing Proofs of Claim, and paying escrow fees and costs, if any;

(b)     to pay the Taxes and Tax Expenses described in ¶2.9 hereof;

(c)     to pay Lead Counsel's fees and expenses to the extent allowed by the Court (the "Fee and Expense Award") and to pay any award to Plaintiffs pursuant to 15 U.S.C. § 77z-1(a)(4) and/or 15 U.S.C. § 78u-4(a)(4) in connection with their representation of the Settlement Class to the extent allowed by the Court; and

(d)     after the Effective Date, to distribute the balance of the Settlement Fund (the "Net Settlement Fund") to Authorized Claimants as allowed by the Stipulation, the Plan of Allocation, or the Court.

6.3     After the Effective Date, and in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with the following.

6.4     Within ninety (90) calendar days after the mailing of the Notice or such other time as may be set by the Court, each Person claiming to be an Authorized Claimant shall be required

to submit to the Claims Administrator a completed Proof of Claim, substantially in the form of Exhibit A-3 attached hereto, signed under penalty of perjury and supported by such documents as are specified in the Proof of Claim.

6.5    Except as otherwise ordered by the Court, all Settlement Class Members who fail to timely submit a Proof of Claim within the period specified herein, or such other period as may be ordered by the Court or otherwise allowed, shall be forever barred from receiving any payments pursuant to the Stipulation and the Settlement set forth herein, but will in all other respects be subject to and bound by the provisions this Stipulation, the releases contained herein, and the Judgment, and will be barred from bringing any action against the Released Parties asserting, concerning, arising out of, or relating to the Released Claims.  Notwithstanding the foregoing, Lead Counsel shall have the discretion (but not the obligation) to accept late-submitted claims, so long as distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed thereby, and Lead Counsel shall also have the discretion (but not the obligation) to direct the Claims Administrator to waive what Lead Counsel deems to be *de minimis* or formal or technical defects in any claims submitted.  No Person shall have any claim against Plaintiffs, Lead Counsel, Defendants and their Related Parties, the Claims Administrator or any Settlement Class Member by reason of the exercise or non-exercise of such discretion.

6.6    Each Proof of Claim shall be submitted to and reviewed by the Claims Administrator, under the supervision of Lead Counsel, who shall determine, in accordance with this Stipulation and the approved Plan of Allocation, the extent, if any, to which each claim shall be allowed, subject to the review by the Court pursuant to ¶6.8 below.

6.7    Proofs of Claim that do not meet the submission requirement may be rejected.  Prior to rejecting a Proof of Claim in whole or in part, the Claims Administrator shall communicate with the Claimant in writing to give the Claimant the chance to remedy any curable deficiencies in the

Proof of Claim submitted. The Claims Administrator, under the supervision of Lead Counsel, shall notify, in a timely fashion and in writing, all Claimants whose claims the Claims Administrator proposes to reject in whole or in part for curable deficiencies, setting forth the reasons therefor, and shall indicate in such notice that the Claimant whose claim is to be rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements of ¶6.8 below.

6.8    If any Claimant whose timely claim has been rejected in whole or in part for curable deficiency desires to contest such rejection, the Claimant must, within twenty (20) calendar days after the mailing of the notice required in ¶6.7 above, or a lesser period of time if the claim was untimely, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court. If the Claim is still rejected, the Settlement Class Member must move this Court within twenty (20) days to have the Claim accepted by Lead Counsel and the Claims Administrator; this deadline may be extended at Lead Counsel's discretion to facilitate resolving any disputes before their presentation to the Court.

6.9    Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's claim, including, but not limited to, all releases provided for herein and in the Judgment. All proceedings with respect to the administration, processing, and determination of claims, and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of the Court, but shall not in any event delay or affect the finality of the Judgment. All Settlement Class Members, other Claimants, and Parties to this Settlement expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations.

6.10    Following the Effective Date, the Net Settlement Fund shall be distributed to Authorized Claimants substantially in accordance with a Plan of Allocation to be described in the Notice and approved by the Court.  If there is any balance remaining in the Net Settlement Fund after a reasonable period of time after the date of distribution of the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise), the Claims Administrator shall, if feasible, reallocate such balance (which may occur on multiple occasions) among Authorized Claimants who negotiated the checks sent in the initial distribution and who would receive a minimum of $10.00.  These redistributions shall be repeated so long as they are economically feasible.  Any balance that still remains in the Net Settlement Fund after such reallocation(s) and payments, which is not feasible or economical to reallocate, shall be donated to a non-profit, charitable organization serving the public interest and unaffiliated with the Parties or their counsel, selected by Lead Counsel.

6.11    This Settlement is not a claims-made settlement.  Upon the occurrence of the Effective Date, no portion of the Settlement Fund will be returned to the Defendants or their insurers.  The Released Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the distribution of the Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes or Tax Expenses, or any losses incurred in connection therewith.

6.12    No Person shall have any claim against Plaintiffs, Plaintiffs' Counsel, the Released Parties, the Claims Administrator, or any other entity designated by Lead Counsel based on distributions made substantially in accordance with the Stipulation and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court.  This does not include any claim by any Party for breach of this Stipulation.

6.13    It is understood and agreed by the Parties that any proposed Plan of Allocation of the Net Settlement Fund, including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a part of this Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel this Stipulation or affect or delay the finality of the Court's Judgment approving this Stipulation and the Settlement set forth herein (including the releases contained herein), or any other orders entered pursuant to this Stipulation.

**7.      Lead Counsel's Fees and Expenses**

7.1    Lead Counsel may submit an application or applications (the "Fee and Expense Application") for distributions from the Settlement Fund for: (i) an award of attorneys' fees, not to exceed 30% of the Settlement Amount; plus (ii) payment of expenses or charges in connection with prosecuting the Litigation; plus (iii) any interest on such fees and expenses at the same rate and for the same time periods as earned by the Settlement Fund (until paid), as may be awarded by the Court.  In addition, Plaintiffs may request awards pursuant to 15 U.S.C. § 77z-1(a)(4) and/or 15 U.S.C. § 78u-4(a)(4) in connection with their representation of the Settlement Class.  Lead Counsel reserves the right to make additional applications for distributions from the Settlement Fund for fees and expenses incurred.  The application or applications described in this paragraph are not the subject of any agreement between Plaintiffs and Defendants. The amount of attorneys' fees and expenses awarded by the Court is within the sole discretion of the Court.

7.2    The Fee and Expense Award, as awarded by the Court, shall be paid to Lead Counsel from the Settlement Fund, as ordered, immediately after the Court executes an order awarding such fees and expenses, notwithstanding any pending appeals. Lead Counsel may allocate attorneys' fees and expenses among other Plaintiffs' Counsel in a manner in which it in

good faith believes reflects the contributions of such counsel to the institution, prosecution, and resolution of the Litigation.  In the event that the Effective Date does not occur, or the Judgment or the order making the Fee and Expense Award is reversed or modified by final non-appealable order, or the Stipulation is canceled or terminated for any other reason, and in the event that the Fee and Expense Award has been paid to any extent, then Lead Counsel shall be obligated, within ten (10) business days from receiving notice from Defendants' Counsel or from a court of appropriate jurisdiction, to refund to the Settlement Fund the fees and expenses previously paid to Lead Counsel from the Settlement Fund plus interest earned thereon in an amount consistent with such reversal or modification.  Lead Counsel, as a condition of receiving the Fee and Expense Award, agrees that Lead Counsel's law firm and its respective partners are subject to the jurisdiction of the Court for the purpose of enforcing this provision, and are severally liable and responsible for any required repayment.

7.3    The procedure for and the allowance or disallowance by the Court of any Fee and Expense Application are not part of the Settlement set forth in this Stipulation, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation, and any order or proceeding relating to the Fee and Expense Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Stipulation, or affect or delay the finality of the Judgment approving the Stipulation and the Settlement of the Litigation set forth herein (including the releases contained herein).

7.4    Defendants and their respective Related Parties shall not take any position or make any statements or submissions concerning, have no responsibility for, and have no liability whatsoever with respect to, any Fee and Expense Application, the payment of any Fee and Expense Award to Lead Counsel, and/or the allocation by Lead Counsel of any attorneys' fees or the Fee

and Expense Award among other Plaintiffs' Counsel.  Defendants, their respective Related Parties, and Defendants' Counsel are not entitled to any award of fees or expenses from the Settlement Fund.

**8.      Conditions of Settlement, Effect of Disapproval, Cancellation or Termination**

8.1      The Effective Date of this Stipulation shall be conditioned, and shall be deemed to have occurred, upon the occurrence or waiver of all of the following events:

(a)      execution of the Stipulation;

(b)      the Court has entered the Notice Order, as required by ¶4.1 hereof;

(c)      the Settlement Amount has been deposited by Defendants and/or Defendants' insurers into the Escrow Account, as required by ¶2.1 hereof;

(d)      Defendants have not exercised their option to terminate the Stipulation pursuant to ¶8.4 hereof;

(e)      the Court has entered the Judgment, substantially in the form of Exhibit B attached hereto, or such other substantially similar form mutually agreed to by the Parties;

(f)      the Judgment, or such other substantially similar form mutually agreed to by the Parties, has become Final, as defined in ¶1.15 hereof; and

(g)      the Litigation has been dismissed.

8.2      Upon the occurrence of all of the events referenced in ¶8.1 hereof, any and all remaining interest or right of Defendants or their insurers in or to the Settlement Fund, if any, shall be absolutely and forever extinguished.  If all of the conditions specified in ¶8.1 hereof are not met, then the Stipulation shall be canceled and terminated subject to ¶8.5 hereof unless Lead Counsel and Defendants' Counsel mutually agree in writing to proceed with the Stipulation.

8.3    Any decision or proceeding, whether in this Court or any appellate court, with respect to the Fee or Expense Application or with respect to any plan of allocation shall not be considered material to the Settlement, shall not affect the finality of any Judgment and shall not be grounds for termination of the Settlement.

8.4    Defendants shall have the option to terminate the Settlement in the event that Persons who otherwise would be Members of the Settlement Class and timely choose to exclude themselves from the Settlement Class, in accordance with the provisions of the Notice Order and Notice given pursuant thereto, purchased more than a certain number of shares of TaskUs Class A common stock during the Settlement Class Period ("Opt-Out Threshold"), as set forth in a separate agreement (the "Supplemental Agreement"), which is incorporated by reference into this Stipulation.  The Parties shall not file the Supplemental Agreement with the Court unless instructed to do so by the Court.  The Opt-Out Threshold may be disclosed to the Court for purposes of approval of the Settlement, as may be required by the Court, but such disclosure shall be carried out to the fullest extent possible in accordance with the practices of the Court so as to maintain the Opt-Out Threshold as confidential.

8.5    Unless otherwise ordered by the Court, in the event the Stipulation shall terminate, or be canceled, or shall not become effective for any reason, then within ten (10) business days after written notification of such event is sent by Defendants' Counsel or Lead Counsel to the Escrow Agents, the Settlement Fund (including accrued interest), less any expenses and costs reasonably and actually incurred pursuant to ¶2.8 and Taxes and Tax Expenses pursuant to ¶2.9 hereof, which have either been disbursed from the Settlement Fund or are chargeable to the Settlement Fund pursuant to these provisions, shall be refunded by the Escrow Agents based upon written instructions from Lead Counsel pursuant to written instructions from Defendants' Counsel. At the request of Defendants' Counsel, Lead Counsel or its designee shall apply for any tax refund

owed on the Settlement Fund and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund, pursuant to written direction from Defendants' Counsel.

8.6     In the event that the Stipulation is not approved by the Court or the Settlement set forth in the Stipulation is terminated or fails to become effective in accordance with its terms or the terms of the Supplemental Agreement, the Parties shall be restored to their respective positions in the Litigation as of January 30, 2025.  In such event, the terms and provisions of the Stipulation, with the exception of ¶¶2.8-2.10, 8.1-8.2, 8.5-8.7, 9.4, 9.6-9.7, and 9.11-9.15 hereof, shall have no further force and effect with respect to the Parties and shall not be used in this Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*.  No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or any Fee and Expense Award shall constitute grounds for cancellation or termination of the Stipulation.

8.7     If the Effective Date does not occur, or if the Stipulation is terminated pursuant to its terms, neither Plaintiffs nor Plaintiffs' Counsel shall have any obligation to repay any amounts disbursed for notice costs and Taxes and Tax Expenses pursuant to ¶¶2.8-2.9 hereof.  In addition, any expenses already incurred and chargeable pursuant to ¶2.9 hereof at the time of such termination or cancellation, but which have not been paid, shall be paid by the Escrow Agents in accordance with the terms of the Stipulation prior to the remaining balance being refunded in accordance with ¶¶2.10 and 8.5 hereof.

**9.     Miscellaneous Provisions**

9.1     The Parties: (i) acknowledge that it is their intent to consummate this Settlement; and (ii) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms

and conditions of the Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of the Stipulation.

9.2    Upon the payment of the Settlement Amount into the Escrow Account, (a) this Stipulation shall not be, and shall not be deemed or considered to be, executory, as that term has been interpreted under 11 U.S.C. § 365, and (b) no further obligations of any of the Defendants pursuant to this Stipulation or any further effort or responsibility to defend against any appeal or proceeding seeking judicial review of any order contemplated by this Stipulation shall render the Settlement or all or any portion of this Stipulation executory, as that term has been interpreted under 11 U.S.C. § 365.

9.3    The Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Litigation.  The Settlement compromises claims that are contested and shall not be deemed an admission by any Party as to the merits of any claim or defense.  The Parties agree that each has complied fully with the strictures of Rule 11 of the Federal Rules of Civil Procedure, and the Judgment will contain a statement that during the course of the Litigation, the Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.  In addition, Plaintiffs shall not make applications against Defendants and/or their counsel, and Defendants shall not make applications against Plaintiffs and/or Plaintiffs' Counsel, for fees, costs, or sanctions.

9.4    Neither the Stipulation nor the Settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (i) is or may be deemed to be or may be used as an admission of, or concession or evidence of, the validity of any Released Claim, the truth of any fact alleged in the Litigation, the deficiency of any defense that has been or could have been asserted in the Litigation, or of any alleged wrongdoing, liability, negligence, or fault of Defendants; or (ii) is or may be deemed to be or may be used as an admission

of, or evidence of, any fault or misrepresentation or omission, including with respect to any statement or written document attributed to, approved or made by, any Defendant in any civil, criminal, or administrative proceeding in any court, administrative agency, or other forum or tribunal. Defendants and their Related Parties may file the Stipulation and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of, without limitation, claim preclusion or issue preclusion or similar defense or counterclaim.

9.5     The Parties jointly request that the Judgment include the broadest bar order permissible by law barring all future claims for contribution or indemnity (or any other claim or claim-over, however denominated, for which the injury claimed is that person's or entity's alleged liability to Plaintiffs or Settlement Class Members) among and against Plaintiffs, any and all Settlement Class Members, and Defendants arising out of the Litigation and Released Claims ("Bar Order"), provided, however, that the Bar Order shall not preclude either (i) Defendants from seeking to enforce any rights they may have under any applicable insurance policies or (ii) any right of indemnification or contribution that Defendants may have under contract or otherwise. The Bar Order shall be consistent with, and apply to the full extent of, the PSLRA.

9.6     The Released Parties are intended third-party beneficiaries of this Stipulation, and this Stipulation may be enforced by such Persons.

9.7     All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Stipulation, pursuant to their terms.

9.8     All of the Exhibits to the Stipulation as well as the Supplemental Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

9.9    This Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations between the Parties and that all Parties have contributed substantially and materially to the preparation of this Stipulation.

9.10    The Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

9.11    The Stipulation and the Exhibits attached hereto and the Supplemental Agreement constitute the entire agreement among the Parties hereto and no representations, warranties, or inducements have been made to any Party concerning the Stipulation or its Exhibits or the Supplemental Agreement other than the representations, warranties, and covenants contained and memorialized in such documents.  Except as otherwise provided herein, each Party shall bear its own costs.

9.12    Lead Counsel, on behalf of the Settlement Class, is expressly authorized by Plaintiffs to take all appropriate action required or permitted to be taken by the Settlement Class pursuant to the Stipulation to effectuate its terms and also is expressly authorized to enter into any modifications or amendments to the Stipulation on behalf of the Settlement Class that it deems appropriate.

9.13    Each counsel or other Person executing the Stipulation or any of its Exhibits on behalf of any Party hereto hereby warrants that such Person has the full authority to do so.

9.14    The Stipulation may be executed in one or more counterparts, including by signature transmitted by email in pdf format. Signatures sent by facsimile or electronically shall be deemed originals. All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of executed counterparts shall be filed with the Court.

9.15    The Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto.

9.16    Subject to entry of the Judgment, substantially in the form of Exhibit B hereto, the Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Stipulation, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation.

9.17    The Stipulation and the Exhibits hereto shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of New York, and the rights and obligations of the Parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of New York without giving effect to any choice-of-law principles that would result in applying substantive laws other than those of the State of New York.

9.18    Pending approval of the Court of this Stipulation and its Exhibits, all non-settlement-related proceedings in this Litigation shall be stayed and all Members of the Settlement Class shall be barred and enjoined from prosecuting any of the Released Claims against any of the Defendants and their Related Parties.

9.19    The waiver by one Party of any breach of this Stipulation by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

9.20    Unless otherwise provided, the Parties may agree to reasonable extensions of time to carry out any of the provisions of this Stipulation without further order of the Court.

9.21    The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

9.22    Nothing in the Stipulation, or the negotiations relating thereto, is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, attorney-client privilege, joint defense privilege, or work product protection.

9.23    This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Released Parties, including any Person into which or with which any Released Party hereto may merge, consolidate or reorganize.

IN WITNESS WHEREOF, the Parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys, dated May 27, 2025.

/s/ *Joseph A. Fonti*
Joseph A. Fonti
Nancy A. Kulesa
Evan A. Kubota
Thayne Stoddard
**BLEICHMAR FONTI & AULD LLP**
300 Park Avenue, Suite 1301
New York, New York  10022
Telephone: (212) 789-1340
Facsimile: (212) 205-3960
jfonti@bfalaw.com
nkulesa@bfalaw.com
ekubota@bfalaw.com
tstoddard@bfalaw.com

*Counsel for Lead Plaintiff Humberto Lozada and Named Plaintiff Oklahoma Firefighters Pension and Retirement System*

John A. Kehoe
Michael K. Yarnoff
**KEHOE LAW FIRM, P.C.**
2001 Market Street, Suite 2500
Philadelphia, Pennsylvania  19103
Telephone: (212) 792-6676
jkehoe@kehoelawfirm.com
myarnoff@kehoelawfirm.com

*Additional Counsel for Lead Plaintiff Humberto Lozada*

/s/ *Jonathan K. Youngwood*
Jonathan K. Youngwood
Craig S. Waldman
Janet A. Gochman
Jonathan S. Kaplan
**SIMPSON THACHER & BARTLETT LLP**
425 Lexington Avenue
New York, New York  10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502
jyoungwood@stblaw.com
cwaldman@stblaw.com
jgochman@stblaw.com

*Counsel for Defendants TaskUs, Inc., BCP FC Aggregator L.P., Bryce Maddock, Jaspar Weir, Balaji Sekar, Amit Dixit, Mukesh Mehta, Susir Kumar, and Jacqueline D. Reses*