**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HUMBERTO LOZADA and OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM Individually and on Behalf of All Others Similarly Situated, | Case No.  1:22-cv-01479-JPC-GS |
| | CLASS ACTION |
| Plaintiffs, | |
| v. | |
| TASKUS, INC., BRYCE MADDOCK, JASPAR WEIR, BALAJI SEKAR, AMIT DIXIT, MUKESH MEHTA, SUSIR KUMAR, JACQUELINE D. RESES, and BCP FC AGGREGATOR L.P., | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES, AND PLAINTIFFS' REASONABLE COSTS AND EXPENSES**

**TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................................................1

    I.      THE REQUESTED ATTORNEYS' FEES ARE REASONABLE........................3

          A.      Counsel Is Entitled to a Fee Award from the Common Fund......................3

          B.      Plaintiffs Support the Requested Fee...........................................................4

          C.      The Requested Attorneys' Fees Are Warranted Under the
*Goldberger* Factors and Reasonable Under the Percentage-of-
Recovery and Lodestar Methods ..................................................................5

                1.      The Substantial Risk and Lengthy Duration of the
Litigation Support the Requested Fee (*Goldberger* 3) ....................5

                2.      The Requested Fee Is Reasonable in Relation to the
Settlement and Consistent with Comparable Cases of
Similar Size (*Goldberger* 5).................................................................8

                3.      The Magnitude and Complexity of This Litigation Support
the Requested Fee (*Goldberger* 2).....................................................9

                4.      Plaintiffs' Counsel Provided High-Quality Representation
that Secured an Outstanding Result ................................................11

                5.      Plaintiffs' Counsel Expended Over 8,600 Hours of Time
and Labor (*Goldberger* 1), and the Requested Fee Is
Reasonable Under a Lodestar Cross-Check..................................12

                      a.      Plaintiffs' Counsel's Hours...............................................12

                      b.      A Lodestar Cross-Check Confirms the
Reasonableness of the Requested Fee...............................14

                6.      Public Policy Supports the Requested Fee (*Goldberger* 6) ...........19

    II.     PLAINTIFFS' COUNSEL'S REQUESTED EXPENSES ARE
REASONABLE AND WERE NECESSARILY INCURRED.............................19

    III.    PLAINTIFFS SHOULD BE AWARDED THEIR REASONABLE
COSTS AND EXPENSES UNDER THE PSLRA..............................................22

CONCLUSION................................................................................................................................24

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baffa v. Donaldson Lufkin & Jenrette Sec. Corp.*,
No. 96 Civ. 0583 (DAB), 2002 WL 1315603 (S.D.N.Y. June 17, 2002)................................18

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980).................................................................................................................3

*Carlson v. Xerox Corp.*,
355 F. App'x 523 (2d Cir. 2009) ............................................................................................3

*Christine Asia Co., Ltd. v. Yun Ma*,
No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534
(S.D.N.Y. Oct. 16, 2019) ..................................................................................................11, 22

*Fresno Cnty. Emps.' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*,
925 F.3d 63 (2d Cir. 2019)....................................................................................................3, 5

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000)............................................................................................. *passim*

*Gruber v. Gilbertson*,
647 F. Supp. 3d 100 (S.D.N.Y. 2022).....................................................................................18

*Guevoura Fund Ltd. v. Sillerman*,
No. 1:15-cv-07192-CM, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ...........................18, 19

*In re Amalgam Liquidation, LLC*,
No. 23-90901 (MI), ECF 419 (Bankr. S.D. Tex. Mar. 27, 2024)...........................................17

*In re Avon Prods. Inc. Sec. Litig.*,
No. 1:19-cv-01420-MKV, ECF 97 (S.D.N.Y. Feb. 3, 2021).....................................................9

*In re Bank of Am. Corp. Sec., Derivative, &*
*Emp. Ret. Income Sec. Act (ERISA) Litig.*,
772 F.3d 125 (2d Cir. 2014)...................................................................................................22

*In re Blech Sec. Litig.*,
No. 94 CIV. 7696 (RWS), 2000 WL 661680 (S.D.N.Y. May 19, 2000) ...............................18

*In re Conduent Inc. Sec. Litig.*,
No. 2:19-cv-08237-SDW-AME, ECF 144 (D.N.J. May 24, 2023)........................................23

*In re Evoqua Water Technologies Corp. Sec. Litig.*,
No. 1:18-cv-10320-JPC, ECF 152 (S.D.N.Y. Nov. 1, 2021) (Cronan, J.) .......................16, 24

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
  343 F. Supp. 3d 394 (S.D.N.Y. 2018)..................................................................20

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  No. 02-cv-3400 (CM) (PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ......................9, 20

*In re Genworth Fin. Sec. Litig.*,
  210 F. Supp. 3d 837 (E.D. Va. 2016) ...................................................................6

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) .........................................................................10

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................5, 6

*In re GSE Bonds Antitrust Litig.*,
  No. 19-cv-1704 (JSR), 2020 WL 3250593 (S.D.N.Y. June 16, 2020)....................................20

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  No. 12-Civ-8557 (CM), 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ......................14, 15, 20

*In re Initial Pub. Offering Sec. Litig.*,
  671 F. Supp. 2d 467 (S.D.N.Y. 2009)....................................................................17

*In re Jernigan Cap., Inc. Sec. Litig.*,
  No. 1:20-cv-09575-JLR-KHP, ECF 154 (S.D.N.Y. May 29, 2025) ............................8, 15, 18

*In re Luckin Coffee Inc. Sec. Litig.*,
  No. 1:20-cv-01293-JPC, ECF 338 (S.D.N.Y. July 22, 2022) (Cronan, J.)..............................16

*In re Nortel Networks Corp. Sec. Litig.*,
  539 F.3d 129 (2d Cir. 2008)................................................................................4

*In re Perrigo Co. PLC Sec. Litig.*,
  No. 1:19-cv-00070-DLC, ECF 331 (S.D.N.Y. Feb. 18, 2022).........................................9, 21

*In re Petrobras Sec. Litig.*,
  317 F. Supp. 3d 858 (S.D.N.Y. 2018), *aff'd*, 784 F. App'x 10 (2d Cir. 2019).......................22

*In re Signet Jewelers Ltd. Sec. Litig.*,
  No. 1:16-cv-06728-CM-SDA, 2020 WL 4196468 (S.D.N.Y. July 21, 2020)................. *passim*

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008)....................................................................17

*In re Teva Sec. Litig.*,
  No. 3:17-cv-00558-SRU, ECF 963 (D. Conn. June 2, 2022) ............................................20

iii

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005)..................................................................................6

*In re XL Fleet Corp. Sec. Litig.*,
No. 1:21-cv-02002-JLR, ECF 198 (S.D.N.Y. Apr. 30, 2024)............................................8, 21

*In re Y-mAbs Therapeutics, Inc. Sec. Litig.*,
No. 1:23-cv-00431, ECF 69 (S.D.N.Y. Oct. 29, 2024) .....................................................8, 15

*Karimi v. Deutsche Bank Aktiengesellschaft*,
No. 1:22-cv-02854-JSR, ECF 110 (S.D.N.Y. Feb. 6, 2023) .........................................9, 21, 24

*Lea v. Tal Educ. Grp.*,
No. 18-CV-5480 (KHP), 2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ...............................15

*Logan v. ProPetro Holding Corp.*,
No. 7:19-cv-00217-DC (W.D. Tex. May 11, 2023) ..............................................................24

*Martinek v. Amtrust Fin. Servs., Inc.*,
No. 1:19-cv-08030-KPF, ECF 112 (S.D.N.Y. Nov. 16, 2022).................................................8

*Melito v. Am. Eagle Outfitters, Inc.*,
No. 14-cv-2440 (VEC), 2017 WL 3995619 (S.D.N.Y. Sept. 11, 2017), *aff'd
sub nom. Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85 (2d Cir. 2019) .............................9

*Missouri v. Jenkins*,
491 U.S. 274 (1989)...........................................................................................................14

*Moshell v. Sasol Ltd.*,
No. 1:20-cv-01008-JPC, ECF 218 (S.D.N.Y. Aug. 19, 2022) (Cronan, J.).......................21, 24

*Pearlstein v. BlackBerry Ltd.*,
No. 13 CIV. 7060 (CM), 2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022)...............................15

*Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*,
925 F.3d 63 (2d Cir. 2019)...............................................................................................3, 5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)...........................................................................................................19

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005)...................................................................................................5

**Statutes**

15 U.S.C. § 77z-1(a)(4)...........................................................................................................3

15 U.S.C. § 78u-4(a)(4) ......................................................................................................1, 22

15 U.S.C. § 78u-4(b)(2)(A)..........................................................................................................7

**Other Authorities**

Cornerstone Research, *Securities Class Action Settlements – 2024 Review and Analysis*, *available at* https://www.cornerstone.com/wp-content/uploads/2025/03/Securities-Class-Action-Settlements-2024-Review-and-Analysis.pdf ..............................................................................................................2

Edward Flores & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation:  2024 Full-Year Review*, NERA (Jan. 22, 2025), *available at* https://www.nera.com/insights/publications/2025/recent-trends-in-securities-class-action-litigation--2024-full-y.html?lang=en#download ...................................................7

**INTRODUCTION**

After nearly three years of litigation, Plaintiffs' Counsel achieved the Settlement to resolve this securities class action in exchange for a cash payment of $17.5 million—an outstanding result given the realistically recoverable damages, and the risks and delay of continued litigation.[1]

Lead Counsel Bleichmar Fonti & Auld LLP ("BFA") now respectfully seeks (a) an award of attorneys' fees in the amount of 30% of the Settlement Fund ($5,250,000 plus interest at the same rate and for the same period as earned by the Settlement Fund, until paid); (b) payment of litigation expenses in the amount of $924,556 (plus interest at the same rate and for the same period as earned by the Settlement Fund, until paid); and (c) awards to Plaintiffs, pursuant to 15 U.S.C. § 78u-4(a)(4), totaling $16,750.

First, the requested 30% fee is reasonable, supported by the relevant factors under *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000), and comparable to fee percentages awarded in this District.

As to risk—the foremost factor—Plaintiffs' Counsel shouldered the risk of a total loss. Over the course of nearly three years of intense litigation, Plaintiffs' Counsel shouldered significant risks, including outright dismissal at the pleading stage and threats at class certification. At all times, Defendants vigorously contested liability, causation, and damages, including whether the Registration Statements contained any material misstatement or omission and whether the

---

[1] Capitalized terms not defined herein have the meanings stated in the Stipulation of Settlement, dated May 27, 2025 (the "Stipulation") (ECF 187-1) and the Declaration of Joseph A. Fonti in Support of (I) Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation, and (II) Lead Counsel's Motion for Attorneys' Fees, Litigation Expenses, and Plaintiffs' Reasonable Costs and Expenses (the "Fonti Declaration" or "Fonti Decl."). "Plaintiffs' Counsel" refers collectively to BFA, Kehoe Law Firm, P.C., and The Law Offices of Susan R. Podolsky. "¶_" citations are to the paragraphs of the Amended Complaint (ECF 26). Citations and internal quotations are omitted and emphases are added unless otherwise noted.

Spruce Point Report resulted in any price impact or was "corrective" of any disclosures, threatening to defeat the Class's claims outright.

Despite these risks, Plaintiffs' Counsel invested more than 8,600 hours (or more than $7,000,000) of work on a fully contingent basis. This extensive effort drove the outstanding result achieved for the benefit of the Settlement Class. Specifically, Plaintiffs' Counsel vigorously prosecuted this action to develop compelling and detailed allegations, partially defeat Defendants' motion to dismiss, seek class certification based on extensive briefing and expert analysis, and secure substantial discovery (including taking five fact depositions). These efforts achieved a Settlement that represents between 16.2% and 65% of Plaintiffs' estimated range of realistically recoverable damages. Even the low end of this range is nearly double the 8.8% median recovery in comparable cases, while the high end is nearly two-thirds of available damages.[2]

As to comparable fee awards, fees of 30% or higher have regularly been awarded in securities class settlements of comparable size in this District. (*Infra* at 8-9.) The other relevant factors also support the requested fee, including the magnitude and complexity of the litigation, the quality of Plaintiffs' Counsel's representation, the time and effort expended by Plaintiffs' counsel, and public policy considerations.

Second, the requested reimbursement of $924,556 in litigation expenses is warranted because these expenses were reasonably and necessarily incurred to prosecute this complex and technical case, which required Plaintiffs' Counsel to: (i) investigate, draft, and file two complaints; (ii) partially defeat Defendants' motion to dismiss; (iii) litigate class certification (including three depositions of two experts); (iv) secure extensive document discovery (consisting of more than

---

[2] *See* Cornerstone Research, *Securities Class Action Settlements – 2024 Review and Analysis*, at 8, *available at* https://www.cornerstone.com/wp-content/uploads/2025/03/Securities-Class-Action-Settlements-2024-Review-and-Analysis.pdf.

2

540,000 pages); (v) participate in thirteen fact depositions; (vi) work to prepare opening expert reports; and (vii) prepare for and engage in arm's-length mediation.

Finally, Plaintiffs request awards totaling $16,750 pursuant to the PSLRA's provision for "award[s] of reasonable costs and expenses (including lost wages) directly relating to the representation of the class," 15 U.S.C. § 77z-1(a)(4). The requested awards are based on over 130 hours of time that Plaintiffs devoted to prosecuting this action on behalf of the Settlement Class, at reasonable hourly rates, and supported by prior awards in this District.

## I.     THE REQUESTED ATTORNEYS' FEES ARE REASONABLE

### A.     Counsel Is Entitled to a Fee Award from the Common Fund

The Supreme Court and Second Circuit recognize that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "The rationale for the [common-fund] doctrine is an equitable one:  it prevents unjust enrichment of those benefitting from a lawsuit without contributing to its cost." *Goldberger*, 209 F.3d at 47. Thus, the Second Circuit has said "that attorneys who create a fund are entitled to a reasonable fee—set by the court—to be taken from the fund." *Carlson v. Xerox Corp.*, 355 F. App'x 523, 526 (2d Cir. 2009).

In assessing the reasonableness of a fee in a common-fund case, contingency risk should be taken into account. The Second Circuit has noted that "a reasonable fee from the plaintiff's perspective can account for contingency risk where such risk exists," and a "plaintiff class is therefore appropriately charged for contingency risk where such risk is appreciable because the class has benefited from class counsel's decision to devote resources to the class's cause at the expense of taking other cases." *Fresno Cnty. Emps.' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63, 70 (2d Cir. 2019).

**B.      Plaintiffs Support the Requested Fee**

The Second Circuit expects "that district courts will give serious consideration to negotiated fees because PSLRA lead plaintiffs often have a significant financial stake in the settlement, providing a powerful incentive to ensure that any fees resulting from that settlement are reasonable.  In many cases, the agreed-upon fee will offer the best indication of a market rate, thus providing a good starting position for a district court's fee analysis." *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 133–34 (2d Cir. 2008).  Indeed, several Courts in this District "have treated fee arrangements between PSLRA lead plaintiffs and their counsel established at the outset of the litigation to be presumptively reasonable in light of Congress's intent to empower lead plaintiffs under the PSLRA to select and supervise attorneys on behalf of the class." *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-cv-06728-CM-SDA, 2020 WL 4196468, at *17 (S.D.N.Y. July 21, 2020) (collecting cases).

This reasoning fully applies here.  To start, the requested 30% fee is below the maximum percentage that Lead Counsel was permitted to seek under Lead Plaintiff Humberto Lozada's retention agreement with counsel.  (Ex. 2 (Lozada Decl.) ¶13.)  Lead Plaintiff Lozada supports the fee request.  (*Id.* ¶14.)  Named Plaintiff Oklahoma also supports the requested fee in light of comparable awards in similarly sized cases and its experience as a PSLRA lead plaintiff in other securities class actions.  (Ex. 3 (Rankin Decl.) ¶15.)

Further, both Plaintiffs have a powerful incentive to ensure the reasonableness of any fee request given their significant financial stake in the Settlement.  And as further detailed in the Lozada and Rankin Declarations, both Plaintiffs supervised Plaintiffs' Counsel throughout this litigation and negotiated the requested fee at arm's length based on the result Plaintiffs' Counsel achieved after nearly three years of effort, the significant complexity and risks of this matter, and other relevant factors.  (Ex. 2 (Lozada Decl.) ¶¶5-6, 13-14; Ex. 3 (Rankin Decl.) ¶¶7-8, 15-16.)

### C.    The Requested Attorneys' Fees Are Warranted Under the *Goldberger* Factors and Reasonable Under the Percentage-of-Recovery and Lodestar Methods

To determine reasonable attorneys' fees in common-fund cases, the Second Circuit has approved both the percentage-of-recovery and lodestar approaches. The "trend in this Circuit is toward the percentage method," which "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *see also Fresno*, 925 F.3d at 71 ("[T]he percentage method has the advantage of aligning the interests of plaintiffs and their attorneys more fully by allowing the latter to share in both the upside and downside risk of litigation."). In contrast, the "lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits." *Wal-Mart*, 396 F.3d at 121.

Under either approach, courts apply "the traditional criteria in determining a reasonable common fund fee, including: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50. We address each factor below, beginning with risk.

#### 1.    The Substantial Risk and Lengthy Duration of the Litigation Support the Requested Fee (*Goldberger* 3)

The Second Circuit has recognized that litigation risk is "perhaps the foremost" factor to be considered. *Goldberger*, 209 F.3d at 54. Litigation risk "'must be measured as of when the case is filed,' rather than with the hindsight benefit of subsequent events." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004) (quoting *Goldberger*, 209 F.3d at 55). Here, while the Settlement's recovery "may seem a foregone conclusion now, the recovery

5

achieved . . . was never certain." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005).   Rather, "[f]rom the outset . . . this case presented significant litigation, collectability, and contingency risks," *Glob. Crossing*, 225 F.R.D. at 467.   These risks—all of which were fully borne by Plaintiffs' Counsel—are detailed in the Fonti Declaration and summarized below.

First, this is not an action that other firms clamored to pursue.  Only Plaintiffs' Counsel pursued this case, and Mr. Lozada was the sole lead plaintiff movant.  The lack of competition for leadership underscores the substantial risks of this case.

Moreover, this litigation is the only proceeding that has challenged TaskUs's public disclosures.  Plaintiffs did not have the benefit of any prior proceeding or government investigation of TaskUs, heightening the risk and challenge of independently prosecuting the case, and supporting the requested fee.  *See In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 845 (E.D. Va. 2016) ("complexity of the litigation and the fact that the plaintiffs did not bring this case as a tag-along suit to a government investigation" justified "the substantial attorneys' fees award").

Despite the risks, Plaintiffs' Counsel devoted significant resources to developing compelling allegations.  Extensive investigation and interviews with former TaskUs employees were necessary to develop allegations that TaskUs experienced over 40% attrition, ¶¶139, 141, and did not have the positive employee culture Defendants touted, ¶¶140-42. Plaintiffs' Counsel's investigation also developed unique allegations that Defendants inflated TaskUs's Glassdoor rating, informed by interviews with former employees and detailed analysis of over 9,000 individual Glassdoor reviews, revealing spikes in the volume and average score of reviews before the IPO and SPO, ¶¶100-13, 139-40, 142.

Second, Plaintiffs faced a substantial risk of outright dismissal at the pleading stage. The PSLRA's high burden to plead claims requires (among other things) that plaintiffs allege "with particularity facts giving rise to a strong inference" of scienter. 15 U.S.C. § 78u-4(b)(2)(A). A recent study showed that, between 2015 and 2024, 61% of securities class actions were dismissed at the pleading stage.[3] And even the minority of actions that survive the pleading stage can be entirely or substantially lost at class certification, summary judgment, trial, or on appeal. Demonstrating the risk of dismissal, here, the Court granted in part Defendants' motion to dismiss, substantially narrowing the claims, Defendants, and alleged misstatements at issue. (*See* ECF 51.)

Third, although Plaintiffs and their counsel believe the claims asserted are meritorious, they faced numerous case-specific risks to proving liability. For example, Defendants vigorously contested the material falsity of the alleged misstatements, and would have likely argued at summary judgment and at trial that the statements were true: *i.e.*, that TaskUs experienced low attrition, had a better employee culture compared to its peers in the business process outsourcing (BPO) industry, and did not require employees to submit any Glassdoor reviews, much less positive ones. Had Defendants prevailed on falsity, all of Plaintiffs' claims under both the Securities Act and Exchange Act would have been defeated. Proving scienter for the Exchange Act claims posed another substantial risk, as Defendants would have likely argued that every TaskUs executive who was deposed believed their statements were true, and that they did not intentionally lie to investors.

Fourth, Defendants' price impact, loss causation, and negative causation arguments further threatened any recovery. At class certification, Defendants extensively argued that the

---

[3] Edward Flores & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review*, at 17, NERA (Jan. 22, 2025), *available at* https://www.nera.com/insights/publications/2025/recent-trends-in-securities-class-action-litigation--2024-full-y.html?lang=en#download.

Spruce Report did not reveal any new, material information or impact the price of TaskUs stock such that an Exchange Act class could not be certified. Defendants were likely to repeat these and similar arguments to support their loss causation, damages, and negative causation arguments at summary judgment and trial. These arguments posed substantial risks that any recovery could be greatly reduced (or eliminated altogether), in which case Plaintiffs' Counsel would receive no compensation for their efforts.

Despite these significant risks of recovering nothing, Plaintiffs' Counsel invested over 8,600 hours and more than $900,000 in expenses, on a fully contingent basis, to secure the proposed Settlement for the Settlement Class. This investment of time and resources in the face of substantial risks strongly supports the requested fee.

**2.    The Requested Fee Is Reasonable in Relation to the Settlement and Consistent with Comparable Cases of Similar Size (*Goldberger* 5)**

"When determining whether a fee request is reasonable in relation to a settlement amount, the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value." *Signet*, 2020 WL 4196468 at *20.

Here, Lead Counsel requests a fee of 30% of the Settlement Fund. Courts in this District have regularly awarded similar, or higher, percentages in securities class action settlements of comparable size. *See, e.g.*, *In re Jernigan Cap., Inc. Sec. Litig.*, No. 1:20-cv-09575-JLR-KHP, ECF 154 (S.D.N.Y. May 29, 2025) (33.33% fee award in $12 million securities settlement is "fair and reasonable and consistent with awards in similar cases"); *In re Y-mAbs Therapeutics, Inc. Sec. Litig.*, No. 1:23-cv-00431, ECF 69 (S.D.N.Y. Oct. 29, 2024) (awarding 33.3% fee in $19.65 million securities settlement); *In re XL Fleet Corp. Sec. Litig.*, No. 1:21-cv-02002-JLR, ECF 198 (S.D.N.Y. Apr. 30, 2024) (awarding 33.3% fee in $19.5 million securities settlement); *Martinek v. Amtrust Fin. Servs., Inc.*, No. 1:19-cv-08030-KPF, ECF 112 (S.D.N.Y. Nov. 16, 2022) (awarding

8

33.33% fee in $13 million securities settlement); *In re Perrigo Co. PLC Sec. Litig.*, No. 1:19-cv-00070-DLC, ECF 331 (S.D.N.Y. Feb. 18, 2022) (awarding 33.33% fee in $31.9 million settlement); *Karimi v. Deutsche Bank Aktiengesellschaft*, No. 1:22-cv-02854-JSR, ECF 110 (S.D.N.Y. Feb. 6, 2023) & ECF 101-1 (Sept. 23, 2022) (awarding 30% fee in $26.25 million securities settlement); *In re Avon Prods. Inc. Sec. Litig.*, No. 1:19-cv-01420-MKV, ECF 97 (S.D.N.Y. Feb. 3, 2021) (awarding 30% fee in $14.5 million settlement).

This authority demonstrates that the requested 30% fee is consistent with the fee percentages awarded in similar securities class actions.

### 3. The Magnitude and Complexity of This Litigation Support the Requested Fee (*Goldberger* 2)

"[I]n evaluating the settlement of a securities class action, federal courts . . . have long recognized that such litigation is notably difficult and notoriously uncertain." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-cv-3400 (CM) (PED), 2010 WL 4537550, at *15 (S.D.N.Y. Nov. 8, 2010). Courts acknowledge that "[s]ecurities class actions are generally complex and expensive to prosecute." *Signet*, 2020 WL 4196468 at *4.

This case is no exception: Plaintiffs' claims arose from two securities offerings and required scrutinizing TaskUs's public disclosures and the inner workings of the Company with respect to employee attrition and thousands of Glassdoor reviews.

The magnitude of discovery demonstrates the complexity of the case. Plaintiffs secured and analyzed more than 540,000 pages of documents produced by Defendants and third parties, deposed five fact witnesses, and participated in the depositions of eight others. *See Melito v. Am. Eagle Outfitters, Inc.*, No. 14-cv-2440 (VEC), 2017 WL 3995619, at *17 (S.D.N.Y. Sept. 11, 2017), *aff'd sub nom. Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85 (2d Cir. 2019) (complexity

supported requested fee where "[d]iscovery was not straightforward; it required review of hundreds of thousands of pages of documents and substantial third-party discovery").

Obtaining Defendants' documents was a battle in its own right. As the Court will recall, discovery was heavily disputed; Plaintiffs' Counsel made 11 submissions to obtain key discovery from Defendants, including Executive Leadership Team meeting materials, centralized headcount and attrition data, text and WhatsApp messages, documents from Google Drive accounts, and documents improperly withheld on privilege grounds. (*See, e.g.*, ECF 66, 80, 82, 92, 99, 108, 135, 138, 142, 145, and 156.) Plaintiffs' Counsel also participated in three discovery conferences on May 15, June 20, and August 20, 2024. This extensive discovery litigation further indicates the complexity of this action and supports the requested fee. *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 164 (S.D.N.Y. 2011) (complexity supported fee request where "discovery motions were heavily contested").

Plaintiffs' heavily litigated class certification motion also demonstrates the complexity and risk of this case. Plaintiffs submitted opening, reply, and sur-sur-reply briefs and two expert reports. The parties conducted seven depositions concerning class certification, comprised of three expert depositions, as well as depositions of both Plaintiffs, Plaintiff Oklahoma's investment manager, and Spruce Point. (Fonti Decl. ¶¶35, 43-52.) Defendants vigorously contested class certification, arguing (among other things) that the Spruce Report demonstrated the absence of price impact based on arguments that it did not reveal any non-public material information. (*Id.* ¶¶44, 47, 51.) While Plaintiffs had strong responses, the complexity and risk of class certification further supports the requested fee.

### 4.    Plaintiffs' Counsel Provided High-Quality Representation that Secured an Outstanding Result

The quality of Plaintiffs' Counsel's "representation is evidenced by the recovery obtained for the [Settlement] Class . . . ."  *Christine Asia Co., Ltd. v. Yun Ma*, No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16, 2019) ("*Alibaba*").

The $17.5 million proposed Settlement is the direct result of Plaintiffs' Counsel's skilled and vigorous representation, as set forth in detail in the Fonti Declaration.  (Fonti Decl. ¶¶5-61.) This recovery represents a substantial percentage of realistically recoverable damages (estimated as $27.3 million to $108.1 million).   Specifically, Defendants' causation-related arguments threatened to reduce damages to $27.3 million (if not zero).  In that scenario, the $17.5 million Settlement represents a 65% recovery—nearly *two-thirds* of available damages, far exceeding the 8.8% median recovery in cases alleging claims under both Section 10(b) and Section 11.[4]  That is an exceptional result by any measure.  Alternatively, even if Plaintiffs had recovered the entire price decline in the wake of the Spruce Report, estimated damages would be $108.1 million, and the Settlement would represent a 16.2% recovery—nearly double the 8.8% median recovery. These recoveries are substantial, even before considering the significant case-specific risks outlined above.

The result achieved in this challenging case reflects Plaintiffs' Counsel's experience and skill:  Lead Counsel has extensive experience prosecuting securities class actions (Ex. 6 (Fonti Fee Decl.) ¶3 & Ex. 1), as do Kehoe Law Firm, P.C. (Ex. 7 (Yarnoff Decl.) ¶3 & Ex. 1), and The Law Offices of Susan R. Podolsky (Ex. 8 (Podolsky Decl.) ¶3 & Ex. 1).  Plaintiffs' Counsel marshalled this considerable experience and skill in successfully prosecuting and resolving this Litigation.

---

[4] *See supra*, n.2.

In addition, the quality of opposing counsel is a relevant factor in evaluating Plaintiffs' Counsel's work. *Signet*, 2020 WL 4196468 at *20 ("the quality of the opposition should also be taken into consideration in assessing the quality of the counsel's performance"). Here, Plaintiffs' Counsel faced formidable opposition from leading defense counsel, Simpson Thacher & Bartlett LLP. Plaintiffs' Counsel's ability to achieve a highly favorable settlement against this skilled opposition further supports the requested fee.

**5. Plaintiffs' Counsel Expended Over 8,600 Hours of Time and Labor (*Goldberger* 1), and the Requested Fee Is Reasonable Under a Lodestar Cross-Check**

Plaintiffs' Counsel invested 8,642.2 hours of work to achieve the proposed Settlement. (Fonti Decl. ¶¶96-104.) This reflects time through August 31, 2025 and excludes all work related to this fee application. (*Id.* ¶96.) The amount and quality of this work support the requested fee, as does a lodestar cross-check.

**a. Plaintiffs' Counsel's Hours**

As the Fonti Declaration explains in detail, Plaintiffs' Counsel's work reflects the complexity and duration of this action, the extensive fact and expert discovery necessary to prove the Class's claims, and Defendants' vigorous efforts to dispute class certification, liability, and damages. Plaintiffs' Counsel advanced the case through numerous litigation milestones over nearly three years, including:

- Investigating and preparing the initial complaint and briefing Plaintiff Lozada's motion for appointment as lead plaintiff (Fonti Decl. ¶¶5-8);

- Preparing the Amended Complaint, which significantly expanded the allegations of the initial complaint with details regarding TaskUs's alleged attrition and Glassdoor reviews based on interviews with multiple former employees and Plaintiffs' Counsel's proprietary analysis of thousands of Glassdoor reviews (*id.* ¶¶9-14);

- Defeating (in part) Defendants' motion to dismiss after full briefing, oral argument, and a post-argument submission (*id.* ¶¶15-26);

- Securing over 540,000 pages of documents over vigorous opposition, including preparing 11 submissions to the Court, addressing discovery disputes at the initial Case Management Conference and three status conferences, and efficiently analyzing the documentary record (*id.* ¶¶27-32);

- Producing more than 2,600 pages of Plaintiffs' documents in response to Defendants' 89 requests for production and responding to Defendants' 6 interrogatories and 22 requests for admission (*id.* ¶¶39-40);

- Preparing for and participating in 13 fact witness depositions, including the depositions of Defendants Maddock, Weir, Sekar, and Kumar, a TaskUs HR executive, the four former employees identified in the Amended Complaint, each Plaintiff, Oklahoma's investment manager, and Spruce Point (*id.* ¶¶33-38);

- Fully briefing class certification, which included Plaintiffs' submission of three briefs and two expert reports, two depositions of Plaintiffs' expert, and the deposition of Defendants' expert (*id.* ¶¶43-55);

- Significant preparation for merits expert discovery, including working with Plaintiffs' industry and damages experts to prepare opening reports (*id.* ¶¶56-57);

- Mediating with David Murphy in a full-day session, with Plaintiffs submitting two detailed mediation statements in advance (*id.* ¶¶58-62); and

- Negotiating and preparing the Stipulation of Settlement (*id.* ¶¶63-64).

To further assist the Court, Plaintiffs' Counsel has also presented their time in categories tied to key case events, such as discovery litigation, depositions, and class certification. (*Id.* ¶¶97-104.) The vast majority of the time—6,837.2 hours—was expended from January 2024 to January 2025 (Categories 3-6), in which Lead Counsel secured and analyzed extensive document discovery, completed 13 fact depositions, briefed Plaintiffs' class certification motion (including submitting two expert reports and conducting three expert depositions), prepared for opening merits expert reports, and participated in the mediation. (*Id.* ¶¶100-103.) This work built an extensive record for summary judgment and trial, and proved critical to driving the $17.5 million Settlement.

Plaintiffs' Counsel's work was conducted efficiently and concentrated among a core team of six attorneys, accounting for 55.6% of hours and 66.5% of lodestar. (*Id.* ¶105.) Moreover, all

13

depositions were taken and defended by three of these attorneys to further leverage their collective knowledge of the record. (*Id.* ¶¶35-36.)

In preparing this fee submission, Lead Counsel conducted a comprehensive review of Plaintiffs' Counsel's time records. (Ex. 6 (Fonti Fee Decl.) ¶7; Ex. 7 (Yarnoff Decl.) ¶7; Ex. 8 (Podolsky Decl.) ¶6.) As a result of this review, Plaintiffs' Counsel made reductions in the exercise of billing judgment, including excluding all time for BFA personnel who were less involved in the case (including all who billed fewer than 50 hours to the Litigation), and time spent attending depositions where more than two BFA attorneys were present. (Ex. 6 (Fonti Fee Decl.) ¶8.)

### b.      A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee

Courts may assess "hours as a 'cross check' on the reasonableness of the requested [fee] percentage." *Goldberger*, 209 F.3d at 50. This involves multiplying "the number of hours reasonably billed to the class . . . by an appropriate hourly rate," with a discretionary "multiplier" based on factors "such as the risk of the litigation and the performance of the attorneys." *Id.* at 47. When used as a "mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Id.* at 50.

As discussed below, Plaintiffs' Counsel's total lodestar, derived by multiplying each timekeeper's hours (addressed above) by their current hourly rate, is $7,095,486.[5] The requested fee of 30% of the $17.5 million settlement (or $5.25 million) represents a multiplier of 0.74—a significant negative multiplier that further supports the reasonableness of the requested fee.

---

[5] Plaintiffs' Counsel have used current rates to account for inflation and the delay in payment. *See Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-Civ-8557 (CM), 2014 WL 7323417, at *15 (S.D.N.Y. Dec. 19, 2014) ("the use of current rates to calculate the lodestar figure has been endorsed repeatedly by the Supreme Court, the Second Circuit and district courts within the Second Circuit as a means of accounting for the delay in payment inherent in class actions and for inflation").

14

### i.   Plaintiffs' Counsel's Rates Are Reasonable

BFA's hourly billing rates for the attorneys involved in this matter (using current rates for current attorneys, and the rate in the final year of employment for attorneys no longer employed by BFA) range from $1,095 to $1,310 for partners, $940 for Of Counsel, from $665 to $730 for associates, and from $520 to $595 for staff and project attorneys. (Ex. 6 (Fonti Fee Decl.) ¶9.) The billing rates at Kehoe Law Firm, P.C. are $950 for a partner. (Ex. 7 (Yarnoff Decl.) ¶8.) The billing rate for a principal at The Law Offices of Susan R. Podolsky is $750. (Ex. 8 (Podolsky Decl.) ¶7.)

These rates are appropriate and consistent with rates routinely approved in securities class settlements in this District.

First, in evaluating a "market rate," the Court may consider "[s]imilar billing rates for law firms representing plaintiffs in securities class actions." *Hi-Crush*, 2014 WL 7323417 at *14-15.

Courts in this District have approved rates comparable to Plaintiffs' Counsel's rates in other securities class action settlements. *See, e.g.*, *Pearlstein v. BlackBerry Ltd.*, No. 13 CIV. 7060 (CM) (KHP), 2022 WL 4554858, at *10 (S.D.N.Y. Sept. 29, 2022) (finding partner rates up to $1,200 to be "reasonable" and noting that rates were "comparable to peer plaintiffs and defense firms litigating matters of similar magnitude and complexity and similar rates have been approved by courts in this district"); *Lea v. Tal Educ. Grp.*, No. 18-CV-5480 (KHP), 2021 WL 5578665, at *12 (S.D.N.Y. Nov. 30, 2021) (rates of up to $750 for associates were "comparable to peer plaintiffs and defense-side law firms litigating matters of similar magnitude").

For example, in *Y-mAbs* (where the court awarded a 33.3% fee), Pomerantz LLP submitted rates ranging from $975 to $1,325 for partners, and from $465 to $715 for associates and other attorneys. No. 1:23-cv-00431-AS, ECF 64 at 10 of 12 (S.D.N.Y. Oct. 7, 2024). And in *Jernigan*

(where the court also awarded a 33.3% fee), counsel at Robbins Geller Rudman & Dowd LLP submitted rates of $970 to $1,270 for partners and $970 for Of Counsel. No. 1:20-cv-09575-JLR-KHP, ECF 147-1 at 2 of 2 (S.D.N.Y. April 24, 2025). These rates compare favorably to Plaintiffs' Counsel's rates, which range from $1,095 to $1,310 for partners, $940 for Of Counsel, and from $665 to $730 for associates. (Fonti Decl. ¶107.)

Judge Cronan has also previously acknowledged comparable rates billed by other securities litigation firms in approving fee requests. For example, in *In re Luckin Coffee Inc. Securities Litigation*, the Court cited the lodestar in approving the fee, No. 1:20-cv-01293-JPC, ECF 338 ¶5(G) (S.D.N.Y. July 22, 2022) (Cronan, J.), with Bernstein Litowitz Berger & Grossmann LLP submitting rates ranging from $850 to $1,200 for partners, and $750 to $825 for Senior and Special Counsel, ECF 327-8 at 7 of 48 (S.D.N.Y. June 10, 2022). In that same case, Kessler Topaz Meltzer & Check, LLP submitted rates ranging from $795 to $1,000 for partners, and $420 to $740 for associates and counsel. *Id.* ECF 327-7 at 10 of 57. Similarly, in *In re Evoqua Water Technologies Corp. Securities Litigation*, the Court noted the lodestar in awarding a fee, No. 1:18-cv-10320-JPC, ECF 152 ¶5(E) (S.D.N.Y. Nov. 1, 2021) (Cronan, J.), with Scott + Scott Attorneys at Law LLP submitting partner rates of $995 to $1,295 and associate rates of $550 to $750, ECF 145-8 at 6 of 44 (S.D.N.Y Sept. 27, 2021). Notably, these rates from 2021 and 2022 are comparable to BFA's current rates—despite significant inflation in the legal market over the intervening period. After adjusting for inflation, for example, the partner rates submitted in *Luckin Coffee* range from $1,043 to $1,472, and the partner rates in *Evoqua* range from $1,280 to $1,666—both higher than Plaintiffs' Counsel's partner and principal rates of $750 to $1,310.[6]

---

[6] An adjustment for inflation can be performed using the U.S. Bureau of Labor Statistics' Producer Price Index-Office of Lawyers (PPI-OL) based on the ratio of the index in (a) December in the year of the fee award to (b) July 2025, the most recent month available. PPI-OL data is available at https://fred.stlouisfed.org/series/PCU541110541110.

Second, Defendants' billing rates confirm the reasonableness of Plaintiffs' Counsel's rates. "Perhaps the best indicator of the 'market rate' in the New York area for plaintiffs' counsel in securities class actions is to examine the rates charged by New York firms that *defend* class actions on a regular basis." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 589 (S.D.N.Y. 2008) (emphasis in original).

While Simpson Thacher does not publicize its rates to defend class actions, it has submitted its rates in connection with bankruptcy proceedings, representing that the reported fees are "billed in accordance with Simpson Thacher's existing billing rates and procedures." *In re Amalgam Liquidation, LLC*, No. 23-90901 (MI), ECF 419 ¶14 (Bankr. S.D. Tex. Mar. 27, 2024). In *Amalgam*, Simpson Thacher's New York-based litigation partners billed at a rate of $2,195, and litigation associates billed at rates ranging from $745 to $1,290. *Id.*, ECF 419-3 at 2-3 of 5 (Bankr. S.D. Tex. Mar. 27, 2024). These rates are substantially higher than Plaintiffs' Counsel's rates—despite Simpson Thacher receiving regular compensation without any contingency risk—and further confirm that Plaintiffs' Counsel's rates are reasonable.

### ii.    The "Negative" Multiplier Confirms the Reasonableness of the Requested Fee

In many common-fund cases, the fee award exceeds the lodestar, resulting in a multiplier (the fee in dollars divided by total lodestar) based on the case's risk, duration, and other factors.

Here, however, Plaintiffs' Counsel requests a fee significantly below its lodestar. The requested fee results in a lodestar multiplier of 0.74, meaning that the requested fee reflects substantially *less* than the time and effort Plaintiffs' Counsel has invested into this case.

This so-called "negative multiplier" indicates "[t]here is . . . no real danger of overcompensation." *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 515 (S.D.N.Y. 2009). "Courts have repeatedly recognized that the reasonableness of the fee request under the

17

percentage method is reinforced where, as here, the percentage fee would represent a negative multiplier of the lodestar." *Guevoura Fund Ltd. v. Sillerman*, No. 1:15-cv-07192-CM, 2019 WL 6889901, at *18 (S.D.N.Y. Dec. 18, 2019) (collecting cases) (awarding 33.33% fee for $6.75 million settlement based on negative multiplier of 0.99).

Indeed, "that any reasonable fee would necessarily represent a negative multiplier of the lodestar supports an award at the higher end of the [percentage-of-recovery] spectrum." *Baffa v. Donaldson Lufkin & Jenrette Sec. Corp.*, No. 96 Civ. 0583 (DAB), 2002 WL 1315603, at *2 (S.D.N.Y. June 17, 2002) (in $3 million settlement, awarding 30% fee, representing a 0.38 multiplier).

For example, in *Gruber v. Gilbertson*, 647 F. Supp. 3d 100, 128 (S.D.N.Y. 2022) & *id.*, No. 1:16-cv-09727-JSR, ECF 523 ¶71 (S.D.N.Y. Sept. 6, 2022), a $13.95 million securities settlement, the court approved a 33.3% fee and explained that the fee "would not constitute anything approaching a windfall" given the negative multiplier of 0.34. Similarly, in *Jernigan*, a $12 million securities settlement, the court approved a 33.3% fee reflecting a 0.51 lodestar multiplier. No. 1:20-cv-09575-JLR-KHP, ECF 154 ¶4; ECF 143 at 15 of 27 (describing multiplier). Likewise, in *In re Blech Securities Litigation*, No. 94 CIV. 7696 (RWS), 2000 WL 661680, at *5 (S.D.N.Y. May 19, 2000), the court approved a 30% fee as "reasonable and fair" on the basis "that the percentage fee would represent a *negative* multiplier of the lodestar, had that approach been used." (Emphasis in original.)

Thus, applying a lodestar cross-check, Plaintiffs' Counsel's significant negative multiplier further supports the reasonableness of the requested fee.

18

### 6.   Public Policy Supports the Requested Fee (*Goldberger* 6)

The Supreme Court "has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). Fee awards in securities class actions should "encourage enforcement of the securities laws and support attorneys' decisions to take these types of cases on a contingent fee basis." *Sillerman*, 2019 WL 6889901 at *21; *see also Signet*, 2020 WL 4196468 at *21 (noting "strong public policy concern . . . for rewarding firms for bringing successful securities litigation").

Public policy strongly supports the requested fee. This is the only class action seeking to enforce the federal securities laws against TaskUs and redress the harm caused by Defendants' alleged misstatements. Plaintiffs believe that the allegations in this action—including that Defendants raised over $1 billion while misrepresenting two of TaskUs's key business metrics— have a significant impact on the integrity of the markets in which they invest and accepted standards of corporate governance. (Ex. 2 (Lozada Decl.) ¶5; Ex. 3 (Rankin Decl.) ¶7). The proposed Settlement sends an important message about preserving the integrity of the securities markets.

## II.   PLAINTIFFS' COUNSEL'S REQUESTED EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED

This motion also seeks reimbursement of litigation expenses of $924,556 that Plaintiffs' Counsel reasonably and necessarily incurred to prosecute this complex and expert-intensive action. (*See* Fonti Decl. ¶¶111-116.)

"It is well-settled that attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to

the representation." *In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 343 F. Supp. 3d 394, 418 (S.D.N.Y. 2018); *see also Flag Telecom*, 2010 WL 4537550 at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class.").

Plaintiffs' Counsel's expenses are detailed by category at Paragraph 116 of the Fonti Declaration. Because these expenses "were incurred with no guarantee of recovery, [Plaintiffs'] Counsel had a strong incentive to keep them at a reasonable level, and did so." *Hi-Crush*, 2014 WL 7323417 at *19. The largest categories of expenses are briefly described below:

- **Expert Work ($392,512):** These expenses (about 42% of the total) relate to Plaintiffs' experts at class certification; merits-stage expert work (with opening reports due March 5, 2025); and consulting experts who assisted with Plaintiffs' Counsel's investigation, damages analyses for mediation, and the Plan of Allocation in connection with the Settlement. (Fonti Decl. ¶116.a.) *See In re GSE Bonds Antitrust Litig.*, No. 19-cv-1704 (JSR), 2020 WL 3250593, at *6 (S.D.N.Y. June 16, 2020) ("The majority of Co-Lead Counsel's expenses were devoted to expert work, which was essential to the resolution of this complex case.").

- **Counsel for Former Employees ($178,992):** This category consists of fees Lead Counsel paid to counsel for four former TaskUs employees who provided information reflected in the Amended Complaint. Defendants subpoenaed all four of these former employees and aggressively sought their documents and testimony; with counsel's assistance, each former employee produced documents and sat for an in-person deposition, yielding 725 pages of testimony. (Fonti Decl. ¶116.b.) In connection with this discovery, counsel for the former employees performed 283.8 hours of work at rates of $450 (for a partner who served as Texas local counsel), $550 to $650 (for Of Counsel) and $550 (for associates), resulting in $178,992 in fees paid by Lead Counsel. (*Id.*) Reimbursing Lead Counsel for these expenses is appropriate. *See In re Teva Sec. Litig.*, No. 3:17-cv-00558-SRU, ECF 952-7 at 9 of 65 (describing expense to retain counsel for former employees) and ECF 963 ¶6 (D. Conn. June 2, 2022) (awarding all litigation expenses requested).

- **Litigation Support Vendor Fees ($179,040):** This category includes expenses of $133,435 for outside discovery vendors to collect Plaintiffs' documents and host Defendants' and third parties' document productions for review. The electronic database provided state-of-the-art technology that Plaintiffs' Counsel utilized to identify the strongest proof for effective fact depositions and expert discovery. This category also includes $44,661 in expenses for investigative services to interview former TaskUs employees for the Amended Complaint, and the fees incurred to

20

issue the notice required by the PSLRA during the lead plaintiff appointment process.  (*Id.* ¶116.c.ii.)

- **Court Reporter Services and Transcript Fees ($88,368):**  This category consists of court reporting and transcript fees for 16 depositions and several conferences and hearings.  (*Id.* ¶116.d.)

- **Mediation Fees ($32,500):**  This category consists of Lead Counsel's 50% portion of Phillips ADR's fees for the January 28, 2025 mediation session and related preparation.  (*Id.* ¶116.e.)

- **Travel Expenses ($25,933):**  These expenses relate to travel to Chicago, Illinois; Columbus, Ohio; San Antonio, Texas; and Austin, Texas for one expert deposition and eight fact depositions;  travel costs for Oklahoma's Executive Director to attend the hearing on the motion to dismiss, Oklahoma's deposition, and the mediation, and for Oklahoma's General Counsel to attend Oklahoma's deposition; and travel costs for Mr. Lozada to attend his deposition.  (*Id.* ¶116.f-i.)

- **Other Expenses ($27,211):**  The remaining expenses include service and filing fees, computer research, postage, and external photocopies.  (*Id.* ¶116.j-m.)

These expenses are reasonable, of the type customarily charged to clients, and appropriate for reimbursement.  *See Perrigo*, No. 1:19-cv-00070-DLC, ECF 331 (S.D.N.Y. Feb. 18, 2022) & ECF 326-4 at 4-5 (in $31.9 million securities class settlement, approving reimbursement of $978,117 in expenses, including $404,651 in expert fees; $205,049 in fees paid to outside international counsel; $132,168 in e-discovery vendor costs; and $105,492 in transcript and deposition expenses); *Karimi*, No. 1:22-cv-02854-JSR, ECF 110 (S.D.N.Y. Feb. 6, 2023) & ECF 108 at 35 of 39 (in $26.25 million securities class settlement, approving $689,614 in expenses, including $473,044 in expert fees); *XL Fleet*, No. 1:21-cv-02002-JLR, ECF 198 (S.D.N.Y. Apr. 30, 2024) & ECF 196 at 35 of 38 (in $19.5 million securities class settlement, approving $512,901 in expenses); *Moshell v. Sasol Ltd.*, No. 1:20-cv-01008-JPC, ECF 218 ¶4 (S.D.N.Y. Aug. 19, 2022) (Cronan, J.) & ECF 214-4 at 7 of 7 (in $24 million securities class settlement, approving $431,703 in expenses, including $323,926 in expert, consultant, and investigation fees).

21

### III.   PLAINTIFFS SHOULD BE AWARDED THEIR REASONABLE COSTS AND EXPENSES UNDER THE PSLRA

Finally, pursuant to the PSLRA, Plaintiffs seek "award[s] of [their] reasonable costs and expenses (including lost wages) directly relating to the representation of the class."  15 U.S.C. § 78u-4(a)(4).

Under the PSLRA, "[c]ourts in this Circuit routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place."  *Alibaba*, 2019 WL 5257534 at *20; *see also In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 132-133 (2d Cir. 2014) (affirming award of $453,003 to plaintiffs for "reasonable costs and expenses" where plaintiffs "submitted affidavits to the district court that included a thorough accounting of hours dedicated to the litigation and a statement that these hours constituted lost work time").  These awards compensate representative plaintiffs for work that is "beneficial to the class," including "reviewing drafts of [] complaints, responding to defendants' interrogatories and document requests, producing responsive documents, providing oversight of the mediation and settlement process, authorizing the settlements, and reviewing drafts of the settlements before they were filed with the Court."  *In re Petrobras Sec. Litig.*, 317 F. Supp. 3d 858, 873 (S.D.N.Y. 2018), *aff'd*, 784 F. App'x 10 (2d Cir. 2019).

Here, Mr. Lozada seeks an award of $9,750 and Oklahoma seeks an award of $7,000 based on their respective time devoted to this action in place of their regular duties.  Plaintiffs have been fully committed to pursuing this action and actively participated and supervised Plaintiffs' Counsel over nearly three years, including by reviewing the complaints, producing documents, responding to interrogatories, sitting for depositions, attending the mediation and authorizing the Settlement,

22

and vigorously discharging their responsibilities as class representatives under the PSLRA. (Ex. 2 (Lozada Decl.) ¶¶6, 17; Ex. 3 (Rankin Decl.) ¶¶8, 19.)

These efforts entailed at least 68 hours for Mr. Lozada. As detailed in Mr. Lozada's declaration, he devoted approximately 40 hours to preparing for and attending his deposition in New York, 10 hours to reviewing the complaints, opposition to the motion to dismiss, and class certification briefs, 10 hours to reviewing written discovery and assisting in responding to Defendants' discovery requests, and 8 hours to preparing for and attending the mediation remotely via Zoom. (Ex. 2 (Lozada Decl.) ¶17.) Mr. Lozada's 68 hours support an award of $9,750 at a reasonable hourly rate of $144. Confirming the reasonableness of this request, Mr. Lozada's estimated hourly rate based on his annual income as a business owner, divided by the number of hours he expects to work in a year, is at least $240. (Ex. 2 (Lozada Decl.) ¶18.)

Oklahoma devoted at least 68 hours to this action. As set forth in Mr. Rankin's declaration, he devoted approximately 20 hours to preparing for and testifying at Oklahoma's Rule 30(b)(6) deposition in New York, 20 hours to preparing for and attending the mediation in-person, 10 hours to preparing for and attending the motion to dismiss hearing, 9 hours to reviewing written discovery and assisting in responding to Defendants' discovery requests; 8 hours to reviewing the Amended Complaint, opposition to the motion to dismiss, and class certification briefs, and 1 hour to preparing for and discussing the case with Oklahoma's Board to gain their approval to participate in the Litigation. (Ex. 3 (Rankin Decl.) ¶19.) Mr. Rankin's 68 hours support an award of $7,000 at a reasonable rate of $103, derived from Mr. Rankin's compensation as the Executive Director of Oklahoma, divided by the number of hours Mr. Rankin is expected to work each year. (Ex. 3 (Rankin Decl.) ¶20.) Other courts have approved comparable awards to Oklahoma, including Mr. Rankin's hourly rate. *See In re Conduent Inc. Sec. Litig.*, No. 2:19-cv-08237-SDW-

23

AME, ECF 144 ¶7 (D.N.J. May 24, 2023) & ECF 138-11 ¶9 (awarding costs and expenses for "time [Oklahoma] dedicated to the Action" based on hourly rate of $103); *Logan v. ProPetro Holding Corp.*, No. 7:19-cv-00217-DC, ECF 178 ¶10 (W.D. Tex. May 11, 2023) & ECF 172-2 ¶15 (awarding Oklahoma its "reasonable costs and expenses" based on hourly rate of $103).

Plaintiffs' diligent representation of the Settlement Class warrants the requested awards, which are reasonable and comparable to amounts awarded in other PSLRA settlements in this District. *See, e.g.*, *Sasol Ltd.*, No. 1:20-cv-01008-JPC, ECF 218 ¶¶7-8 (S.D.N.Y. Aug. 19, 2022) (Cronan, J.), ECF 214-1 ¶13, ECF 214-2 ¶14 (awarding $20,000 to lead plaintiff and $15,000 to each named plaintiff, each at an hourly rate of $200); *Evoqua*, No. 1:18-cv-10320-JPC, ECF 152 ¶7 (S.D.N.Y. Nov. 1, 2021) (Cronan, J.) & ECF 145-2 ¶6 (awarding $15,900 to lead plaintiff at an hourly rate of $187); *Karimi*, No. 1:22-cv-02854-JSR, ECF 110 ¶18 (S.D.N.Y. Feb. 6, 2023) (awarding $20,000 to each plaintiff).

## CONCLUSION

Lead Counsel respectfully requests that the Court (a) award attorneys' fees in the amount of 30% of the Settlement Fund (plus interest at the same rate and for the same period as earned by the Settlement Fund, until paid); (b) award litigation expenses in the amount of $924,556 (plus interest at the same rate and for the same period as earned by the Settlement Fund, until paid); and (c) award Plaintiffs $16,750 for their reasonable costs and expenses, as authorized by the PSLRA.

Dated:  September 10, 2025

Respectfully submitted,

/s/ Joseph A. Fonti
Joseph A. Fonti
Nancy A. Kulesa
Evan A. Kubota
Thayne Stoddard
**BLEICHMAR FONTI & AULD LLP**

300 Park Avenue, Suite 1301
New York, New York 10022
Telephone: (212) 789-1340
Facsimile: (212) 205-3960
jfonti@bfalaw.com
nkulesa@bfalaw.com
ekubota@bfalaw.com
tstoddard@bfalaw.com

*Counsel for Lead Plaintiff Humberto Lozada
and Named Plaintiff Oklahoma Firefighters
Pension and Retirement System*

John A. Kehoe
Michael K. Yarnoff
**KEHOE LAW FIRM, P.C.**
2001 Market Street, Suite 2500
Philadelphia, Pennsylvania 19103
Telephone: (212) 792-6676
jkehoe@kehoelawfirm.com
myarnoff@kehoelawfirm.com

*Additional Counsel for Lead Plaintiff
Humberto Lozada*

25

**CERTIFICATE OF WORD COUNT COMPLIANCE**

I certify that this memorandum of law does not exceed 8,750 words and, thus, complies with Local Civil Rule 7.1(c) and Section 2.B of the Court's Individual Rules and Practice in Civil Cases, as revised on March 14, 2025.  The total number of words contained in the foregoing brief, exclusive of the caption, table of contents, table of authorities, signature block, and this certificate, but including footnotes, is 7,505 words.  In preparing this certificate, I have relied on the word count of the word-processing program used to prepare this brief.


Dated:  September 10, 2025                              /s/ *Joseph A. Fonti*
       New York, New York                              Joseph A. Fonti