UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------- X

HUMBERTO LOZADA and OKLAHOMA
FIREFIGHTERS PENSION AND
RETIREMENT SYSTEM, individually and
on behalf of all others similarly situated,

                       Plaintiffs,

             - against -

TASKUS, INC, BRYCE MADDOCK,
JASPAR WEIR, BALAJI SEKAR, AMIT
DIXIT, MUKESH MEHTA, SUSIR KUMAR,
JACQUELINE D. RESES, and BCP FC
AGGREGATOR L.P.,

                    Defendants.

-------------------------------------------------------------------------- X

22 Civ. 1479 (JPC) (GS)

REPORT & RECOMMENDATION

**GARY STEIN, United States Magistrate Judge:**

Before the Court are (1) Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation (Dkt. No. 192 (the "Final Approval Motion")) and (2) Lead Counsel's Motion for Attorney's Fees, Litigation Expenses, and Plaintiffs' Reasonable Costs and Expenses (Dkt. No. 194 (the "Fees and Expenses Motion")). The Court has reviewed the papers submitted in support of the motions (Dkt. Nos. 192-98), and conducted a fairness hearing on October 16, 2025. For the reasons set forth below, the undersigned recommends that both the Final Approval Motion and the Fees and Expenses Motion be **GRANTED**.

BACKGROUND

This is a federal securities class action brought on behalf of shareholders of TaskUs, Inc. ("TaskUs"), a business process outsourcing company whose stock is

1

publicly traded on NASDAQ.  Plaintiffs Humberto Lozada ("Lozada") and the Oklahoma Firefighters Pension and Retirement System (the "Oklahoma Firefighters") (together, "Plaintiffs" or "Class Representatives") assert claims under, *inter alia*, Section 11 of the Securities Act of 1933 ("Securities Act") and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") against TaskUs, several individual officers and directors of TaskUs, and BCP PF Aggregator L.P., TaskUs's majority shareholder (together, "Defendants").  (Dkt. No. 26).  Plaintiffs allege that Defendants made misrepresentations in registration statements issued in connection with TaskUs's initial public offering in June 2021 (the "IPO") and in connection with a secondary offering in October 2021 (the "Secondary Offering").  (*Id.* ¶¶ 7-11).

The action was originally filed on February 23, 2022 (Dkt. No. 1), and Plaintiffs filed their Amended Complaint on December 16, 2022 (Dkt. No. 26).  Extensive litigation ensued, including a motion to dismiss Plaintiffs' Amended Complaint that was granted in part and denied in part; substantial fact discovery including 13 depositions and the production by Defendants of 540,000 pages of documents; full briefing on Plaintiffs' motion for class certification; and the taking of three expert depositions in connection with the class certification motion.  (*See* Dkt. No. 196 ¶¶ 9-57).

On February 24, 2025, the parties entered into a Stipulation of Settlement (the "Settlement"), which was subsequently revised as of May 27, 2025.  (Dkt. No. 187-1).  The Settlement provides for, *inter alia*, the payment of $17.5 million for the

benefit of a class of persons who purchased Class A common stock of TaskUs during the period from June 11, 2021 through January 19, 2022 (the "Class Period") pursuant to the registration statements for the IPO or the Secondary Offering (the "Class" or "Class Members").  (*Id.* ¶¶ 1.40, 2.1).

On June 13, 2025, Judge Cronan, adopting the undersigned's report and recommendation, entered an Order Preliminarily Approving Settlement and Providing for Class Notice (the "Preliminary Approval Order").  (Dkt. Nos. 190-91).[1] The Preliminary Approval Order, *inter alia*, preliminarily found that the Settlement should be approved, preliminarily certified the Class for purposes of effectuating the Settlement, approved the form and content of notices to be provided to Class Members, authorized the retention of Epiq Class Action & Claims Solutions, Inc. as Claims Administrator, and set a deadline of September 25, 2025 for Class Members to file proof of claim forms and a deadline of August 21, 2025 for Class Members to opt out of the Settlement.  (Dkt. No. 191).

Pursuant to the Preliminary Approval Order, the Claims Administrator disseminated notice to 34,333 potential Class Members, published and transmitted notice via certain publications, and posted notice on a dedicated website.  (Dkt. No. 198).  No objections to any aspect of the Settlement have been received.  (Dkt. No. 196-4 ¶ 29; Dkt. No. 198 ¶ 12; Dkt. No. 199, Transcript of Fairness Hearing, Oct. 16,

---

[1] Judge Cronan referred Plaintiffs' motion for preliminary approval of the Settlement to the undersigned for a report and recommendation (Dkt. No. 181), and subsequently referred the Final Approval Motion and the Fees and Expenses Motion to the undersigned for a report and recommendation (Dkt. No. 184).

2025 ("Tr."), at 4:11-12).  No Class Member has opted out of the Settlement.  (Dkt. No. 196-4 ¶ 27; Dkt. No. 198 ¶ 11 at 2; Tr. at 4:11-12).  As of the fairness hearing, a total of 27,034 Class Members had filed proof of claim forms.  (Tr. at 4:19-21).

## DISCUSSION

### A.  Final Approval Motion

In evaluating whether the proposed Settlement merits final approval, the Court must consider whether (1) the proposed Class should be finally certified for purposes of settlement under Federal Rule of Civil Procedure 23(a) and (b); (2) notice has been properly provided under Rule 23(e)(1) as well as the Private Securities Litigation Reform Act ("PSLRA"), and the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715; and (3) the Settlement is fair, reasonable, and adequate under Rule 23(e)(2).  The Court considers each of these requirements in turn.

### 1.  Class Certification

Before approving a class action settlement, the district court must conclude that the proposed class meets the requirements for class certification set forth in Rule 23(a) and the relevant subsection of Rule 23(b).  *Lea v. Tal Educ. Grp.*, No. 18 Civ. 5480 (KHP), 2021 WL 5578665, at *4 (S.D.N.Y. Nov. 30, 2021); *see In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 239 (2d Cir. 2012).  Rule 23(a) imposes four threshold requirements for class certification: (1) numerosity ("the class is so numerous that joinder of all members is impracticable"); (2) commonality ("there are questions of law or fact common to the class"); (3) typicality ("the claims or defenses of the representative parties are typical of the claims or defenses of the

class"); and (4) adequacy of representation ("the representative parties will fairly and adequately protect the interests of the class"). *Lea*, 2021 WL 5578665, at *5 (citing Fed. R. Civ. P. 23(a)).

Here, as found on a preliminary basis in the Preliminary Approval Order (Dkt. No. 191 ¶ 6), all four prerequisites for class certification under Rule 23(a) are satisfied. As noted above, more than 27,000 claims have been submitted, easily establishing numerosity. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("numerosity is presumed at a level of 40 members"). As in most securities class actions, commonality is also easily established: common questions of law and fact exist as to whether Defendants' alleged misrepresentations in TaskUs's public filings during the Class Period artificially inflated its stock price, causing harm to Class Members who purchased the stock during that period. *See In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *9 (S.D.N.Y. Dec. 23,2009) ("The commonality requirement, particularly in securities fraud litigation, is generally considered a low hurdle easily surmounted." (citation omitted)).

Further, the claims of Lozada and Oklahoma Firefighters, the Class Representatives, are typical of those of the Class, as both purchased TaskUs stock during the Class Period based on the alleged misrepresentations. (Dkt. No. 73 ¶ 2; Dkt. No. 74 ¶ 2). *See Puddu v. 6D Glob. Techs., Inc.*, No. 15 Civ. 8061 (AJN), 2021 WL 1910656, at *2 (S.D.N.Y. May 12, 2021) ("Since the class is defined as those who purchased shares during the class period, the typicality requirement is met here;

the claims all stem from the same allegedly unlawful conduct, which affected plaintiffs and the class members equally."). The Class Representatives' interests are aligned with the interests of other members of the Class, and Plaintiffs' counsel are qualified and experienced to handle federal securities class actions. The final prerequisite under Rule 23(a) is thus also satisfied. *See Lea*, 2021 WL 5578665, at *6 ("In order to meet the final requirement, adequate representation of the class's interests, Plaintiffs must demonstrate that: (1) the class representatives do not have conflicting interests with other class members; and (2) class counsel is qualified, experienced and generally able to conduct the litigation.").

Certification is also appropriate under Rule 23(b), and specifically under subsection (b)(3). Certification under Rule 23(b)(3) requires both predominance (that "questions of law or fact common to class members predominate over any questions affecting only individual members") and superiority (that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy"). *Lea*, 2021 WL 5578665, at *6; *see* Fed. R. Civ. P. 23(b)(3). Both predominance and superiority are established here.

First, predominance is established because resolution of the key elements of Class Members' claims, including whether TaskUs's public filings contained material misrepresentations, whether Defendants acted with scienter, and whether the fraud-on-the-market theory establishes reliance, "can be achieved through generalized proof" rather than individualized proof. *Lea*, 2021 WL 5578665, at *6 (citation omitted); *see Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 625 (1997)

6

(noting that predominance is often "readily met" in securities fraud actions).

Second, superiority is established because certifying the Class "presents economies

of 'time, effort and expense, and promote[s] uniformity of decision.'" *In re U.S.*

*Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 130 (2d Cir. 2013) (quoting Fed. R. Civ.

P. 23 advisory committee's note).  Further, because the Class would be certified only

for purposes of effectuating the Settlement, "the Court need not inquire as to

whether the case, if tried, would present management problems." *Lea*, 2021 WL

5578665, at *7.

Accordingly, the Court finds that the Class should be finally certified,

pursuant to Rule 23(a) and (b), for purposes of effectuating the Settlement.

### 2. Notice

In the Preliminary Approval Order, the Court also found that the notice to be

provided to prospective Class members, as to both form and content, constituted the

best notice practicable under the circumstances; was reasonably calculated to

apprise Class Members of the terms of the Settlement and their right to object to, or

exclude themselves from, the Settlement; and satisfied the requirements of Rule 23,

the PSLRA, and the due process clause.  (Dkt. No. 191 ¶ 7).

The Claims Administrator proceeded to provide notice to the Class.  As of

September 10, 2025, a total of 34,433 notices were mailed or otherwise disseminated

to potential Class Members.  (Dkt. No. 196-4 ¶¶ 3-11; Dkt. No. 198 ¶ 3).  This

includes notices sent to nominees for transmission to investors.  (Dkt. No. 196-4 ¶¶

9-10; Dkt. No. 198 ¶ 3).  In addition, notice was published in the *Investor's Business*

*Daily*, transmitted over *PR Newswire*, and published on the Depository Trust

Corporation's Legal Notice System for access by banks and brokers that may have

clients who are Class Members.  (Dkt. No. 196-4 ¶¶ 12-13).  Further, the Claims

Administrator created a website dedicated to the Settlement that provided

information about the case and the Settlement and copies of the Court-approved

notices, proof of claim forms, and other relevant documents, as well as instructions

about how to submit claims and objections or opt-out requests.  (*Id*. ¶¶ 14-19).

At the fairness hearing, counsel for Plaintiffs reported that 27,034 claims

have been received representing over 11 million TaskUs shares, more than 50% of

the total shares, which, according to counsel, is "a very healthy participation rate in

our experience."  (Tr. at 6:18-7:7).  The high degree of participation suggests not

only that notice was reasonably calculated to reach investors, but also that it

succeeded in reaching investors.  Accordingly, the Court finds that the notice

provided complied with the Preliminary Approval Order and satisfies the

requirements of Rule 23.  The notices also contained the information required by

the PSLRA.  (*See* Dkt. No. 176 at 10; Dkt. No. 176-1 Ex. A1).

Under CAFA, notice of the proposed Settlement was also required to be

served upon appropriate federal and state officials, such as the U.S. Attorney

General and attorneys general and other regulatory officials of the various states.

28 U.S.C. § 1715(a), (b).  Notice under CAFA must be provided within 10 days of the

filing of the proposed settlement with the court.  28 U.S.C. § 1715(b).

The record reflects that on March 5, 2025, within ten days of the filing of the

8

proposed Settlement with the Court on February 24, 2025 (Dkt. No. 176-1), notice

packets regarding the Settlement were mailed to the U.S. Attorney General and the

attorneys general of individual states and the District of Columbia and the five

recognized U.S. territories.  (Dkt. No. 196-5).  The notice packets included the

available information required by CAFA.  (Dkt. No. 196-5 Ex. A).[2]  No objection or

response was received from the federal government or any state or other

jurisdiction.  (Dkt. No. 196-5 ¶ 4).  The Court therefore finds that the notice

requirements of CAFA have been satisfied.

### 3.  Fairness of the Settlement

In determining whether a proposed settlement is fair, reasonable, and

adequate, courts must consider the factors set forth in Rule 23(e)(2), including

whether:

> (A) the class representatives and class counsel have adequately represented
>     the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> (i) the costs, risks, and delay of trial and appeal;
>
> (ii) the effectiveness of any proposed method of distributing relief to the class,
>     including the method of processing class-member claims;

---

[2] It is unclear if the notices sent to state officials complied with CAFA's requirement to provide a reasonable estimate of the number of class members residing in each state and their proportionate share of the overall settlement.  28 U.S.C. § 1715(b)(7)(B).  (*See* Dkt. No. 196-5 Ex. A at 3 (indicating that complete information about class members' states of residence was not currently available)).  Assuming, *arguendo*, that it did not, courts routinely find that where, as here, no federal or state official has objected to the proposed settlement, such technical noncompliance with CAFA is not an obstacle to approval of the settlement.  *See, e.g.*, *In re Luckin Coffee Inc. Sec. Litig.*, No. 20 Civ. 1293 (JPC) (S.D.N.Y.), Dkt. No. 342 (transcript of fairness hearing) at 27-29 (citing cases)).

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

These factors "largely overlap" with the *Grinell* factors long used in the Second Circuit to evaluate the fairness of a class action settlement: "'(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.'" *Moses v. N.Y. Times Co.*, 79 F.4th 235, 244 n.2 (2d Cir. 2023) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)) (alteration in original); *see also id.* at 243 (noting that the revised Rule 23(e)(2) "does not displace our traditional *Grinnell* factors, which remain a useful framework for considering the substantive fairness of a settlement").

The first two Rule 23(e)(2) factors "are procedural in nature" while the latter two "guide the substantive review of a proposed settlement." *Id.* at 242; *see also Lea*, 2021 WL 5578665, at *7 (noting that the requirement that a class action settlement be "'fair, reasonable, and adequate'" under Rule 23(e) "entails a review of

both procedural and substantive fairness").

### a. Procedural Fairness

The Settlement bears the hallmarks of a procedurally fair settlement.

First, the record reflects that the Class Representatives and Lead Counsel have adequately represented the class. Plaintiff Lozada claimed a $300,000 loss from his purchase of TaskUs stock during the Class Period, giving him a substantial stake in the controversy and a substantial incentive to oversee counsel and pursue the case vigorously. (Dkt. No. 15-3; *see also* Dkt. No. 20 at 3 (Judge Cronan's order appointing Lozada lead plaintiff and noting that Lozada's alleged loss "easily constitute[s] a sufficient interest in the outcome of this case to secure his vigorous advocacy on behalf of the class")). Lozada's efforts were complemented by those of Oklahoma Firefighters, a sophisticated institutional investor that has substantial experience in recovering funds for investors in federal securities class actions. (Dkt. No. 196-3 ¶¶ 5-6). In appointing the firm of Bleichmar Fonti & Auld LLP ("BFA") as Lead Counsel, Judge Cronan likewise recognized BFA's "extensive experience representing plaintiffs in class actions." (Dkt. No. 20 at 4). Based on the record, and the Court's own experience in addressing a number of discovery disputes between the parties, BFA forcefully and vigorously represented the interests of Plaintiffs and the Class in this action.

Second, the record also reflects that the Settlement was the product of arm's length negotiations. The Settlement was reached following a day-long in-person mediation conducted before an experienced mediator, David M. Murphy of Phillips

11

ADR, a firm well known for its expertise in mediating securities cases. (Dkt. No. 196 ¶¶ 58-62). The Class Representatives attended the mediation, either in-person (Oklahoma Firefighters) or virtually (Lozada). (Dkt. Nos. 196-1 & 196-2). After exchanging several demands and counteroffers, the parties were unable to reach agreement, resulting in a mediator's proposal of $17.5 million to which both sides ultimately agreed. (Dkt. No. 196 ¶ 60). Mediator Murphy has submitted a declaration in connection with Plaintiffs' Final Approval Motion attesting that "the mediation was hard-fought and adversarial, and that both sides were represented by zealous, seasoned and well-prepared counsel with demonstrated expertise in litigating federal securities law claims." (Dkt. No. 196-1 ¶ 9). Further, the Settlement came only after three years of litigation, including extensive discovery, while Plaintiffs' fully-briefed motion for class certification was pending.

Under these circumstances, the Court finds that the Settlement is procedurally fair. *See, e.g.*, *Reyes v. Summit Health Mgmt.*, LLC, No. 22 Civ. 9916 (VSB), 2024 WL 472841, at *3 (S.D.N.Y. Feb. 6, 2024) (finding settlement to be product of arm's length negotiations where it was reached after "seven months of discovery" and negotiations before "an experienced mediator"); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] court-appointed mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure.").

### b. Substantive Fairness

Following the adoption of the revised Rule 23(e)(2) in 2018, courts in the

12

Second Circuit no longer apply a "presumption" of fairness, adequacy, and reasonableness where, as here, a class settlement was reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery. *Moses*, 96 F.4th at 243-44; *see also Kurtz v. Kimberly-Clark Corp.*, 42 F.4th 112, 118 (2d Cir. 2025) (noting that *Moses* "held that the 2018 Amendments abrogated the presumption of fairness we previously applied to those class action settlements that were negotiated at arm's length").[3]

In advocating for the Settlement's substantive reasonableness, Plaintiffs' brief states that the settlement fund of $17.5 million represents 16.2% of Plaintiffs' "highest estimate of realistically recoverable damages" ($108.1 million). (Dkt. No. 193 at 8 & n.5). Plaintiffs tout this result as "nearly double" the 8.8% median recovery in securities class actions alleging claims under both Section 10(b) and Section 11 between 2015 and 2024, as set forth in the most recent report prepared by Cornerstone Research. (*Id*. at 8 & n.4).[4] It is unclear whether this claim is justified. The Cornerstone Report calculates recoveries as a percentage of "plaintiff-style damages" (Cornerstone Report at 2), and it is possible that the Cornerstone estimate of "plaintiff-style damages" would be higher than the $108.1 million in "realistically recoverable damages" estimated by Plaintiffs. Indeed, Plaintiffs

---

[3] Plaintiffs' brief erroneously relies on now-outdated Second Circuit law in arguing that a presumption of fairness applies. (Dkt. No. 193 at 7 (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)).

[4] *See* Cornerstone Research, *Securities Class Action Settlements – 2024 Review and Analysis*, at 8, *available at* https://www.cornerstone.com/wp-content/uploads/2025/03/Securities-ClassAction-Settlements-2024-Review-and-Analysis.pdf.

acknowledge that "the statutory formula for Section 11 damages would yield theoretical damages above \$108.1 million." (Dkt. No. 193 at 8 n.5).[5]

Nevertheless, considering the risks of continued litigation, as required under Rule 23(e)(2)(C)(i), the \$17.5 million recovery provides adequate relief to the Class. Defendants dispute whether they made any actionable misrepresentations under either Section 11 or Section 10(b), dispute *scienter* on the Section 10(b) claim, and assert a negative causation defense under Section 11 and a loss causation defense under Section 10(b). If Defendants were to prevail on these arguments, Plaintiffs could recover nothing in this case or, even if liability were established, only modest damages. Defendants also mounted a vigorous defense to Plaintiffs' motion for class certification, which could have thwarted Plaintiffs' efforts to obtain class-wide relief. Securing a \$17.5 million recovery for the Class now, and eliminating the risks and delay attendant to continued litigation, reasonably and adequately protects the Class's interests.

Turning to Rule 23(e)(2)(C)(ii), the Court finds that the proposed method of distributing the Settlement proceeds to the Class is also reasonable. Plaintiffs have proposed, and the Court has appointed, an experienced Claims Administrator to

---

[5] Plaintiffs' brief further asserts, and even highlights, that the \$17.5 million is "an exceptional result that is more than *seven times*" the 8.8% median recovery reported by Cornerstone when considered in relation to a more conservative estimate of the class's "realistically recoverable damages." (Dkt. No. 193 at 7-8 (emphasis in original)). That more conservative estimate of \$27.3 million assumes that "Defendants' negative causation and loss causation arguments would limit" the Class's damages to 25% of the decline in TaskUs's stock price. (*Id.*). As the Court established during the fairness hearing, however, counsel's "more-than-seven-times-the-median" claim compares apples with oranges. Cornerstone's 8.8% median recovery is calculated based on "*plaintiff-style* damages," whereas counsel's 65% recovery claim is based on a *defendant-friendly* damages estimate. (*See* Tr. at 8:19-9:2, 12:22-14:13). The Court thus ascribes no weight to counsel's misleading comparison.

process claims, provide claimants an opportunity to cure any deficiencies, and distribute to claimants their *pro rata* share of the settlement fund, following established procedures in securities class actions. (Dkt. No. 177 ¶¶ 17-18).

Under Rule 23(e)(2)(C)(iii), the Court must also consider the proposed award of attorneys' fees and expenses in considering the substantive fairness of the Settlement. *See Moses*, 96 F.4th at 244. The analysis dictated by Rule 23(e)(2) "directs courts to compare the proportion of the total recovery going to attorney's fees with the proportion going to the class, and to consider whether that comparison reveals a sufficient imbalance as to cast doubt on the settlement's fairness." *Kurtz*, 142 F.4th at 119. Here, Plaintiffs' counsel (in the aggregate) are seeking an award of fees in the amount of $5.25 million and litigation expenses of $924,556. (Dkt. No. 195 at 1). The fees constitute 30% of the overall settlement value of $17.5 million; if the expenses are considered together with the fees, the percentage going to counsel increases to 35.3%. Put differently, the Class is receiving 64.7% of the settlement proceeds.

The Court finds that the fees and expenses sought by Plaintiffs' counsel are reasonable in relation to the benefits to be realized by the Class. As discussed more fully in Section B(1)(b) *infra,* a fee award of 30% is well within the norm for class counsel, and the lodestar in this case is negative. While the amount of expenses is relatively high, that very fact is further evidence that counsel pursued this case aggressively, fronting payment of the expenses even though there was a risk that they might not get the funds back. The circumstances here do not bespeak a

scenario in which plaintiffs' counsel accepted an early, cheap settlement that benefited counsel's interests at the expense of the class. *See Kurtz*, 142 F.4th at 118 (noting that Rule 23(e)(2)(C) requires consideration of attorney's fees because "[o]ne of the major risks of class action settlements is that class counsel may undervalue the class's claims in exchange for a higher attorney's fee, or in order to collect a fee more quickly"). Further, the magnitude of the fee and expense award was disclosed in the notices sent to Class Members, and no Class Member has objected to the award. This factor thus weighs in favor of approval.

The parties have not identified any agreements required to be identified under Rule 23(e)(2)(C)(iv) other than the Settlement itself and a standard supplemental and confidential agreement addressing what would happen if a large number of Class Members chose to opt out of the settlement. (*See* Dkt. No. 193 at 11-12). This factor therefore does not weigh against approval of the Settlement.

Finally, the Settlement treats Class Members equitably under Rule 23(e)(2)(D). The proceeds will be distributed via a Plan of Allocation that distinguishes between Class Members' claims arising under the Securities Act and claims arising under the Exchange Act. (*See* Dkt. No. 107-4 at 23-32; Dkt. No. 193 at 14-15; Dkt. No. 196 ¶¶ 80-84). The formula provides for a higher recovery for those Class Members with claims under the Securities Act (specifically, those who purchased stock in or traceable to the Secondary Offering), recognizing the different methods used to calculate damages under the Securities Act and the Exchange Act. (Dkt. No. 196 ¶¶ 82-84). The formula also takes into account whether particular

16

claimants purchased and sold their shares and whether they held them throughout the PSLRA's 90-day look-back period after the end of the Class Period. (*Id.* ¶ 81; *see* 15 U.S.C. § 78u-4(e)). Plaintiffs' counsel developed the Plan of Allocation with the assistance of Plaintiffs' damages expert. (Dkt. 193 at 14).

In general, a plan of allocation should reimburse class members based on the relative strengths and values of their claims. *See In re Signet Jewelers Ltd. Sec. Litig.*, No. 16 Civ. 6728 (CM) (SDA), 2020 WL 4196468, at *14 (S.D.N.Y. July 21, 2020). The Court finds that the Plan of Allocation here does so, and distributes the settlement funds in a reasonable and equitable manner. *See, e.g.*, *In re Luckin Coffee Inc. Sec. Litig.*, No. 20 Civ. 1293 (JPC) (S.D.N.Y.), Dkt. No. 342 at 42-43 (approving plan of allocation that provided for different recoveries for claimants with Securities Act claims and Exchange Act claims because it "has a clear rational basis, equitably treats the class members, and was devised by experienced and qualified class counsel" together with plaintiffs' damages expert).

In *Moses*, the Second Circuit also instructed that incentive awards payable to class representatives need to be scrutinized under Rule 23(e)(2)(D) to ensure that other class members are not being treated inequitably in relation to the class representatives. *See Moses*, 79 F.4th at 245 ("[C]ourts evaluating the substantive fairness of a settlement must ensure that proposed incentive awards are reasonable and promote equity between class representatives and absent class members."). To the extent Rule 23(e)(2)(D) implicates the awards to the two Class Representatives here (which nominally are designed to compensate them for their efforts rather to

17

serve as an incentive award), the Court finds that, as discussed further below, the awards are reasonable and do not result in inequitable treatment within the Class. As the Second Circuit emphasized in *Moses*, "Rule 23(e)(2)(D) requires that class members be treated *equitably*, not identically," *id.* at 245 (emphasis in original), and "does not forbid incentive awards," *id.*

The Court has also considered the *Grinnell* factors, to the extent they do not duplicate the Rule 23(e)(2) factors, and find they also support approval of the Settlement. In particular, "'the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy.'" *Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, No. 17 Civ. 5543, 2021 WL 76328, at *2 (S.D.N.Y. Jan. 7, 2021) (quoting *In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 343 F. Supp. 3d 394, 410 (S.D.N.Y. 2018)). Although 34,433 notices were disseminated to Class Members (along with other methods of publicizing the proposed Settlement), not a single objection to the Settlement has been received. Not a single TaskUs investor has asked to be excluded from the Class. To the contrary, an unusually large percentage of Class Members have affirmatively opted into the Settlement. The fact that "no class members objected or opted out" of the settlement "strongly favors approval." *Id.* at *2; *see also Beebe v. V&J Nat'l Enterps., LLC*, No. 17 Civ. 6075 (EAW), 2020 WL 2833009, at *6 (W.D.N.Y. June 1, 2020) ("high participation rate" by class favored approval).

Accordingly, the Court finds that the proposed Settlement is fair, reasonable, and adequate and meets the requirements of Rule 23(e)(2). It is therefore

18

recommended that the Final Approval Motion be granted.

## B. Fees and Expenses Motion

Plaintiffs seek approval to distribute the following amounts from the $17.5 million settlement fund: (1) $5.25 million in attorneys' fees to Plaintiffs' counsel; (2) $924,556 in litigation expenses incurred by Plaintiffs' counsel; and (3) $16,750 in awards to the two Class Representatives pursuant to 15 U.S.C. § 78u-4(a)(4). (Dkt. No. 195 at 1). The Court considers each in turn.

### 1. Attorneys' Fees

#### a. Legal Principles

"In reviewing a class action settlement agreement for final approval, a district court must assess the reasonableness of the attorneys' fees." *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173 (RPP), 2008 WL 1956267, at *15 (S.D.N.Y. May 1, 2008). This obligation stems from Rule 23(h), which provides that, in certified class actions, the court "may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

In "common fund" cases—where, as here, the attorneys' fees come out of a common fund created to compensate class members for a common injury—courts use two distinct methods to determine whether the fees are reasonable. *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). Under the "percentage of recovery" method, the court "calculates the fee award as some percentage of the funds made available to the Settlement Class." *Hesse v. Godiva Chocolatier, Inc.*,

19

No. 19 Civ. 972 (LAP), 2022 WL 22895466, at *11 (S.D.N.Y. Apr. 20, 2022). Under the "lodestar" method, the court "'scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate.'" *Ferrick v. Spotify USA Inc.*, No. 16 Civ. 8412 (AJN), 2018 WL 2324076, at *9 (S.D.N.Y. May 22, 2018) (quoting *Goldberger*, 269 F.3d at 47).

Although both methods are available, "the trend in this Circuit has been toward the use of a percentage of recovery method of calculating the award for class counsel in common funds cases, particularly in complex securities class actions." *In re BioScrip, Inc. Sec. Litig.*, 273 F. Supp. 474, 495-96 (S.D.N.Y. 2017); *see also In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 586 (S.D.N.Y. 2008) ("Congress plainly contemplated that percentage-of-recovery would be the primary measure of attorneys' fee awards in federal securities class actions."). However, "[e]ven where the percentage method is used, the lodestar method remains useful as a 'cross-check on the reasonableness of the requested percentage.'" *In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515 (WHP), 2009 WL 2025160, at *3 (S.D.N.Y. July 10, 2009) (quoting *Goldberger*, 269 F.3d at 50).

Irrespective of the method chosen, any fee "may not exceed what is 'reasonable' under the circumstances." *Goldberger*, 269 F.3d at 47. In conducting this reasonableness assessment, the court is guided by the following criteria, known as the "*Goldberger* factors": (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6)

20

public policy considerations.  *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 423 (2d Cir. 2010).

### b. Percentage-of-Recovery Analysis

Plaintiffs' counsel's requested fee award of $5.25 million amounts to 30% of the $17.5 million settlement fund.  This percentage is in line with other fee awards in federal securities class action settlements.  *See, e.g.*, *In re Tenaris S.A. Sec. Litig.*, No. 18 Civ. 7059 (KAM) (SJB), 2024 WL 1719632, at *10 (E.D.N.Y. Apr. 22, 2024) ("District courts within the Second Circuit routinely approve attorneys' fees awards of one third or 33 1/3% as reasonable.") (collecting cases); *Rosi v. Aciaris Therapeutics, Inc.*, No. 19 Civ. 7118 (LJL), 2021 WL 5847420, at *8 (S.D.N.Y. Dec. 9, 2021) (noting that a 30% fee "is a common fee award" in securities class actions in the Second Circuit); *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12 Civ. 8557 (CM), 2014 WL 7323417, at *12 (S.D.N.Y. Dec. 19, 2014) ("In this Circuit, courts routinely award attorneys' fees that run to 30% and even a little more of the amount of the common fund." (citation omitted)); NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review* at 30 (Jan. 22, 2025) (finding that in securities class action settlements with a settlement value between $10 million and $25 million, the median fee award between 1996 and 2014 was 30.0%, and between 2015 and 2024 it was 27.5%).

The fee is also reasonable when considered in light of the *Goldberger* factors. First, counsel state that they devoted 8,642 hours of work to this case (excluding time spent on the fee application), yielding a lodestar of $7,095,486, which is above

the requested fee award of $5.25 million.  (Dkt. No. 195 at 14).  Second, the litigation, like most federal securities cases, was reasonably complex, as indicated by the volume of documents produced during discovery and the legal issues analyzed in Judge Cronan's ruling on Defendants' motion to dismiss.  Third, this case presented substantial risks, with counsel facing the real possibility of walking away with nothing for their efforts.  As counsel notes (*id.* at 6), Plaintiffs' counsel were the only lawyers who sought to pursue this case, and they did so without the benefit of a prior government investigation (or a restatement) that would have made a favorable outcome more likely.  *See In re Interpublic Sec. Litig.*, No. 02 Civ. 6527 (DLC), 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) ("This was not a case in which there was a government investigation that had resulted in disclosure of misconduct and was also driving a settlement. To the extent there was any wrongdoing, lead plaintiff would have to uncover it, and do so at some expense.  Any award of attorneys' fees therefore should recognize this risk[.]").  Fourth, Plaintiffs' counsel provided vigorous, quality representation on behalf of the class, as noted above.  Fifth, as already noted, the fee is reasonable as a percentage of the Class's overall recovery.  Finally, "[c]ourts have recognized a public policy benefit in rewarding attorneys that bring successful securities actions that foster the enforcement of the federal securities laws." *Rosi*, 2021 WL 5847420, at *8.

Thus, the *Goldberger* factors support the requested fee award.  So too does the reaction of the Class to the Settlement.  See *In re Hi-Crush Partners*, 2014 WL 7323417, at *18 ("In addition to the criteria set forth in *Goldberger*, courts in the

22

Second Circuit consider the reaction of the Class to the fee request in deciding how large a fee to award."). As noted, no Class Member has objected to the Settlement or to the fee award.

### c.  Lodestar Cross-Check

A lodestar cross-check confirms the reasonableness of the requested fee award. "The lodestar is 'the product of a reasonable hourly rate and the reasonable number of hours required by the case'; it 'creates a presumptively reasonable fee.'" *In re Citigroup Bond Litig.*, 988 F. Supp. 2d 371, 375 (S.D.N.Y. 2013) (quoting *Millea v. MetroN. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)).

With respect to hourly rates, BFA's rates for the attorneys who worked on this case range from $1,095 to $1,310 per hour for partners, $940 per hour for of counsel, $665 to $730 per hour for associates, and $520 to $595 for staff and project attorneys. (Dkt. No. 196-6 ¶ 9). The two other attorneys who represented Plaintiffs, Michael K. Yarnoff and Susan R. Podolsky, charge $950 per hour and $750 per hour, respectively. (Dkt. No. 196-7 ¶ 8; Dkt. No. 196-8 ¶ 7).

These rates, while on the high side, are not out of line with those approved in other cases involving securities class action settlements. *See, e.g.*, *Pearlstein v. BlackBerry Ltd.*, No. 13 Civ. 7060 (CM) (KHP), 2022 WL 4554858, at *10 (S.D.N.Y. Sept. 29, 2022) (approving hourly billing rates ranging from $500 for associates to $1,200 for partners); *In re Luckin Coffee Inc. Sec. Litig.*, No. 20 Civ. 1293 (JPC) (S.D.N.Y.), Dkt. Nos. 327-7 at 10, 327-8 at 7, 342 at 50 (finding lodestar cross-check to support requested fee award where plaintiffs' two law firms charged hourly rates

ranging from $795 to $1,200 for partners, and from $400 to $825 for associates and counsel); *In re Evoqua Water Techs. Corp. Sec. Litig.*, No. 18 Civ. 10320 (JPC) (S.D.N.Y.), Dkt. Nos. 145-7 at 7, 145-8 at 6, 152 ¶ 5(E), 156 at 10 (finding lodestar cross-check to support requested fee award where plaintiffs' two law firms charged hourly rates ranging from $900 to $1,295 for partners, $775 to $800 for counsel, $525 to $750 for associates, and $375 to $425 for staff attorneys).[6]

With respect to number of hours worked, Plaintiffs' counsel charged for a total of 8,642.2 hours. (Dkt. No. 196 ¶ 96). A substantial majority of these hours (nearly 6,000) related to discovery, which was extensive. (*Id.* ¶ 97). The Court does note that a total of 13 different attorneys billed in excess of 100 hours to this case. (Dkt. Nos. 196-6 ¶ 9, 196-7 ¶ 8, 196-8 ¶ 7). Among them were six partners who collectively billed 3,032.4 hours, or 35% of the total. (*Id.*). Arguably, this reflects a certain degree of overstaffing and inefficiency that drives the lodestar higher than it should have been, although counsel did provide an explanation at the fairness hearing as to the different roles played by the various lawyers. (Tr. at 27:14-32:4). *See, e.g.*, *In re KeySpan Corp. Sec. Litig.*, No. 01 Civ. 5852 (ARR), 2005 WL 3093399, at *16 (E.D.N.Y. Sept. 30, 2005) (finding lodestar inflated based on "large number of attorneys" and "large amount of time spent by partners").

Ultimately, however, the Court need not finely parse either the reasonableness of the hours billed to this case or the reasonableness of counsel's

---

[6] Plaintiffs' counsel notes that, when adjusted for inflation, the rates charged in these cases in 2021 and 2022 are more comparable to, and in some instances higher than, BFA's rates here. (Dkt. No. 195 at 16).

hourly rates. The lodestar multiplier, as calculated by Plaintiffs' counsel based on their submitted lodestar of $7.085 million, is 0.74, which is a *negative* multiplier. Even assuming for the sake of argument that a 25% reduction in the lodestar would be warranted, the lodestar would be $5.321 million, which would still be greater than the requested fee award of $5.25 million—meaning that the lodestar multiplier would still (if only barely) be negative.

A negative multiplier strongly suggests that the requested fee amount is reasonable. See, e.g., *Gruber v. Gilbertson*, 647 F. Supp. 3d 100, 128 (S.D.N.Y. 2022) (negative multiplier "demonstrates that a fee award in the amount plaintiffs' counsel requests would not constitute anything approaching a windfall"); *Guevoura Fund Ltd. v. Sillerman*, No. 15 Civ. 7192 (CM), 2019 WL 6889901, at *18 (S.D.N.Y. Dec. 18, 2019) (negative multiplier "militates very in favor of the reasonableness of the fee request"); *In re Blech Sec. Litig.,* No. 94 Civ. 7696 (RWS), 2000 WL 661680, at *5 (S.D.N.Y. May 19, 2000) (finding fee award of 30% of settlement amount to be reasonable, and deeming that conclusion "reinforced" by fact that fee "would represent a *negative* multiplier of the lodestar" (emphasis in original)).

Accordingly, the Court concludes that Plaintiffs' counsel's requested fee of $5.25 million is fair and reasonable under the percentage method as analyzed under the *Goldberger* factors and as confirmed by a lodestar cross-check.

### 2. Litigation Expenses

The Court has reviewed the various components of the $924,556 in litigation expenses for which Plaintiffs' counsel seeks reimbursement and the justifications

25

provided for those expenses.  (Dkt. No. 196 ¶¶ 113-16.[7]  The Court finds the expenses to be reasonable and justified.

### 3.  Awards to Class Representatives

Finally, the Court considers the requested awards of costs and expenses to the two Class Representatives.  Lozada seeks an award of $9,750 and Oklahoma Firefighters seek an award of $7,000 based on the time devoted by Lozada and Chase Rankin of Oklahoma Firefighters working on the case, including, *inter alia*, reviewing the complaints, sitting for depositions and otherwise participating in discovery, and attending the mediation.  (Dkt. No. 195 at 22-2).

Under 15 U.S.C. § 78u-4(a)(4), a class representative may be reimbursed for "reasonable costs and expenses (including lost wages) directly relating to the representation of the class."  "In accordance with the PSLRA, and the inherent powers of the Court, courts routinely grant reimbursement of substantial sums to lead plaintiffs and class representatives."  *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 (S.D.N.Y. 2014).  "'These awards compensate lead plaintiffs for the substantial time and effort the class representatives incurred, including written discovery, being deposed, reviewing and editing submissions, and attending hearings.'"  *Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, No. 17 Civ. 5543, 2021 WL 76328, at *7 (S.D.N.Y. Jan. 7, 2021) (quoting *Pa. Pub. Sch. Emps.' Ret. Sys. v. Bank of Am. Corp.*, 318 F.R.D. 19, 27 (S.D.N.Y. 2016)).

---

[7] At the fairness hearing, the Court raised questions concerning Plaintiffs' counsel's payment of counsel fees for former employees who served as witnesses in this case.  Counsel's answers satisfactorily addressed the Court's concerns.  (Tr. at 33:22-43:3).

The requested awards here are supported by affidavits from Lozada and Rankin attesting to their work on the case and the number of hours they spent on various tasks. (Dkt. No. 196-2 (Lozada); Dkt. No. 196-3 (Rankin)). Both Class Representatives calculate the award based on an hourly rate for their time ($144 in the case of Lozada, $103 for Rankin). (*Id.*). The Court finds the amounts sought to be reasonable and in line with awards approved in other securities class actions, including to Oklahoma Firefighters. (*See* Dkt. No. 195 at 23-24 (citing cases)).

As the Court finds that the requested payments for attorneys' fees, litigation expenses, and costs and expenses of the Class Representatives, respectively, are reasonable, it recommends that the Fees and Expenses Motion be granted.

## C. Proposed Final Judgment and Order Awarding Fees and Expenses

The Court has also reviewed Plaintiffs' proposed Final Judgment Approving Settlement (Dkt. No. 192-1 ("Final Judgment")), proposed Order Approving Plan of Allocation (Dkt. No. 191-2 ("Plan of Allocation Order")), and proposed Order Awarding Attorneys' Fees, Litigation Expenses, and Plaintiffs' Reasonable Costs and Expenses (Dkt. No. 194-1 ("Fee Award Order")). The Court largely agrees with the form and content of the proposed Final Judgment, proposed Plan of Allocation Order, and proposed Fee Award Order, with the exception of certain revisions indicated in the attachments hereto. The revision to paragraph 24 of the proposed Final Judgment was discussed with and agreed to by Plaintiffs' counsel at the fairness hearing. (*See* Tr. 44:5-19).

27

## CONCLUSION

For the reasons set forth above, the undersigned respectfully recommends that Judge Cronan: (1) grant Plaintiffs' Final Approval Motion (Dkt. No. 192); (2) grant Plaintiffs' Fees and Expenses Motion (Dkt. No. 194); and (3) sign the proposed Final Judgment, the proposed Plan of Allocation Order, and the proposed Fee Award Order in the form attached hereto.

Dated:      New York, New York
            November 6, 2025

_____
The Honorable Gary Stein
United States Magistrate Judge

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. Section 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen days, inclusive of weekends and holidays, from the date of this Report and Recommendation to file written objections thereto. *See also* Fed. R. Civ. 6(a), (b), and (d). Any such objections shall be filed with the Clerk of Court. Any request for an extension of time to file objections must be directed to Judge Cronan. A failure to file timely objections will preclude appellate review. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

28

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| HUMBERTO LOZADA and OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>TASKUS, INC., BRYCE MADDOCK, JASPAR WEIR, BALAJI SEKAR, AMIT DIXIT, MUKESH MEHTA, SUSIR KUMAR, JACQUELINE D. RESES, and BCP FC AGGREGATOR L.P.,<br><br>Defendants. | Case No.  1:22-cv-01479-JPC-GS<br><br>CLASS ACTION |

**FINAL JUDGMENT APPROVING SETTLEMENT**

This matter came before the Court for hearing pursuant to the Order Preliminarily Approving Settlement and Providing for Class Notice ("Notice Order") dated June 13, 2025, on the application of the Parties for approval of the settlement set forth in the Stipulation of Settlement dated May 27, 2025 (the "Stipulation") (ECF 187-1)[1]. Due and adequate notice having been given to the Settlement Class as required in said Notice Order, and the Court having considered all papers filed and proceedings had herein and otherwise being fully informed in the premises and good cause appearing therefor, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

---

[1] Any capitalized terms that are not otherwise defined herein shall have the meanings ascribed to them in the Stipulation.

- 1 -

1.      This Court has jurisdiction over the subject matter of the Litigation and all matters relating to the Settlement, and personal jurisdiction over all Parties to the Litigation, including all Members of the Settlement Class.

2.      All defined terms contained herein shall have the same meanings as set forth in the Stipulation, unless otherwise defined herein.

3.      For settlement purposes only, the prerequisites for a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been satisfied in that: (i) the Members of the Settlement Class are so numerous that joinder of all Settlement Class Members in the Litigation is impracticable; (ii) there are questions of law and fact common to the Settlement Class which predominate over any individual questions; (iii) the claims of Plaintiffs are typical of the claims of the Settlement Class; (iv) Plaintiffs and Plaintiffs' Counsel have fairly and adequately represented and protected the interests of all Settlement Class Members; and (v) a class action is superior to other available methods for the fair and efficient adjudication of the controversy, considering: that the claims of Settlement Class Members in the Litigation are substantially similar and would, if tried, involve substantially identical proofs and may therefore be efficiently litigated and resolved on an aggregate basis as a class action; the amounts of the claims of many of the Settlement Class Members are too small to justify the expense of individual actions; and it does not appear that there is significant interest among Settlement Class Members in individually controlling the litigation of their claims.

4.      Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court hereby affirms its determination in the Notice Order and finally certifies, for settlement purposes only, a Settlement Class defined as:

> All Persons who purchased or otherwise acquired TaskUs Class A common stock (a) during the Class Period of June 11, 2021 through

January 19, 2022, both inclusive, and were damaged thereby; and (b) pursuant and/or traceable to the IPO Registration Statement or Secondary Offering Registration Statement, and were damaged thereby.

Excluded from the Settlement Class are: (i) Defendants and any affiliates or subsidiaries thereof; (ii) present and former officers and directors of TaskUs and their immediate family members (as defined in Item 404 of SEC Regulation S-K, 17 C.F.R. § 229.404, Instructions (1)(a)(iii) & (1)(b)(ii)); (iii) Defendants' liability insurance carriers, and any affiliates or subsidiaries thereof; (iv) any entity in which any Defendant had or has had a controlling interest; (v) TaskUs's employee retirement and benefit plan(s); and (vi) the legal representatives, heirs, estates, agents, successors, or assigns of any person or entity described in the preceding five categories.

5. Pursuant to Rule 23, and for purposes of settlement only, the Court hereby affirms its determination in the Notice Order and finally certifies Plaintiffs as Settlement Class Representatives for the Settlement Class, and finally appoints the law firm of Bleichmar Fonti & Auld LLP as Settlement Class Counsel. Settlement Class Representatives and Settlement Class Counsel have fairly and adequately represented the Settlement Class and satisfied the requirements of Federal Rule of Civil Procedure 23.

6. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court hereby approves the Settlement set forth in the Stipulation in all respects (including, without limitation: the amount of the Settlement, the Releases provided for therein; and the dismissal with prejudice of the claims asserted against Defendants in this Litigation, as provided for therein) and finds that in light of the benefits to the Settlement Class, the complexity and expense of further litigation, and the costs of continued litigation, the Settlement is, in all respects fair, reasonable, and adequate, having considered and found that: (i) Plaintiffs and Plaintiffs' Counsel have adequately represented the Settlement Class; (ii) the proposal was negotiated at arm's length; (iii) the relief

- 3 -

provided for the Settlement Class is adequate, having taken into account (a) the costs, risks, and delay of trial and appeal; (b) the effectiveness of any proposed method of distributing relief to the Settlement Class, including the method of processing Settlement Class Members' claims; (c) the terms of any proposed award of attorneys' fees, including timing of payment; and (d) any agreement required to be identified under Rule 23(e)(2); and (iv) the proposed Plan of Allocation treats Settlement Class Members equitably relative to each other.

7.      The Court hereby dismisses the Litigation and all Released Claims of Plaintiffs and the Settlement Class with prejudice, without costs as to any of the Released Parties, except as and to the extent provided in the Stipulation and herein.

8.      All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Order, pursuant to their terms.

9.      The terms of the Stipulation and of this Judgment shall be forever binding on Defendants, Plaintiffs, and all other Settlement Class Members (regardless of whether or not any individual Settlement Class Member submits a Proof of Claim and Release form ("Proof of Claim") or seeks or obtains a distribution from the Net Settlement Fund), as well as their respective successors and assigns.

10.     Upon the Effective Date, and as provided in the Stipulation, Plaintiffs and all Settlement Class Members, on behalf of themselves, and their respective heirs, executors, administrators, predecessors, successors, and assigns in their capacities as such, and on behalf of any other person or entity legally entitled to bring Released Claims on behalf of any Settlement Class Member, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, compromised, settled, resolved, waived, discharged, and dismissed on the merits with prejudice all Released Claims (including, without limitation,

- 4 -

Unknown Claims) against Defendants and their Related Parties, whether or not such Settlement Class Member executes and delivers a Proof of Claim or participates in the Settlement Fund, and whether or not such Settlement Class Member objects to the Settlement.  Claims to enforce the terms of the Stipulation are not released.  For the avoidance of doubt, the releases herein do not include the derivative claims asserted in the lawsuit captioned *Eaton v. Maddock, et al.* (No. 2025-0043-NAC), filed in the Court of Chancery of the State of Delaware, claims asserted in any pending or future Section 220 demand or proceeding involving TaskUs, or claims that any  Defendant, and/or their Related Parties, may have against any other Defendant and/or their Related Parties.

11.    Upon the Effective Date, and as provided in the Stipulation, each of the Released Parties shall be deemed to have, and by operation of this Judgment shall have, fully, finally, and forever released, relinquished, and discharged Plaintiffs, Plaintiffs' Counsel, Settlement Class Members, and their employees, successors, and assigns from all claims (including, without limitation, Unknown Claims) arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement or resolution of:  (i) the Litigation; or (ii) the Released Claims, except for those claims brought to enforce the Settlement.

12.    Upon the Effective Date, Plaintiffs and each of the Settlement Class Members who have not validly opted out of the Settlement Class, and anyone claiming through or on behalf of them, are forever barred and enjoined from commencing, instituting, intervening in, prosecuting, or continuing to prosecute any action or proceeding in any court of law or equity, arbitration tribunal, administrative forum, or other forum of any kind, asserting any of the Released Claims against any of the Defendants and their Related Parties, and each of them.

13.     Upon the Effective Date, any and all future claims for contribution or indemnity (or any other claim or claim-over, however denominated, for which the injury claimed is that person's or entity's alleged liability to Plaintiffs or Settlement Class Members) among and against Plaintiffs, any and all Settlement Class Members, and Defendants arising out of the Litigation and Released Claims are permanently barred, extinguished, and discharged to the fullest extent permitted by law (the "Bar Order"), provided, however, that the Bar Order shall not preclude either (i) Defendants from seeking to enforce any rights they may have under any applicable insurance policies or (ii) any right of indemnification or contribution that Defendants may have under contract or otherwise.  The Bar Order shall be consistent with, and apply to the full extent of, the Private Securities Litigation Reform Act.

14.     Notwithstanding any of the foregoing, nothing in this Judgment shall bar any action by any of the Parties to enforce or effectuate the terms of the Stipulation or this Judgment.

15.     The dissemination of the Notice of Pendency and Proposed Settlement of Class Action given to the Settlement Class ("Notice"), Long-Form Notice of Pendency and Proposed Settlement of Class Action, and Summary Notice in accordance with the Notice Order entered on June 13, 2025:  (i) complied with the terms of the Stipulation and the Notice Order; (ii) constituted the best notice practicable under the circumstances; (iii) are reasonably calculated, under the circumstances, to describe the terms and effect of the Settlement and to apprise Settlement Class Members of their right to object to the proposed Settlement or to exclude themselves from the Settlement Class; (iv) are reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive such notice; and (v) satisfy all applicable requirements of the Federal Rules of Civil Procedure (including Rules 23(c)-(e)), the Due Process Clause of the United States Constitution, 15 U.S.C. § 77z-1(a)(7) and 15 U.S.C. § 78u-4(a)(7), as amended by the PSLRA, the

- 6 -

rules of this Court, and all other applicable law and rules. No Settlement Class Member is relieved from the terms of the Settlement, including the releases provided for therein, based upon the contention or proof that such Settlement Class Member failed to receive actual or adequate notice. A full opportunity has been offered to Settlement Class Members to object to the proposed Settlement and to participate in the hearing thereon. Thus, it is hereby determined that all Members of the Settlement Class are bound by this Order and Final Judgment.

16.     TaskUs has complied with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, *et seq.* ("CAFA"). TaskUs timely mailed, or caused to be mailed, notice of the Settlement pursuant to 28 U.S.C. § 1715(b), including notices to the Attorney General of the United States of America and the Attorneys General of each State. The CAFA notice contains the documents and information required by 28 U.S.C. § 1715(b)(1)-(8). The Court finds that TaskUs has complied in all respects with the notice requirements of CAFA.

17.     Any plan of allocation submitted by Lead Counsel or any order entered regarding any attorneys' fee and expense application shall in no way disturb or affect this Judgment and shall be considered separate from this Judgment.

18.     Neither the Stipulation nor the Settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (i) is or may be deemed to be or may be used as an admission of, or concession or evidence of, the validity of any Released Claim, the truth of any fact alleged in the Litigation, the deficiency of any defense that has been or could have been asserted in the Litigation, or of any alleged wrongdoing, liability, negligence, or fault of Defendants; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or misrepresentation or omission, including with respect to any statement or written document attributed to, approved or made by, any Defendant in any civil,

- 7 -

criminal, or administrative proceeding in any court, administrative agency, proceeding, or other forum or tribunal.

19.     Defendants and their Related Parties may file the Stipulation and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of, without limitation, claim preclusion or issue preclusion or similar defense or counterclaim.

20.     Without affecting the finality of this Judgment in any way, this Court shall retain jurisdiction with respect to implementation and enforcement of the Settlement and terms of the Stipulation, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation.

21.     The Court finds that during the course of the Litigation, the Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11 in connection with the institution, prosecution, defense, and settlement of the Litigation.

22.     Without further approval from the Court, Plaintiffs and Defendants are hereby authorized to agree to and adopt such amendments or modifications of the Stipulation or any exhibits attached thereto to effectuate the Settlement that: (a) are not materially inconsistent with this Judgment; and (b) do not materially limit the rights of Settlement Class Members in connection with the Settlement. Without further order of the Court, Plaintiffs and Defendants may agree in writing to reasonable extensions of time to carry out any provisions of the Stipulation.

23.     If the Settlement is terminated as provided in the Stipulation or the Effective Date of the Settlement otherwise fails to occur, this Judgment shall be vacated and rendered null and

void, and shall be of no further force and effect, except as otherwise provided by the Stipulation, and this Judgment shall be without prejudice to the rights of Plaintiffs, the other Settlement Class Members, and Defendants, all of whom shall revert to their respective positions in the Litigation as of January 30, 2025.

24.    The Claims Administrator shall administer the claims administration process, including the calculation of claims submitted by Settlement Class Members and distribution of the Net Settlement Fund to Authorized Claimants pursuant to the Court-approved Plan of Allocation. ~~All Settlement Class Members shall submit a Proof of Claim under penalty of perjury by the date set forth in the Notice sent to Settlement Class Members.~~ Lead Counsel may, in its discretion, accept for processing any late-submitted Proof of Claim so long as the distribution of the Net Settlement Fund is not materially delayed.

25.    There is no just reason for delay in the entry of this Judgment and immediate entry by the Clerk of the Court is expressly directed pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.


DATED:_____

                                    BY THE COURT:


                                    _____

                                    Judge John P. Cronan

                                    United States District Court for the
                                    Southern District of New York

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HUMBERTO LOZADA and OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>TASKUS, INC., BRYCE MADDOCK, JASPAR WEIR, BALAJI SEKAR, AMIT DIXIT, MUKESH MEHTA, SUSIR KUMAR, JACQUELINE D. RESES, and BCP FC AGGREGATOR L.P.,<br><br>Defendants. | Case No.  1:22-cv-01479-JPC-GS<br><br>CLASS ACTION |

**ORDER APPROVING PLAN OF ALLOCATION**

This matter came before the Court for hearing pursuant to the Order Preliminarily Approving Settlement and Providing for Class Notice ("Notice Order") dated June 13, 2025, on Plaintiffs' motion for approval of the proposed Plan of Allocation contained in the Long-Form Notice (ECF 187-4).  Due and adequate notice having been given to the Settlement Class as required in said Notice Order, and the Court having considered all papers filed and proceedings had herein and otherwise being fully informed in the premises and good cause appearing therefor, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1.      This Court has jurisdiction over the subject matter of the Litigation and all matters relating to the Settlement, and personal jurisdiction over all Parties to the Litigation, including all Members of the Settlement Class.

- 1 -

2.     All defined terms contained herein shall have the same meanings as set forth in the in the Stipulation of Settlement, dated May 27, 2025 (ECF 187-1) (the "Stipulation"), unless otherwise defined herein.

3.     The Court finds that Settlement Class Members received the best notice of the Plan of Allocation practicable under the circumstances of these proceedings, and that this notice fully satisfied the requirements of Federal Rule of Civil Procedure 23, Section 21D(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(7) as amended by the Private Securities Litigation Reform Act, due process, and any other applicable law.

4.     [There have been no objections to the Plan of Allocation.]

5.     The Plan of Allocation set forth in the Long-Form Notice (ECF 187-4) provides a fair and reasonable basis upon which to allocate the Net Settlement Fund among Authorized Claimants, and is in all respects fair and reasonable.

6.     Accordingly, the Court hereby approves the Plan of Allocation set forth in the Long-Form Notice.

7.     There is no just reason for delay in the entry of this Order, and the Court directs immediate entry of this Order by the Clerk of the Court.

- 3 -

IT IS SO ORDERED.


DATED:_____


                                    BY THE COURT:


                                    _____

                                    Judge John P. Cronan

                                    United States District Court for the
                                    Southern District of New York

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HUMBERTO LOZADA and OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM Individually and on Behalf of All Others Similarly Situated, | Case No. 1:22-cv-01479-JPC-GS |
| Plaintiffs, | CLASS ACTION |
| v. | |
| TASKUS, INC., BRYCE MADDOCK, JASPAR WEIR, BALAJI SEKAR, AMIT DIXIT, MUKESH MEHTA, SUSIR KUMAR, JACQUELINE D. RESES, and BCP FC AGGREGATOR L.P., | |
| Defendants. | |

**ORDER AWARDING ATTORNEYS' FEES, LITIGATION EXPENSES, AND PLAINTIFFS' REASONABLE COSTS AND EXPENSES**

This matter came before the Court for hearing pursuant to the Order Preliminarily Approving Settlement and Providing for Class Notice ("Notice Order") dated June 13, 2025, on Lead Counsel's motion for the award of: (1) attorneys' fees, (2) litigation expenses, and (3) Plaintiffs' reasonable costs and expenses. Due and adequate notice having been given to the Settlement Class as required in said Notice Order, and the Court having considered all papers filed and proceedings had herein and otherwise being fully informed in the premises and good cause appearing therefor, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1.       This Court has jurisdiction over the subject matter of the Litigation and all matters relating to the Settlement, and personal jurisdiction over all Parties to the Litigation, including all Members of the Settlement Class.

- 1 -

2.      All defined terms contained herein shall have the same meanings as set forth in the in the Stipulation of Settlement, dated May 27, 2025 (ECF 187-1) (the "Stipulation"), unless otherwise defined herein.

3.      The Court finds that Settlement Class Members received the best notice practicable under the circumstances of these proceedings and of the requested awards, and that this notice fully satisfied the requirements of Federal Rule of Civil Procedure 23, Section 21D(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(7) as amended by the Private Securities Litigation Reform Act, due process, and any other applicable law.

4.      Lead Counsel is awarded attorneys' fees in the amount of 30% of the Settlement Fund ($5,250,000, plus interest at the same rate and for the same period as earned by the Settlement Fund, until paid), to be paid from the Settlement Fund.

5.      Lead Counsel shall allocate the attorneys' fees among other Plaintiffs' Counsel in a manner in which it in good faith believes reflects the contributions of such counsel to the institution, prosecution, and resolution of the Litigation.

6.      Lead Counsel is awarded litigation expenses in the amount of $924,556, plus interest at the same rate and for the same period as earned by the Settlement Fund (until paid), to be paid from the Settlement Fund.

7.      In making these awards of attorneys' fees and expenses to be paid from the Settlement Fund, the Court has considered and found that:

(a)      Plaintiffs' Counsel's efforts on behalf of the Settlement Class have created a common fund of $17.5 million in cash;

(b)      The requested attorneys' fees are consistent with awards in similar cases;

(c)    The requested attorneys' fee has been reviewed and approved as reasonable by Plaintiffs, who oversaw the prosecution and resolution of the Litigation, as detailed in the Declaration of Lead Plaintiff Humberto Lozada and the Declaration of Chase Rankin on behalf of Named Plaintiff Oklahoma Firefighters Pension and Retirement System;

(d)    Plaintiffs' Counsel secured the Settlement through their ~~skilled~~ advocacy and ~~heavy~~ investment of time and resources, including investigating and drafting the Complaint and the Amended Complaint, opposing Defendants' motion to dismiss the Amended Complaint, briefing Plaintiffs' motion for class certification (including the submission of two expert reports and conducting three expert depositions), completing extensive discovery (including securing over 540,000 pages of documents and conducting 13 fact depositions), working to prepare opening expert reports, and preparing for and successfully mediating the Litigation;

(e)    The Litigation involved a number of complex issues, and, absent the Settlement, would involve lengthy further proceedings, leaving the Settlement Class exposed to significant risks of recovering less or nothing from Defendants;

(f)    Plaintiffs' Counsel prosecuted the Litigation for nearly three years on a contingent basis and represent that they devoted more than 8,600 hours to the Litigation, with a lodestar value of over $7 million;

(g)    Plaintiffs' Counsel worked efficiently, and the ~~fee awarded results in a~~ lodestar ~~multiplier of 0.74, which~~ further supports the reasonableness of the attorneys' fee award;

(h)    Public policy considerations favor the attorneys' fee award; and

(i)    The requested expenses are fair and reasonable, and they were reasonably and necessarily incurred to prosecute the Litigation.

- 3 -

8.    Consistent with the Stipulation, the fees and expenses awarded pursuant to this Order are payable immediately upon entry of this Order, notwithstanding any appeals.

9.    All reasonable expenses incurred in identifying and notifying Settlement Class Members, as well as administering the Settlement Fund, shall be paid as set forth in the Stipulation.

10.    In accordance with 15 U.S.C. § 78u-4(a)(4), the Court awards reasonable costs and expenses to Plaintiffs in the amounts of $9,750 to Lead Plaintiff Humberto Lozada and $7,000 to Named Plaintiff Oklahoma Firefighters Pension and Retirement System, to be paid from the Settlement Fund.

11.    [All objections to the awards are overruled.] There have been no objections to the awards.

12.    There is no just reason for delay in the entry of this Order, and the Court directs immediate entry of this Order by the Clerk of the Court.

IT IS SO ORDERED.

DATED:_____

BY THE COURT:

_____

Judge John P. Cronan

United States District Court for the
Southern District of New York

- 4 -