UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HUMBERTO LOZADA and OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM, individually and on behalf of all others similarly situated,

Plaintiffs,

- against -

TASKUS, INC, et al.,

Defendants.

22 Civ. 1479 (JPC) (GS)

REPORT & RECOMMENDATION

**GARY STEIN, United States Magistrate Judge:**

On June 10, 2026, Plaintiffs filed a Motion for Distribution of Class Settlement Funds seeking court approval for, *inter alia*, the distribution of the Net Settlement Fund created pursuant to the Settlement of this class action. (Dkt. No. 209).[1] In support of the motion, Plaintiffs filed a memorandum of law (Dkt. No. 210 ("Pl. Mem.")), a declaration from Morgan Kimball of Epiq Class Action and Claims Solutions, Inc. ("Epiq"), the Claims Administrator for the Settlement (Dkt. No. 211 ("Kimball Declaration")), and a [Proposed] Order Approving Distribution of Net Settlement Funds (Dkt. No. 209-1 (the "Proposed Order")). The motion has been referred to the undersigned by Judge Cronan for a report and recommendation. (Dkt. No. 212).

Specifically, Plaintiffs' motion seeks an order: (1) approving the Claims Administrator's recommendations accepting and rejecting claims submitted by Class Members through and including June 10, 2026; (2) directing the distribution of the Net Settlement Fund to Authorized

[1] The settlement received final approval, and a final judgment was entered, on December 4, 2025. (*See* Dkt. Nos. 203-06). Capitalized terms used herein have the meanings ascribed to them in the Stipulation of Settlement, dated May 27, 2025 (Dkt. No. 187-1), unless otherwise indicated.

Claimants whose claims have been accepted pursuant to the plan for distribution set forth in the Kimball Declaration; (3) imposing a Final Bar Date of June 10, 2026; and (4) approving the Claims Administrator's fees and expenses. (Pl. Mem. at 2). No opposition or objections have been filed to Plaintiffs' motion.

After carefully reviewing the motion papers, the undersigned finds that Plaintiffs have established that the relief requested is fair, reasonable, in the best interests of the Class and in accordance with the settlement terms, and that the Proposed Order should be entered, except in the following three respects:

1. Paragraph 5(a)(iv) of the Proposed Order states that, to encourage Authorized Claimants to promptly deposit their payments, "all distribution checks will bear a notation "DEPOSIT PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT NEGOTIATED WITHIN 90 DAYS OF ISSUE DATE." Paragraph 5(a)(v) then provides that "Authorized Claimants who do not cash their Initial Distribution checks within the time allotted will irrevocably forfeit all recovery from the Settlement." Taken together and read literally, these provisions would mean that if an Authorized Claimant does not deposit their distribution check within 90 days of when the check was "issue[d]," they "irrevocably forfeit" all recovery from the Settlement, even if, due to administrative error, the Claimant did not receive the check until after the 90-day period had expired or, indeed, did not receive the check at all. Such a result would be unfair and unreasonable. To avoid that scenario, the undersigned recommends that the first sentence of Paragraph 5(a)(v) be revised to include the following words in italics: "Authorized Claimants who do not cash their Initial Distribution checks within the time allotted will irrevocably forfeit all recovery from the Settlement, *provided the check was properly sent to the Claimant*."

2. Paragraph 5(c)(i) of the Proposed Order provides that if Lead Counsel, in consultation with Epiq, determines that a further re-distribution of any funds remaining in the Net Settlement Fund is not cost-effective, "the residual balance will be donated to a non-profit, charitable organization serving the public interest and unaffiliated with the Parties or their counsel, selected by Lead Counsel." Such a provision, allowing for what is known as a *cy pres* award, is typical in class action settlements where there are leftover funds. What is not typical, however, is for the settlement to allow Lead Counsel to select the recipient of the *cy pres* award on their own and without court approval. More common is language authorizing an award to a non-profit organization "selected by Lead Counsel *and approved by the Court*." *E.g.*, *In re Turquoise Hill Res. Ltd. Sec. Litig.*, No. 20 Civ. 8585 (LJL), 2025 WL 2984717, at *4 (S.D.N.Y. Oct. 23, 2025); *In re Graña y Montero S.A.A. Sec. Litig.*, No. 17 Civ. 1105 (LDH) (ST), 2025 WL 704289, at *1 (E.D.N.Y. Mar. 5, 2025); *In re Grupo Televisa Sec. Litig.*, 18 Civ. 1979 (LLS), Dkt. No. 382 ¶ 8) (S.D.N.Y. Nov. 8, 2024); *In re Luckin Coffee Inc. Sec. Litig.*, No. 20 Civ. 1293 (JPC) (JLC), 2021 WL 11114633, at *24 (S.D.N.Y. Oct. 26, 2021); *In re Cnova N.V. Sec. Litig.*, No. 16 Civ. 444 (LTS) (OTW), 2021 WL 100548, at *2 (S.D.N.Y. Jan. 12, 2021).

Substantial authority suggests that court approval over a *cy pres* award recipient is required by law. *See, e.g.*, *Smith v. Costa Del Mar, Inc.*, 2021 WL 4295282, at *11 (M.D. Fla. Sept. 21, 2021) ("The Court does not void the cy pres portion of the settlement agreement but will require Court approval of any cy pres award"), *vacated and remanded on other grounds by Smith v. Miorelli*, 93 F.4th 1206 (11th Cir. 2024); *In re Polyurethane Foam Antitrust Litig.*, 178 F. Supp. 3d 621, 624 (S.D. Ohio 2016) ("If the settlement agreement does not designate a recipient, the court shall designate an appropriate recipient after soliciting input from the parties. The final choice of a recipient, however, remains within this Court's discretion." (cleaned up)

(citing American Law Institute, *Principles of the Law of Aggregate Litigation* § 3.07 cmt. b)); 4 *Newberg & Rubenstein on Class Actions* § 12.34 (6th ed. June 2026 update) ("Regardless of how *cy pres* recipients are selected in the first instance, a court must approve the use of a *cy pres* approach to residual funds—and arguably the specific organizations to which the money will be sent—as part of the final approval process. In that sense, the ultimate decision will always be a judicial one.").

Moreover, *cy pres* awards may not be made to any non-profit or charitable institution regardless of its nature or purpose; rather, "courts require some showing that proposed *cy pres* recipients reasonably approximate the class's interests." *In re Graña y Montero*, 2025 WL 704289, at *2; *see also In re Citigroup Sec. Litig.*, 199 F. Supp. 3d 845, 849–52 (S.D.N.Y. 2016). Here, however, Paragraph 5(c)(i) of the Proposed Order does not require Lead Counsel to select a recipient that "reasonably approximate the class's interests" or cabin Lead Counsel's discretion in any manner, other than by requiring selection of an organization that "serv[es] the public interest" and is unaffiliated with the parties and Lead Counsel. Without a court approval requirement, this could result in an award outside the bounds of what the law permits.[2]

Accordingly, the undersigned recommends that Paragraph 5(c)(i) be modified to require that Lead Counsel's selection be subject to court approval.

3. Paragraph 8 of the Proposed Order contains a release in favor of "[a]ll persons involved in . . . any . . . aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Net Settlement Fund, including Plaintiffs,

[22] The Court recognizes that the language of Paragraph 5(c)(i) in the Proposed Order tracks the language in Section 6.10 of the Stipulation of Settlement in this case, which was previously approved by this Court, both when preliminary approval of the Settlement was sought and when Plaintiffs moved for final approval. (*See* Dkt. Nos. 188, 201; *see also* Dkt. No. 187-1 ¶ 6.10). That is not a good reason for failing to impose a court approval requirement at this juncture, however.

Plaintiffs' Counsel, the Claims Administrator, [and] the Escrow Agent[.]" Such persons "are released and discharged from any and all claims arising out of such involvement, and all Settlement Class Members are barred from making any further claim against the Net Settlement Fund or the Released Parties, including the entities named in this Paragraph." This release is quite broad and would appear to extend even to acts undertaken in connection with the distribution of the Net Settlement Funds, which has not yet taken place. To be sure, it is appropriate for the persons involved in the settlement process to receive the benefit of a release; yet it would be unreasonable to approve a release that, at least on its face, could leave Class Members without a remedy if (for example) those persons diverted settlement funds for their own purposes instead of distributing them to Class Members.

While courts have approved similarly broad releases in class action cases, those releases have frequently included a *proviso*—"provided that such released persons acted in accordance with the Stipulation, the Judgment, and this Order"—that limited the scope of the release to avoid such unpalatable (and obviously unintended) consequences. *See, e.g.*, *In re Grab Holdings Ltd. Sec. Litig.*, No. 22 Civ. 2189 (JLR), 2026 WL 279526, at *2 (S.D.N.Y. Feb. 3, 2026); *In re XL Fleet Corp. Sec. Litig.*, No. 21 Civ. 2002 (JLR), 2025 WL 2602616, at *2 (S.D.N.Y. Sept. 4, 2025); *In re Sesen Bio, Inc. Sec. Litig.*, No. 21 Civ. 7025 (AKH), 2023 WL 7039541, at *2 (S.D.N.Y. Oct. 26, 2023). The undersigned recommends that a similar *proviso* be added to Paragraph 8 of the Proposed Order.

I attach to this Report & Recommendation a proposed revised Order Approving Distribution of Net Settlement Funds for consideration by Judge Cronan, reflecting the modifications described above. With those modifications, the undersigned hereby recommends that Judge Cronan: (1) grant Plaintiffs' Motion for Distribution of Class Settlement Funds (Dkt.

No. 209); and (2) enter an Order Approving Distribution of Net Settlement Funds substantially in the form annexed hereto.

Dated: New York, New York
June 30, 2026

The Honorable Gary Stein
United States Magistrate Judge

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen days, inclusive of weekends and holidays, from service of this Report and Recommendation to file written objections thereto. *See also* Fed. R. Civ. 6(a), (b), and (d). Any such objections shall be filed with the Clerk of Court. Any request for an extension of time to file objections must be directed to Judge Cronan. A failure to file timely objections will preclude appellate review. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner v. Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HUMBERTO LOZADA and OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>TASKUS, INC., BRYCE MADDOCK, JASPAR WEIR, BALAJI SEKAR, AMIT DIXIT, MUKESH MEHTA, SUSIR KUMAR, JACQUELINE D. RESES, and BCP FC AGGREGATOR L.P.,<br><br>Defendants. | Case No. 1:22-cv-01479-JPC-GS<br><br>CLASS ACTION |

**[PROPOSED] ORDER APPROVING DISTRIBUTION OF NET SETTLEMENT FUND**

This matter came before the Court for hearing pursuant to Plaintiffs Humberto Lozada and Oklahoma Firefighters Pension and Retirement System's (together, "Plaintiffs'") motion for an order approving the distribution of the Net Settlement Fund pursuant to the Settlement of this Litigation.

Having considered all papers filed and proceedings had herein and otherwise being fully informed in the premises and good cause appearing therefor, IT IS HEREBY ORDERED THAT:

1. This Court has jurisdiction over the subject matter of the Litigation and all matters relating to the Settlement, and personal jurisdiction over all Parties to the Litigation, including all Members of the Settlement Class.

2. All defined terms contained herein shall have the same meanings as set forth in the Stipulation of Settlement, dated May 27, 2025 (ECF 187-1) (the "Stipulation"), unless otherwise defined herein.

3. The administrative recommendations of the Court-approved Claims Administrator, Epiq Class Action and Claims Solutions, Inc. ("Epiq" or the "Claims Administrator"), to accept the claims deemed acceptable in whole or in part, listed in Exhibits B-1 and B-2 to the Kimball Declaration, are adopted.

4. The Claims Administrator's administrative recommendations to reject the claims that Epiq has wholly rejected, listed in Exhibit B-3 to the Kimball Declaration, are adopted.

5. The proposed plan for distributing the Net Settlement Fund (the "Distribution Plan") as set forth in the Kimball Declaration is APPROVED. Accordingly:

(a) Epiq will conduct an initial distribution (the "Initial Distribution") of the Net Settlement Fund, after deducting the payments previously allowed and approved herein, and after payment of any Taxes, the costs of preparing appropriate tax returns, and any escrow fees as follows:

(i) Epiq will calculate award amounts to all Authorized Claimants by calculating their *pro rata* share of the Net Settlement Fund in accordance with the Plan of Allocation, which shall be the Authorized Claimant's Recognized Claim divided by the total of the Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.

(ii) Epiq will, pursuant to the terms of the Plan of Allocation, eliminate from the Initial Distribution any Authorized Claimant whose *pro rata* share of the Net Settlement Fund, as calculated under subparagraph (a)(i) above, is less than $10.00. Such claimants will not

receive any distribution from the Net Settlement Fund and Epiq will send correspondence to those Authorized Claimants advising them of that fact.

(iii) After eliminating claimants who would have received less than $10.00, Epiq will calculate the *pro rata* share of the Net Settlement Fund for Authorized Claimants who would have received $10.00 or more pursuant to the calculations described in subparagraph (a)(i) above ("Distribution Amount").

(iv) To encourage Authorized Claimants to promptly deposit their payments, all distribution checks will bear a notation "DEPOSIT PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT NEGOTIATED WITHIN 90 DAYS OF ISSUE DATE."

(v) Authorized Claimants who do not cash their Initial Distribution checks within the time allotted will irrevocably forfeit all recovery from the Settlement, provided the check was properly sent to the Claimant. The funds allocated to all such stale-dated checks will be available to be re-distributed to other Authorized Claimants in the Second Distribution as discussed below. Similarly, Authorized Claimants who do not cash their second or subsequent distributions (should such distributions occur) within the time allotted will irrevocably forfeit any further recovery from the Net Settlement Fund.

(b) After Epiq has made reasonable and diligent efforts to have Authorized Claimants cash their Initial Distribution checks, Epiq will conduct a second distribution of the Net Settlement Fund (the "Second Distribution"). The Second Distribution will include any unclaimed amounts remaining in the Net Settlement Fund after the Initial Distribution, after deducting Epiq's fees and expenses incurred in connection with administering the Settlement for which it has not yet been paid (including the estimated costs of such Second Distribution), and after the payment of any Taxes, the costs of preparing appropriate tax returns, and any escrow fees. These remaining

funds will be distributed to all Authorized Claimants in the Initial Distribution who cashed their Initial Distribution check and would receive at least $10.00 from the Second Distribution based on their *pro rata* share of the remaining funds.

(c) To allow a final distribution of any funds remaining in the Net Settlement Fund after completion of the Second Distribution, whether by reason of returned funds, tax refunds, interest, uncashed checks, or otherwise:

(i) If cost effective, Epiq will conduct a further distribution of the Net Settlement Fund, in which all funds remaining in the Net Settlement Fund, after deducting Epiq's unpaid fees and expenses incurred or to be incurred in connection with administering the Net Settlement Fund (including the estimated costs of such distribution), and after the payment of any Taxes, the costs of preparing appropriate tax returns, and any escrow fees, will be distributed in an equitable fashion to Authorized Claimants who cashed their Second Distribution checks. Additional re-distributions, after deduction of costs and expenses as described above and subject to the same conditions, may occur thereafter until Lead Counsel, in consultation with Epiq, determines that further re-distribution is not cost-effective. At that point, and as set forth in the Stipulation of Settlement, the residual balance will be donated to a non-profit, charitable organization serving the public interest and unaffiliated with the Parties or their counsel, selected by Lead Counsel and approved by the Court.

(d) No new Claims may be accepted after June 10, 2026, and no further cures or adjustment to Claims received on or before June 10, 2026, that would result in an increased Recognized Claim may be made for any reason after June 10, 2026, subject to the following exception: Should an adjustment be received that results in a lower Recognized Loss Amount, that adjustment will be made and the Recognized Loss Amount will be reduced accordingly.

6. Unless otherwise ordered by the Court, Epiq will dispose of the paper copies of Claims and all supporting documentation one (1) year from the final distribution date of the Net Settlement Fund and will dispose of electronic copies of the same three (3) years after the final distribution date of the Net Settlement Fund.

7. The Claims Administrator is directed to reject without further notice any new Claims, any further documentation to cure defective Claims, and any further adjustments to Claims that would result in an increased Recognized Claim that are received after June 10, 2026.

8. All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Net Settlement Fund, including Plaintiffs, Plaintiffs' Counsel, the Claims Administrator, the Escrow Agent and any other agent designated by Plaintiffs' Counsel, are released and discharged from any and all claims arising out of such involvement, and all Settlement Class Members are barred from making any further claim against the Net Settlement Fund or the Released Parties, including the entities named in this Paragraph, provided that such released persons acted in accordance with the Stipulation, the Judgment, and this Order.

9. The Claims Administrator's fees and expenses for its work in connection with the administration of the Settlement to date (including estimated fees and expenses to conduct the Initial Distribution) are approved, and Lead Counsel is directed to pay the Claims Administrator $114,920.46 out of the Settlement Fund.

IT IS SO ORDERED.

DATED:____________

BY THE COURT:

________________________

Judge John P. Cronan

United States District Court for the
Southern District of New York