**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

HUMBERTO LOZADA and OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM Individually and on Behalf of All Others Similarly Situated,

Plaintiffs,

v.

TASKUS, INC., BRYCE MADDOCK, JASPAR WEIR, BALAJI SEKAR, AMIT DIXIT, MUKESH MEHTA, SUSIR KUMAR, JACQUELINE D. RESES, and BCP FC AGGREGATOR L.P.,

Defendants.

Case No. 1:22-cv-01479-JPC-GS

CLASS ACTION

**ORDER APPROVING DISTRIBUTION OF NET SETTLEMENT FUND**

This matter came before the Court for hearing pursuant to Plaintiffs Humberto Lozada and Oklahoma Firefighters Pension and Retirement System's (together, "Plaintiffs'") motion for an order approving the distribution of the Net Settlement Fund pursuant to the Settlement of this Litigation.

Having considered all papers filed and proceedings had herein and otherwise being fully informed in the premises and good cause appearing therefor, IT IS HEREBY ORDERED THAT:

1. This Court has jurisdiction over the subject matter of the Litigation and all matters relating to the Settlement, and personal jurisdiction over all Parties to the Litigation, including all Members of the Settlement Class.

2. All defined terms contained herein shall have the same meanings as set forth in the Stipulation of Settlement, dated May 27, 2025 (ECF 187-1) (the "Stipulation"), unless otherwise defined herein.

3. The administrative recommendations of the Court-approved Claims Administrator, Epiq Class Action and Claims Solutions, Inc. ("Epiq" or the "Claims Administrator"), to accept the claims deemed acceptable in whole or in part, listed in Exhibits B-1 and B-2 to the Kimball Declaration, are adopted.

4. The Claims Administrator's administrative recommendations to reject the claims that Epiq has wholly rejected, listed in Exhibit B-3 to the Kimball Declaration, are adopted.

5. The proposed plan for distributing the Net Settlement Fund (the "Distribution Plan") as set forth in the Kimball Declaration is APPROVED. Accordingly:

(a) Epiq will conduct an initial distribution (the "Initial Distribution") of the Net Settlement Fund, after deducting the payments previously allowed and approved herein, and after payment of any Taxes, the costs of preparing appropriate tax returns, and any escrow fees as follows:

(i) Epiq will calculate award amounts to all Authorized Claimants by calculating their *pro rata* share of the Net Settlement Fund in accordance with the Plan of Allocation, which shall be the Authorized Claimant's Recognized Claim divided by the total of the Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.

(ii) Epiq will, pursuant to the terms of the Plan of Allocation, eliminate from the Initial Distribution any Authorized Claimant whose *pro rata* share of the Net Settlement Fund, as calculated under subparagraph (a)(i) above, is less than $10.00. Such claimants will not

receive any distribution from the Net Settlement Fund and Epiq will send correspondence to those Authorized Claimants advising them of that fact.

(iii) After eliminating claimants who would have received less than $10.00, Epiq will calculate the *pro rata* share of the Net Settlement Fund for Authorized Claimants who would have received $10.00 or more pursuant to the calculations described in subparagraph (a)(i) above ("Distribution Amount").

(iv) To encourage Authorized Claimants to promptly deposit their payments, all distribution checks will bear a notation "DEPOSIT PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT NEGOTIATED WITHIN 90 DAYS OF ISSUE DATE."

(v) Authorized Claimants who do not cash their Initial Distribution checks within the time allotted will irrevocably forfeit all recovery from the Settlement, provided the check was properly sent to the Claimant. The funds allocated to all such stale-dated checks will be available to be re-distributed to other Authorized Claimants in the Second Distribution as discussed below. Similarly, Authorized Claimants who do not cash their second or subsequent distributions (should such distributions occur) within the time allotted will irrevocably forfeit any further recovery from the Net Settlement Fund.

(b) After Epiq has made reasonable and diligent efforts to have Authorized Claimants cash their Initial Distribution checks, Epiq will conduct a second distribution of the Net Settlement Fund (the "Second Distribution"). The Second Distribution will include any unclaimed amounts remaining in the Net Settlement Fund after the Initial Distribution, after deducting Epiq's fees and expenses incurred in connection with administering the Settlement for which it has not yet been paid (including the estimated costs of such Second Distribution), and after the payment of any Taxes, the costs of preparing appropriate tax returns, and any escrow fees. These remaining

funds will be distributed to all Authorized Claimants in the Initial Distribution who cashed their Initial Distribution check and would receive at least $10.00 from the Second Distribution based on their *pro rata* share of the remaining funds.

(c) To allow a final distribution of any funds remaining in the Net Settlement Fund after completion of the Second Distribution, whether by reason of returned funds, tax refunds, interest, uncashed checks, or otherwise:

(i) If cost effective, Epiq will conduct a further distribution of the Net Settlement Fund, in which all funds remaining in the Net Settlement Fund, after deducting Epiq's unpaid fees and expenses incurred or to be incurred in connection with administering the Net Settlement Fund (including the estimated costs of such distribution), and after the payment of any Taxes, the costs of preparing appropriate tax returns, and any escrow fees, will be distributed in an equitable fashion to Authorized Claimants who cashed their Second Distribution checks. Additional re-distributions, after deduction of costs and expenses as described above and subject to the same conditions, may occur thereafter until Lead Counsel, in consultation with Epiq, determines that further re-distribution is not cost-effective. At that point, and as set forth in the Stipulation of Settlement, the residual balance will be donated to a non-profit, charitable organization serving the public interest and unaffiliated with the Parties or their counsel, selected by Lead Counsel and approved by the Court.

(d) No new Claims may be accepted after June 10, 2026, and no further cures or adjustment to Claims received on or before June 10, 2026, that would result in an increased Recognized Claim may be made for any reason after June 10, 2026, subject to the following exception: Should an adjustment be received that results in a lower Recognized Loss Amount, that adjustment will be made and the Recognized Loss Amount will be reduced accordingly.

6. Unless otherwise ordered by the Court, Epiq will dispose of the paper copies of Claims and all supporting documentation one (1) year from the final distribution date of the Net Settlement Fund and will dispose of electronic copies of the same three (3) years after the final distribution date of the Net Settlement Fund.

7. The Claims Administrator is directed to reject without further notice any new Claims, any further documentation to cure defective Claims, and any further adjustments to Claims that would result in an increased Recognized Claim that are received after June 10, 2026.

8. All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Net Settlement Fund, including Plaintiffs, Plaintiffs' Counsel, the Claims Administrator, the Escrow Agent and any other agent designated by Plaintiffs' Counsel, are released and discharged from any and all claims arising out of such involvement, and all Settlement Class Members are barred from making any further claim against the Net Settlement Fund or the Released Parties, including the entities named in this Paragraph, provided that such released persons acted in accordance with the Stipulation, the Judgment, and this Order.

9. The Claims Administrator's fees and expenses for its work in connection with the administration of the Settlement to date (including estimated fees and expenses to conduct the Initial Distribution) are approved, and Lead Counsel is directed to pay the Claims Administrator $114,920.46 out of the Settlement Fund.

IT IS SO ORDERED.

DATED: July 16, 2026

BY THE COURT:

Judge John P. Cronan

United States District Court for the
Southern District of New York